IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

L.H., A.Z., D.K., AND D.R., on behalf of themselves and all other similarly situated juvenile parolees in California,

Plaintiffs,

CIV. NO. S-06-2042 LKK GGH

vs.

ARNOLD SCHWARZENEGGER, et al.,

Defendants.

ORDER

______________________________/

Previously pending on this court's law and motion calendar for April 26, 2007, was plaintiffs' motion to compel production of documents, filed March 22, 2007.[1] Gay Grunfeld, Sarah Laubach and Maria Morris appeared for plaintiffs. Stephen Acquisto and Michelle Angus appeared for defendants. Having now reviewed the joint statement and heard oral argument, the court issues the following order.

BACKGROUND

This is a class action lawsuit wherein plaintiffs are juvenile parolees who allege due process violations throughout the parole revocation process, as well as violations of the

[1] Plaintiffs' motion to compel entry of protective order, also filed March 14, 2007, and heard on April 26, 2007, was resolved by entry of a protective order, filed May 14, 2007.

Americans with Disabilities Act ("ADA") by the California Department of Corrections and Rehabilitation ("CDCR"), the Division of Juvenile Justice ("DJJ"), and Board of Parole Hearings ("BPH"). This case has been related to Valdivia v. Schwarzenegger, Civ.S. 94-671 LKK GGH, which involves the same issues as applied to adult parolees.

DISCUSSION

This motion relates to plaintiffs' notice of deposition served on defendant John Monday, Executive Director of the Board of Parole Hearings, seeking documents. Defendants produced some documents but refused to produce documents on two topics: (1) any budget or funding requests related to improving parole revocation proceedings; and (2) any documents, including budget or funding requests, related to providing legal assistance to wards in parole revocation hearings. At issue are 201 documents for which defendants variously claim self-critical analysis privilege, deliberative process privilege, privileges under Cal. Gov't. Code § 6255, Fed. R. Evid. 501, Cal. Evid. Code § 1040, work product immunity, and attorney-client privilege.

The two document requests at issue are:

> ALL DOCUMENTS and COMMUNICATIONS reflecting arrangements between DJJ and attorneys, to provide legal assistance to WARDS in PAROLE REVOCATION PROCEEDINGS, including contracts, budgets, budget requests OR requests for funds to provide counsel to WARDS.
>
> ALL DOCUMENTS and COMMUNICATIONS that RELATE to budgets, budget proposals OR requests for funds for reforms, improvements OR changes of PAROLE REVOCATION PROCEEDINGS.

Joint Stmt. at 15.

Plaintiffs assert that the privileges are claimed in a "boilerplate" manner, without specific factual justification.

Defendants claim that the only documents not produced in response to these requests are draft BCPs (Budget Change Proposals) or documents that discuss these drafts. They

argue that these BCPs are not relevant because they discuss requests for funding for various program changes and have no bearing on plaintiffs' claims, and furthermore they are privileged, primarily as deliberative process.

The court has now reviewed the amended final privilege log and the documents submitted at the hearing for *in camera* review which constitute all the documents listed in the privilege log, as well as supporting papers.

A. Deliberative Process Privilege

Defendants claim this privilege over all 201 documents which are responsive to the two document requests.

The court is mindful that privileges are narrowly construed because they impede the full and fair discovery of the truth, Eureka Financial Corp. v. Hartford Acc. and Indemnity Co., 136 F.R.D. 179, 183 (E.D. Cal. 1991), and the undisputed proposition that the party asserting the privilege has the burden to establish its applicability, see, e.g., United States v. O'Neill, 619 F.2d 222, 227 (3rd Cir. 1980).

The Supreme Court has pronounced that privileges are not favored:

> The common-law principles underlying the recognition of testimonial privileges can be stated simply. "'For more than three centuries it has now been recognized as a fundamental maxim that the public . . . has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule.'"

Jaffee v. Redmond, 518 U.S. 1, 116 S. Ct. 1923, 1927 (1996) (citing United States v. Bryan, 339 U.S. 323, 331, 70 S. Ct. 724, 730, 94 L. Ed. 884 (1950) (quoting 8 J. Wigmore, Evidence § 2192, p. 64 (3d ed.1940)). See also and generally, Maricopa Audubon Soc. v. U.S.F.S., 108 F.3d 1082, 1085-86 (9th Cir. 1997).

On the other hand, if a privilege is applicable within its narrow confines, the privilege must be applied according to the law in an ungrudging manner. The court will neither

over-expansively or under-expansively apply a privilege.

1. Procedural Prerequisites

Executive privileges asserted by a government agency have procedural prerequisites:

> There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. The court itself must determine whether the circumstances are appropriate for a claim of privilege ...

United States v. O'Neill, 619 F.2d at 225 (quoting United States v. Reynolds, 345 U.S. 1, 7-8 (1953). These requirements have been applied to all forms of "executive" privilege. Yang v. Reno, 157 F.R.D. 625, 632 (1994); Martin v. Albany Business Journal, Inc., 780 F. Supp. 927, 932 (N.D.N.Y. 1992). Courts have allowed the claim to be made by a person in an executive policy position. See Reynolds 345 U.S. at 8 n. 20, 73 S. Ct. at 532 n. 20 ("The essential matter is that the decision to object should be taken by the minister who is the political head of the department, and that he or she should have seen and considered the contents of the documents and himself have formed the view that on grounds of public interest they ought not to be produced . . ."). See also Scott Paper Co., 943 F. Supp. 501 (E.D. Pa. 1996); Yang, 157 F.R.D. at 632-34 & n.4 (1994) (considering official status necessary to invoke privilege, collecting cases, and finding executive secretary of National Security Council could not invoke governmental privileges); Mobil Oil Corp. v. Department of Energy, 102 F.R.D. 1, 6 (N.D.N.Y. 1983) (official invoking the privilege may be an agency head or a subordinate with high authority). Some jurisdictions do not allow the agency head to delegate the authority to claim the privilege. Scott, 943 F. Supp. at 502. Other jurisdictions which allow the authority to be delegated require the delegation to be accompanied by detailed guidelines regarding the use of the privilege. Id at 503.

Of critical importance, "the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege." In re

Sealed Case, 856 F.2d 268, 271 (D.C. Cir. 1988) (law enforcement privilege) (emphasis added). An official cannot invoke a privilege without personally considering the material for which the privilege is sought. Yang, 157 F.R.D. at 634. In the instant case, defendants have presented declarations by John Monday, Executive Officer of the Board of Parole Hearings (BPH) for the California Department of Corrections and Rehabilitation (CDCR), and Bernard Warner, Chief Deputy Secretary, Division of Juvenile Justice (DJJ) for the California Department of Corrections and Rehabilitation (CDCR), in support of their privilege claims. Monday and Warner are proper agency "heads." Monday's declaration states that he provided the BCPs in response to his notice of deposition and document request. The declaration also states that based on his knowledge, he believes the documents are pre-decisional and deliberative. Warner's declaration echoes this opinion that the documents meet the requirements for the deliberative process privilege.

One must use a rule of reason in determining whether the procedural requirements of invoking the deliberative process privilege have been satisfied. There may be cases in which every single document withheld is unique unto itself, and should be declared privileged only after a document-by-document analysis or, as is the case here, the documents do not vary in their type or purpose. In this latter case, a collective judgment on the need for invoking deliberative process may be given. Defendants have essentially complied with a collective analysis in this case as the budget change proposal documents are all of the same type and purpose. As stated by John Monday in his declaration, the policies and procedures that go into budget proposals are compiled by a committee of individuals, and are evaluated on a continuing basis. As head of these review functions, Monday is qualified to submit a general declaration of this sort as a statement of personal consideration.

2. Substantive Standards

The deliberative process privilege protects the quality of agency decisions by allowing candor in formulating policy, and encouraging public review based on the decision

itself rather than the considerations that contributed to the decision. N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 151-152, 95 S. Ct. 1504 (1975). Its aim is to protect the policy making process. It requires a two step review by the court. See Carter v. U.S. Dept. Of Commerce, 307 F.3d 1084, 1089 (9th Cir. 2002) (stating standards and holding that standards for invoking deliberative process in a FOIA context are identical to those in civil discovery).

First, the matter protected must be pre-decisional, generated before the adoption of an agency policy or decision. Predecisional matters are prepared "in order to assist an agency decisionmaker in arriving at his decision." Renegotiation Board v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184, 95 S.Ct. 1491, 1500 (1975) ; accord, Assembly of State of Cal. v. U.S. Dept of Commerce, 968 F2d 916, 920-21 (9th Cir. 1992). Predecisional material is distinguished from material supporting a decision already made. Id. Accordingly, in determining whether the "predecisional" prong applies, this circuit looks first to the purpose of the matter to be discovered. See Assembly of State of Cal., 968 F.2d at 920-21 (looking to the purpose for which a document was prepared to determine whether it meets the "predecisional" prong).

Second, the matter to be protected must be deliberative, concerning opinions, recommendations, or advice about agency policies. F.T.C. v. Warner Communications Inc., 742 F.2d 1156, 1161 (9th Cir. 1984). The privilege applies if material to be discovered reveals the mental processes of decision makers. Assembly of State of Cal., 968 F.2d at 921. If material sought to be discovered would "inaccurately reflect or prematurely disclose the views of the agency," it would come within the deliberative process privilege. National Wildlife Federation v. U.S. Forest Serv., 861 F.2d 1114, 1118 (9th Cir. 1988) (citing Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980)).

Although facts are not protected by the privilege, if the facts are inextricably interwoven with the deliberative process, the entire matter may be protected by the privilege. National Wildlife Federation, 861 F.2d at 1116 (explaining that if the disclosure of facts would necessarily reveal the deliberative process, the information is protected). It is important to

emphasize, as the Ninth Circuit has, that the privilege applies to the deliberative *process* as well as deliberative material. National Wildlife Fed. v. U.S. Forest Service, 861 F.2d at 1118. "In other words, the document is considered to be part of the 'deliberative process' as long as it is 'actually....related to the *process* by which policies are formulated.'" Id. (Emphasis in original).

The deliberative process privilege is a qualified one and can be overridden if the need for accurate fact-finding outweighs the government's interest in non-disclosure. F.T.C. v. Warner Communications, Inc., 742 F.2d at 1161. Three relevant factors are weighed to determine if disclosure is appropriate:

> 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions.

Id.

3. Analysis

Plaintiffs contend that the withheld documents relate to whether the Valdivia requirement that prompt preliminary hearings regarding probable cause for detention be held soon after a parolee is detained, is being applied to juveniles, and contain discussions on this issue. Such documents, they argue, are therefore highly relevant and not available from any other source.

Plaintiffs provide non-binding cases suggesting that where government misconduct is at issue, this privilege has been disallowed. Plaintiffs assert there may have been misconduct here, based on the log which indicates defendants considered and debated constitutional requirements but then refused to provide them.

Defendants argue that since the BCPs are drafts, they are but a prelude to the governor's budget, and are therefore pre-decisional, deliberative, and protected. Disclosure of this information would prevent candid discussions to consider changes in the budget. Because these documents do not constitute final agency decisions or positions, but are opinions,

suggestions or requests involved in the budget process, they should be protected.

A review of the documents submitted by defendants which are enumerated in their privilege log, indicates that they are all pre-decisional. (Angus Decl., Exh. E.) As the name suggests, BCPs refer to *proposals*, and by their very nature they indicate the lack of a final decision. For example, some of the documents refer to requests for a number of positions and a number of dollars, but the numbers were not yet filled in. All the documents refer to predictions of budgeting needs in future. The terms “projected” and “requested” are used continually throughout. Furthermore, the documents were prepared in order to assist the decisionmaker in coming to a decision. To the extent that any documents were prepared by Monday or Warner, they were prepared with the goal of coming to a final decision. Whether the documents were prepared for these officials or by them, they qualify as pre-decisional. Renegotiation Board, 421 U.S. at 184, 95 S. Ct. at 1500.

The documents are also deliberative in nature. They reveal the opinions of the individuals contributing to the decisionmaking process, and include recommendations and predictions of consequences based on alternative recommendations. The thought processes of the decisionmakers are readily apparent. These predictions, recommendations and thought processes may have changed during the course of the deliberations, and the documents may not accurately reflect the final views of the agencies involved. The documents are quintessential examples of those shielded by the deliberative process privilege which protects governmental agencies from disclosing the pre-policy development process. If they were produced, the privilege might as well not exist.

An example of a confirmed deliberative process close to the issues here is shown in the National Wildlife case. Material sought in that case included, *inter alia*, cost-benefit analyses of various plans. The Ninth Circuit concluded: “These materials represent the tentative opinions and recommendations of Forest Service employees on matters instrumental to the formulation of policies....” Id. At 1121. In this case, the formulation of the budget is one of the

foundational aspects of policy formulation in state government. The withheld BCPs and related information are an integral part of that entire budget process. *Plaintiffs* themselves argue – "Budget Change Proposals, or BCPs, are government documents that often include significant and important information about a particular agency's remedial *plans*, such as the background and history of a problem, cost estimates to remedy the problem, and the staff and schedule *proposed*.....The BCPs being withheld here are no exception." Joint Statement at 15-16 (emphasis added).

As to plaintiffs' claim of a misconduct exception which, in essence, swallows the whole privilege, the amended complaint alleges that defendants' policies violate due process and equal protection, deny effective assistance of counsel, and deny rights under the Americans with Disabilities Act, with respect to granting, extending or revoking parole. There is no allegation of government misconduct as plaintiffs' cases seem to require. Plaintiffs cite In re Sealed Case, 121 F.3d 729, 746 (D.C. Cir. 1997), Allen v. Woodford, 2007 WL 309945 (E.D. Cal. Jan. 30, 2007), and In re Subpoena Duces Tecum Served on Office of Comptroller of Currency, 145 F.3d 1422, 1425 (D.C. Cir. 1998), for the proposition that the privilege disappears where there is reason to believe government misconduct has occurred. Sealed Case is inapposite in involving the presidential privilege as the court found that the deliberative process privilege did not apply to the documents at issue. The court pointed out that one of the differences between the deliberative process privilege and the presidential privilege was that although misconduct must not be shielded, there must still be a showing of need which does not turn on the alleged misconduct, but must show that the documents are necessary for the government to fulfill its responsibilities. 121 F.3d at 746, citing Senate Select Committee on Presidential Campaign Activities v. Nixon, 498 F.2d 725, 731 (D.C. Cir. 1974). Furthermore, government misconduct must have been charged. Id. at 751. Not only is this case inapplicable based on the privilege applied, it is not binding on this circuit. Furthermore, government misconduct of the type indicated in Sealed Case has not been alleged in this case. See e.g. Alexander v. F.B.I., 193

F.R.D. 1, 10 (D.D.C. 2000) (denying deliberative process privilege where White House improperly obtained FBI files in violation of Privacy Act, as issue was misconduct, i.e. whether files were obtained through unintentional mistake or intent).

Allen, 2007 WL 309945, is also distinguishable and not binding. The holding there indicated that the deliberative process privilege did not apply because the deliberations were not policy formulation, but rather one specific incident, a physician's alleged malpractice on a prisoner, after the prison allegedly had been notified of this doctor's previous injury to another patient. The court found the misconduct exception to apply where the documents might reveal the prison's prior knowledge. Id. at *5.

Plaintiffs' third cited case found that the deliberative process privilege did not apply at all. In re Subpoena Duces Tecum Served on Office of Comptroller of Currency, 145 F.3d at 1425. The court did note the district court's recognition that the misconduct exception to the privilege did not fit the situation where there was no alleged taint of misconduct, but rather attacked the actual goals of the regulators. In a footnote, the court gave a good explanation of the limits of the misconduct exception. "The word 'misconduct' does not even really fit this situation, because the government could have violated the Bankruptcy Code without the nefarious motives that the word 'misconduct' implies." Id. at 425, n. 2. One court emphasizes the problem with the misconduct exception, stating that the very basis for the existence of the privilege would be undermined if the privilege is not found as its purpose is to protect government decisionmaking from the chill of potential disclosure. Arizona Rehabilitation Hospital, Inc., 185 F.R.D. 263, 267, n. 3 (D. Az. 1998). *Cf.* Newport Pacific Inc. v. County of San Diego, 200 F.R.D. 628, 640 (S.D. Cal. 2001) (finding that allegations of violations of due process and equal protection merit exception to deliberative process privilege).

Plaintiffs' misconduct exception, as broadly asserted by them, lacks reasonable boundaries. The government is not often sued because the plaintiff alleges wholesome activities on the part of the government. Officials are sued because they are alleged to have engaged in

misconduct of some sort, i.e., actions taken in violation of law or the Constitution.  Plaintiffs' expansive misconduct exception interpretation to deliberative process has never been endorsed by the Ninth Circuit or Supreme Court.  Plaintiff's suggestion at argument that deliberative process has been relegated only to third party subpoena actions finds no support in the law.

Nor does plaintiffs' contention that the BCPs are highly relevant to their claims hold water.  Whether defendants were good, bad, or indifferent in their alleged intent to violate plaintiffs' rights is not particularly significant in this injunctive relief case.  Either plaintiffs' due process, equal protection and ADA rights were violated, or they were not.  Plaintiffs do not assert that they must demonstrate any state of mind on the part of defendants in order to prevail.  The court questioned defendants whether they were raising some type of "feasibility" defense, in which case, of course, budget documents would be very relevant.  Defendants represented that they were not, and their answer in this case contains no such affirmative defense.  While the formulation of a remedy in this case, if plaintiffs were to prevail, may well take into account economic concerns, these economic concerns are universally understood without the necessity of revelation of deliberative process, and will not be the deciding remedial factor in any event.  Moreover, plaintiffs have other evidence available to them, such as final budgets for the years in question.

Although defendants have some valid claims of other privileges and protections over a number of documents submitted for *in camera* review (self-critical analysis not being one of them), the court finds that all documents are protected by the deliberative process privilege.  Therefore, other privileges will not be addressed.

CONCLUSION

Accordingly, IT IS ORDERED that plaintiffs' motion to compel production of documents, filed March 22, 2007, is denied.

DATED: 5/25/07                                         /s/ Gregory G. Hollows
                                                       U.S. Magistrate Judge

L.H.2042.dsy