1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

11  L.H., A.Z., D.K., and D.R.,
    on behalf of themselves and
12  all other similarly
    situated juvenile parolees
13  in California,
                                    NO. CIV. S-06-2042 LKK/GGH
14          Plaintiffs,

15      v.                                 O R D E R

16  ARNOLD SCHWARZENEGGER,
    Governor, State of
17  California, et al,

18          Defendants.
    _____/
19

20       Plaintiffs, a class of juvenile parolees, allege that the

21  California parole revocation system deprives them of due process

22  and violates the Americans with Disabilities Act.  Defendants are

23  the  California  Department  of  Corrections  and  Rehabilitation

24  ("CDCR"), Division of Juvenile Justice ("DJJ"), and Board of Parole

25

26

                                    1

Hearings ("BPH").[1]  Pending before the court is plaintiffs' request

for reconsideration of the Magistrate Judge's May 25, 2005 Order

("Order") denying plaintiffs' motion to compel production of

documents.  For the reasons explained herein, plaintiffs' motion

for reconsideration is GRANTED.

## I.

### Facts & Procedural History

At issue are 201 documents consisting of Budget Change

Proposals ("BCPs") prepared by the DJJ and BPH for fiscal years

2004-05, 2005-06, 2006-07, and 2007-08, as well as memoranda and

emails between various CDCR employees regarding clarification of

figures for BCPs, BCP approval and appeal, and legal strategy.[2]

The documents at issue relate to two document requests that

defendants refused to comply with based on a variety of privileges,

including the deliberative process privilege.  Order at 4-5.  The

pertinent portions of the two document requests at issue are:

DOCUMENT REQUEST NO. 9:

ALL DOCUMENTS and COMMUNICATIONS reflecting arrangements
between DJJ and attorneys, to provide legal assistance
to WARDS in PAROLE REVOCATION PROCEEDINGS

---

[1] On September 15, 2006, this case was related to Valdivia v. Schwarzeneeger, 94-CV-671 and on February 28, 2007, the court certified a class of California juvenile parolees.

[2] The budget change proposals at issue appear to be narrative explanations of budget requests plus attachments which provide justification in the form of graphs, charts, and numerical data. The BCPs include detailed analysis of current financial burdens associated with providing parole services, as well as projected financial burdens associated with adhering to more stringent time frames, providing increased attorney representation, increasing witness participation, and decreasing hearing location radius.

1    including...budgets, budget requests, or requests for
     funds to provide counsel to WARDS.
2
     DOCUMENT REQUEST NO. 10:
3    ALL DOCUMENTS and COMMUNICATIONS that RELATE to budgets,
     budget proposals OR requests for funds for reforms,
4    improvements   OR   changes   of   PAROLE   REVOCATION
     PROCEEDINGS.
5

6    Joint Statement Re: Plaintiffs' Motion to Compel at 15 ("Joint

7    Statement").

8        Plaintiffs filed a motion to compel production of these

9    documents on March 22, 2007.  Unable to reach a compromise after

10   several meet and confer discussions, the parties filed a Joint

11   Statement regarding this discovery disagreement on April 19, 2007.

12   Oral argument was held on April 26, 2007 before the Magistrate

13   Judge assigned to this case.

14       The Magistrate Judge held that all documents in question are

15   protected by the deliberative process privilege and are therefore

16   not discoverable.  Because the Magistrate Judge found that the

17   documents in question were protected by the deliberative process

18   privilege, he did not reach the question of whether the documents

19   were protected under the other two privileges asserted by

20   defendants, namely, the work product doctrine and the attorney-

21   client privilege.

22                              **II.**

23                          **Standards**

24   **A.   Standard for Review of Magistrate Judge's Decision**

25       Fed. R. Civ. P. 72(a) provides that non-dispositive pretrial

26   matters may be decided by a Magistrate Judge, subject to

                                  3

1   reconsideration by the district judge.  The district judge shall,

2   upon  reconsideration,  modify  or  set  aside  any  part  of  the

3   magistrate judge's order which is found to be "clearly erroneous"

4   or "contrary to law." <u>See</u> 28 U.S.C. § 636(b)(1)(A); Local Rule

5   303(f); <u>Ainsworth v. Vasquez</u>, 759 F. Supp. 1467, 1469 (E.D. Cal.

6   1991).

7        Discovery motions are non-dispositive pretrial motions within

8   the  scope  of  Rule  72(a)  and  28  U.S.C.  §636(b)(1)(A),  and  thus

9   subject to the "clearly erroneous or contrary to law" standard of

10  review. <u>Brown v. Wesley's Quaker Maid, Inc.</u>, 771 F2d 952, 954 (6th

11  Cir. 1985).  "A finding is 'clearly erroneous' when although there

12  is  evidence  to  support  it,  the  reviewing  court  on  the  entire

13  evidence  is  left  with  the  definite  and  firm  conviction  that  a

14  mistake has been committed." <u>United States v. United States Gypsum</u>

15  <u>Co.</u>, 333 U.S. 364, 395 (1948); <u>Nat'l Wildlife Fed'n v. United</u>

16  <u>States Forest Serv.</u>, 861 F.2d 1114, 1116 (9th Cir. 1988).

17  **B.   Standard for Asserting the Deliberative Process Privilege**

18       The deliberative process privilege protects materials created

19  by  administrative  agencies  during  the  decision-making  process.

20  <u>Nat'l Wildlife</u>, 861 F.2d at 1114.  The purpose of the privilege is

21  to protect the quality of agency decisions by shielding internal

22  discussions from public scrutiny which might discourage the free-

23  flow  of  ideas  and  frank  discussion  of  legal  or  policy  matters.

24  <u>NLRB v. Sears Roebuck & Co.</u>, 421 U.S. 132, 150, (1975).

25       In order for documents to be protected under the privilege,

26  two  preliminary  procedural  requirements  must  be  satisfied:  (1)

4

1  there must be a "formal claim of privilege, lodged by the head of
2  the department which has control over the matter, after actual
3  personal consideration by that officer," United States v. Rozet,
4  183 F.R.D. 662, 665 (N.D. Cal. 1998) (citing Unites States v.
5  Reynolds, 345 U.S. 1, 7-8 (1953)), and (2) the information for
6  which privilege is claimed must be specified and "precise and
7  certain reasons" given for asserting confidentiality.   United
8  States v. O'Neill, 619 F.2d 222, 226 (3d Cir. 1980).   See also In
9  re Sealed Case, 856 F.2d 268 (D.C. Cir. 1988); Moore's Federal
10  Practice, Civil § 26.52.

11      In addition to these procedural requirements, the party
12  asserting the privilege must prove that the documents in question
13  are "predecisional" and "deliberative." Carter v. United States
14  Dep't of Commerce, 307 F.3d 1084, 1089 (9th Cir. 2002).   This dual
15  requirement reflects the privilege's purpose of protecting the
16  deliberative process leading up to those decisions.   Nat'l Wildlife
17  Fed'n, 861 F.2d at 1117.

18      The deliberative process privilege is a qualified privilege
19  rather than an absolute privilege.   Therefore, even if the
20  privilege applies, the court must apply a balancing test whereby
21  a litigant may obtain privileged documents "if his or her need for
22  the materials and the need for accurate fact-finding override the
23  government's interest in non-disclosure." FTC v. Warner Commc'ns.,
24  Inc., 742 F.2d 1156, 1161 (9th Cir. 1984); see also Rozet, 183
25  F.R.D. 662 at 665   ("[privilege] may be overcome by a strong
26  showing of need on the part of the party seeking discovery").

5

In balancing the need to preserve the integrity of internal government deliberations with the need for open discovery, the court considers the following factors: (1) the relevance of the evidence sought to the litigation; (2) the availability of comparable evidence from other sources; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions.  <u>FTC v. Warner</u>, 742 F.2d at 1161.  The court may also take into account (5) the interest of the litigant, and society, in accurate judicial fact finding, <u>North Pacifica, LLC v. City of Pacifica</u>, 274 F. Supp 2d 1118, 1122 (N.D. Cal. 2003), <u>United States v. Irvin</u>, 127 F.R.D. 169, 173 (C.D. Cal 1989); and (6) the seriousness of the litigation and the issues involved, <u>Irvin</u>, 127 F.R.D. at 174.

As with privileges generally, the deliberative process privilege should be narrowly construed because confidentiality may impede full and fair discovery of the truth.  <u>See</u> <u>Eureka Fin. Corp. v. Hartford Accident and Indem. Co.</u>, 136 F.R.D. 179, 183 (E.D. Cal. 1991)(citing <u>Weil v. Investment/Indicators, Research and Management, Inc.</u>, 647 F.2d 18, 24 (9th Cir. 1981)); <u>see also</u> <u>North Pacifica</u>, 274 F. Supp. 2d at 1122 (deliberative process privilege is "strictly confined within the narrowest possible limits consistent with the logic of its principles.")

///

///

///

6

1                              **III.**

2                            **Analysis**

3          For the reasons discussed herein, the court concludes that the

4    Magistrate Judge did not err in finding that the documents are

5    protected by the deliberative process privilege.  However, given

6    that the privilege is qualified, it appears to the court that

7    plaintiffs may obtain at least some of the documents in question

8    as their "need for the materials and the need for accurate fact-

9    finding override the government's interest in non-disclosure." <u>FTC</u>

10   <u>v. Warner</u>, 742 F.2d at 1161.

11   **A.   Procedural Requirements**

12         As a preliminary matter, plaintiffs assert that the Magistrate

13   Judge erred in finding that the privilege was asserted by the

14   appropriate head of the agency.[3]  The court cannot agree.

15         In order to assert the deliberative process privilege, there

16   must be a "formal claim of privilege, lodged by the head of the

17   department which has control over the matter, after actual personal

18   consideration by that officer," <u>Rozet</u>, 183 F.R.D. at 665 (citing

19   <u>Unites States v. Reynolds</u>, 345 U.S. 1, 7-8 (1953)).

20         The Supreme Court has provided the following standard for the

21   invocation of executive privileges such as the deliberative process

22   privilege:

23   ////

24   _____

25         [3]  Plaintiffs do not contend that the second procedural
     requirement (that the information for which privilege is claimed
26   must be specified and precise and certain reasons given for
     asserting confidentiality) has not been satisfied.

                                    7

> There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. The court itself must determine whether the circumstances are appropriate for a claim of privilege . . .

Reynolds, 345 U.S. 1, 7-8 (1953).

The purpose of this requirement is to assure "that some one in a position of high authority" within the agency has examined the materials "from a vantage point involving both expertise and an overview-type perspective," and actually believes the items to be privileged.  Rozet, 183 F.R.D. at 665.[4]

Here, the privilege was asserted by John Monday, Executive Officer of the BPH and Bernard Warner, Chief Deputy Secretary of the DJJ.  Plaintiffs argue that the privilege should have been asserted by James Tilton, as the head of the CDCR, or an executive official with authority over budget decisions such as the Governor, a high level official in the Governor's office, or the Director of the Department of Finance.  Pls.' Req. for Reconsideration at 10-11, ("Pls.' Req.").

The Magistrate Judge's conclusion that John Monday and Bernard

---

[4]  The requirement that the privilege be invoked by the agency head is not always applied literally, see e.g., Smith v. Federal Trade Com., 403 F. Supp. 1000, 1017 (D. Del. 1975)(allowing Chairman of the Federal Trade Commission to assert the privilege rather than the Secretary).  However, the duty to invoke the privilege cannot be delegated so far down the chain of command that purposes of the requirement are undermined, see Coastal Corp. v. Duncan, 86 F.R.D. 514, 516-17 (D. Del. 1980) (disallowing the Assistant Administrator of a sub-agency to assert the privilege over Department of Energy documents rather than the Secretary of Energy).

Warner were appropriate department heads to assert the privilege is not clearly erroneous or contrary to law.   The BCPs in question are the work product of the DJJ and BPH departments of the CDCR. The memoranda and emails are primarily between employees in these departments, discussing clarification of figures for the BCPs, decisions to appeal Department of Finance ("DOF") decisions regarding these BCPs, and legal strategies.   It is clear that the DJJ and BPH are the relevant departments in this matter.   Because the Mr. Monday and Mr. Warner are high level officials within these departments, the court declines to find that the Magistrate Judge was clearly erroneous in his determination that these two officials possessed the requisite expertise and overview perspective to properly assert the deliberative process privilege over materials created within their departments.

**B.   "Predecisional" and "Deliberative" Documents**

Plaintiffs also contend that the Magistrate Judge erred in concluding that the documents in question are predecisional. Pls.' Req. at 11.[5]   The court cannot agree.

In the Ninth Circuit, "[an] agency must identify a specific decision to which the document is predecisional" in order to successfully assert the deliberative process privilege.   Maricopa Audubon Soc'y v. United States Forest Serv., 108 F.3d 1089, 1094 (9th Cir. 1997). Here, defendants assert, and the Magistrate Judge agreed, that the relevant decision is the Governor's approval of

---

[5]   The plaintiffs do not contest that the documents are deliberative in nature.

1   the final budget.   Based on this determination, the Magistrate

2   Judge held that since the BCPs are but a prelude to the Governor's

3   budget, they are predecisional.   Order at 7-8.

4       Plaintiffs contend that if executives of the DJJ and BPH are

5   authorized to assert the privilege, as was determined by the

6   Magistrate Judge, then the relevant decision must be the final BCPs

7   that the DJJ and BPH forwarded to the DOF.   Plaintiffs contend that

8   the BCPs in question are therefore not predecisional documents, but

9   rather embodiments of final agency decisions. Pls.' Req. at 11-12.

10      Plaintiffs' argument is unpersuasive for two reasons.   First,

11  they cite no authority (and indeed, the court can find none) for

12  the proposition that the decision that makes the documents pre-

13  decisional must correspond with the agency head asserting the

14  privilege.   Whether the appropriate agency head asserted the

15  privilege is a distinct question from whether the document is

16  predecisional.   There is simply no legal authority to support

17  plaintiffs' contention.

18      Second, even assuming, arguendo, that the relevant decision

19  is the BPH and DJJ's decision to submit BCPs to the DOF, the

20  documents in question are clearly predecisional as they appear to

21  be draft BCPs and documents related to those drafts.[6]

22  _____

23      [6] Each BCP in question contains some indication that it is
    a draft.  See, e.g., 2007-08 DJJ BCP and attachments (documents
24  bates stamped: 593-636)(including cover sheet but "XX" instead of
    figures in the narrative); 2007-08 DJJ BCP and attachments
25  (documents bates stamped: 637-65)(containing handwritten notes,
    which are incorporated into the typewritten text in the version of
26  the BCP at bates stamp 593-636).

1     The standard under which the District Court reviews a

2 Magistrate Judge's decision is a highly deferential one, wherein

3 the court reverses a Magistrate Judge's decision only if the

4 decision was clearly erroneous or contrary to law. <u>Ainsworth</u>, 759

5 F. Supp. at 1469. Because the question of which decision within

6 the state's budget process is the relevant one appears, at best,

7 uncertain, and because it could reasonably be interpreted that the

8 Governor's approval of the budget is the relevant decision for the

9 purposes of the privilege, the court cannot find that the

10 Magistrate Judge's order was clearly erroneous or contrary to law.[7]

11 **C.   Qualified Privilege**

12     Even if the requirements above are satisfied and the privilege

13 applies, the privilege is qualified and may be overcome if the need

14 for accurate fact-finding outweighs the government's interest in

15

16    [7] Plaintiffs additionally cite the court's June 14, 2006

17 Order in <u>Coleman v. Schwarzenegger</u> (finding that BCPs created by
the CDCR were not protected by the deliberative process privilege)

18 for the proposition that BCPs are not predecisional. However, this
assertion is misplaced. Privilege was denied in <u>Coleman</u> not

19 because BCPs are not predecisional, but rather because it was the
deliberative process of the agency itself which was in question.

20 Where the agency's deliberative process is at issue, the
deliberative process privilege does not apply. <u>See</u> <u>In re Subpoena</u>

21 <u>Duces Tecum Served on the Office of the Comptroller of the</u>
<u>Currency</u>, 145 F.3d 1422, 1424 (D.C. Cir. 1998)  In the June 2006

22 Order in <u>Coleman</u>, the court stated: "Put directly, the court
requires the BCPs in part to determine whether the state's

23 deliberative process is frustrating the ability of the state to
comply with the courts orders." <u>See</u> <u>Coleman v. Schwarzenegger</u>, No.

24 CIV S-90-0520 LKK-JFM, June 14, 2006 Order, Doc. #1840.  In the
case at bar, it is the policies and procedures of the CDCR that are

25 being challenged, not the deliberative process behind those
policies.  The court's June 14, 2006 Order in <u>Coleman</u> is therefore

26 irrelevant to the issue of whether BCPs are predecisional in this
case.

non-disclosure.   <u>FTC v. Warner</u>, 742 F.2d at 1161.   Plaintiffs allege that the Magistrate Judge erred in two ways: (1) by erroneously determining that the documents are not relevant to the litigation and (2) by failing to properly weigh the competing interests under balancing test required by <u>FTC v. Warner</u>. Pls.' Req. at 13.

Although the Magistrate Judge set forth the four <u>FTC v. Warner</u> factors in the "standards" section of his order, only one paragraph is devoted to analysis of these factors.   The order reads, in pertinent part,

> Nor does plaintiffs' contention that the BCPs are highly relevant to their claims hold water. Whether defendants were good, bad, or indifferent in their alleged intent to violate plaintiffs' rights is not particularly significant in this injunctive relief case. Either plaintiffs' due process, equal protection and ADA rights were violated, or they were not. Plaintiffs do not assert that they must demonstrate any state of mind on the part of defendants in order to prevail. The court questioned defendants whether they were raising some type of "feasibility" defense, in which case, of course, budget documents would be very relevant. Defendants represented that they were not, and their answer in this case contains no such affirmative defense.

Order at 11.  This court respectfully disagrees with the Magistrate Judge's conclusion.  As previously noted, under the <u>FTC v. Warner</u> balancing test, courts should consider the following four factors: (1) the relevance of the evidence sought to the litigation; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. <u>FTC v. Warner</u>, 742 F.2d at 1161.  Courts may also

1  consider (5) the interest of the litigant, and ultimately society,

2  in accurate judicial fact finding, <u>North Pacifica</u>, 274 F. Supp 2d

3  at 1122; and (6) the seriousness of the litigation and the issues

4  involved, <u>id.</u>

5       Although the Magistrate Judge appears to have discussed the

6  first two factors, the order is silent as to the other factors.

7  The standard for discovery is that the requested matters may lead

8  to relevant evidence. <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S.

9  340, 351 (1978). Thus even a finding that the documents are not

10 directly relevant would not lead to the conclusion that they were

11 not discoverable. As explained below, even the finding of

12 irrelevance is open to doubt. In any event, the court finds that

13 with respect to the BCPs, the need for fact-finding outweighs the

14 government's interest in non-disclosure. Because the Magistrate

15 Judge did not fully engage in the balancing test and address each

16 of the factors set forth in <u>FTC v. Warner</u>, the court finds that the

17 Magistrate Judge's conclusion is contrary to law.

18       **1. Relevance**

19      The gravamen of plaintiffs' complaint is that the parole

20 revocation system violates their due process rights. As in

21 <u>Valdivia v. Daivs</u>, the court looks to <u>Mathews v. Elridge</u> to

22 determine what process is due. <u>See</u> <u>Valdivia v. Davis</u>, 206

23 F.Supp. 2d 1068, 1072 (E.D. Cal. 2002) (Karlton, J.). Under

24 <u>Mathews</u>, the determination of what process is due, "requires

25 consideration of three distinct factors:" (1) the private interest

26 affected by the official action, (2) the probable value of any

1 additional procedural safeguards, and (3) "the government's
2 interest, including the fiscal and administrative burdens that
3 additional or substitute procedural requirements would entail."
4 Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

5     It appears that at least some of the documents in question
6 pertain to the third prong of the Mathews test, namely, the
7 fiscal and administrative burdens associated with increasing
8 procedural safeguards. A central component of this litigation will
9 be determining the level of public burden associated with
10 additional procedures in order to determine what level of process
11 is constitutionally required.

12     The BCPs and associated attachments represent the DJJ and
13 BPH's own estimates of the types of additional procedures necessary
14 to come into Constitutional compliance, and the estimated costs
15 associated with such procedures. The 2007-08 BCPs (documents bates
16 stamped: 543-636; 637-665; 855-878; 838-855) provide detailed
17 projections of the financial burden associated with providing
18 parole revocation hearings within a certain amount of time and with
19 a certain staffing level. The analysis includes projected workload
20 and funds needed for additional staffing, broken down by tasks such
21 as actual time spent in probable cause hearings, revocation
22 hearings, travel time, rest breaks, and miscellaneous additional
23 time such as escorting parolees and administrative tasks. Other
24 BCP documents reflect expected time needed for attorney training,
25 and developing tracking systems and review procedures.

26     These documents clearly provide estimates of the fiscal and

1   administrative   burden   of   providing   due   process   to   juvenile

2   parolees.    The   Magistrate   Judge's   order   does   not   mention   the

3   <u>Mathews</u> test, and rather focuses on defendant's contention that

4   feasability will not be raised as a defense.  The <u>Mathews</u> test does

5   not speak of the "defense" of feasability; rather, it sets forth

6   three considerations necessary in the evaluation of what process

7   is due.

8        Though the BCPs are relevant to the third prong of the <u>Mathews</u>

9   due process test, the same cannot be said for the remainder of the

10  documents.   As previously mentioned, there are 201 documents at

11  issue.  While the documents are not clearly labeled, the court has

12  conducted an independent *in camera* review of the documents and as

13  best   the   court   can   decipher,   only   some   of   these   documents

14  constitute BCPs.   The other documents, such as emails, personal

15  notes, and diagrams discuss legal strategy, respond to questions

16  from the DOF regarding BCPs, and the decision to appeal the DOF's

17  recommendation.  This information is merely tangential to the data

18  provided by the BCPs, and sheds little light on the third prong of

19  the <u>Mathews</u> test.  With respect to these documents, the court finds

20  that they are not relevant.[8]

21       In sum, the BCPs appear relevant to the third prong of the

22  <u>Mathews</u> test and accordingly, this factor weighs in favor of

23  disclosure.

24  ────────────────

25       [8]  The   court   notes   that   even   if   the   deliberative   process
    privilege  did  not  protect  these  tangential  documents,  these
26  documents may be independently protected as work product or under
    the attorney-client privilege.

1        **2.  Availability of Comparable Evidence from Other Sources**

2        Defendants assert that the privilege should apply to these

3   documents because there is other evidence available, namely final

4   BCPs, depositions, and written discovery.   In his order, the

5   Magistrate Judge determined that the documents should remain

6   protected because the "final budgets for the years in question" are

7   available to plaintiffs.   Order at 11:16.

8        Though the final BCPs shed some light on the administrative

9   burden associated with due process compliance, the final BCPs are

10  revised versions, created after the agencies have received

11  recommendations from the DOF.   As previously noted, the draft BCPs

12  contain in-depth analysis of the need for budget adjustment, and

13  analyze the costs and burdens associated with providing probable

14  cause and revocation hearings within a certain amount of time.

15       Plaintiffs suggest, and an independent review of the BCPs

16  confirms, that the Governor's final budget contains information

17  substantially inferior to the agencies' own budget requests.   The

18  Governor's final budget contains only a skeletal outline of funding

19  and positions granted to the CDCR's juvenile parole budget, as

20  opposed to the BCPs, which contain detailed analysis of new

21  positions needed.[9]   For these reasons, this factor weighs in favor

22  ───────────────

23       [9] An unpublished decision from the Northern District supports
     the court's position.  In <u>Sanchez v. Johnson</u>, plaintiffs challenged
     the State's developmental disabilities services and filed a motion
24   to compel disclosure of agency BCPs.   The court ordered the
     documents disclosed:

25

26       [T]he BCPs...as well as drafts of those documents are highly
         relevant to Plaintiffs' claims.  They contain detailed facts

1   of disclosure.

2        **3.  The Government's Role in Litigation**

3        Under <u>FTC v. Warner</u>, the court considers the role of the

4   government in the litigation. 742 F.2d at 1161-62.  Plaintiffs

5   assert that the Magistrate Judge "did not touch upon this factor

6   at all" in his analysis, thereby committing clear error.  Pls.'

7   Req. at 17:15.

8        Contrary to plaintiffs' contention, the Magistrate Judge did

9   discuss the role of the government in this litigation, albeit, in

10  the context of misconduct.  <u>See</u> Order at 9-11.[10]  In this regard,

11  the Magistrate Judge considered the government's interest in this

12  litigation.   The role of the government in this litigation is

13  ───────────────

14       and analysis concerning the adequacy of funding for various
        programs....While some of the factual information contained
15       in these documents may be available elsewhere, it is obvious
        that the quality and persuasiveness of such evidence is
16       likely to be substantially inferior to the agencies' own
        budget requests, which provide detailed analysis by those
17       encharged with administering the State programs...

18  <u>Sanchez. Johnson</u>, No. C-00-1593 CW (N.D. Cal. Nov. 19, 2001).

19       [10]   Plaintiffs cite <u>North Pacifica</u> and <u>Newport Pacific Inc.</u>
    for the proposition that the Magistrate Judge should have
20  additionally considered that (1) the government is the defendant
    and (2) the litigation is constitutional and of serious import.
21  Pls.' Request at 17.   However, this assertion is a
    mischaracterization of the two cases.   In both cases, the
22  government's decision-making process (and in <u>North Pacifica</u>, the
    intent of the decision-makers) was in question, and that is what
23  "tip[ped] the scales in favor of disclosure." <u>Newport Pac. Inc.</u>,
    200 F.R.D. 628, 640 (S.D. Cal. 2001); <u>See</u> <u>also</u> <u>North</u> <u>Pacifica</u>, 274
24  F. Supp. 2d 1118, 1124 (N.D. Cal. 2003).   Because neither the
    decision-making process nor intent of the government is at issue
25  in the case at bar, the court does not find that the Magistrate
    Judge's order was clearly erroneous in failing to explicitly
26  consider these cases.

significant, and weighs in plaintiffs' favor.

**4.   Extent Disclosure Will Chill Agency Discussion**

Under the fourth factor of the <u>FTC v. Warner</u> balancing test, the court considers, "the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." <u>FTC v. Warner</u>, 742 F.2d at 1161.   The Magistrate Judge's order did not address this factor.

Defendants argue that releasing the BCPs in the instant case would discourage "candid discussions to consider changes in the budget." Defs.' Opp'n at 9.    This argument is unpersuasive.  As the parties are well aware, BCPs have been turned over to plaintiffs in both the <u>Valdiva</u> and <u>Coleman</u> cases.   Moreover, defendants' concerns may be mitigated by having the court issue a protective order or have the documents disclosed under seal.[11] <u>See</u>, <u>e.g.</u>, <u>Price v. County of San Diego</u>, 165 F.R.D. 614, 620 (S.D. Cal. 1996) ("the Court is convinced that the infringement upon the frank and independent discussions regarding contemplated policies and decisions of the County . . .can be alleviated through the use of a strict protective order against use or dissemination of the materials outside of this lawsuit.").[12]

---

[11] When the BCPs were disclosed in the <u>Coleman</u> case, the court specifically ordered that the documents be turned over to the Special Master under seal.  <u>See</u> <u>Coleman v. Schwarzenegger</u>, No. CIV S-90-0520 LKK-JFM, June 14, 2006 Order, Doc. #1840

[12] The court in <u>Sanchez v. Johnson,</u> No. C-00-0593 at 18 (N.D. Cal. Nov. 19, 2001) reached a similar conclusion in finding that the disclosure of BCPs "intrudes minimally and without prejudice into agency deliberations," while production of internal emails, and memoranda "may result in far greater intrusion." <u>Id.</u> The court

1    In sum, because the government's concerns about hindering

2  frank discussion can be mitigated via a protective order or

3  disclosure under seal, this factor does not weigh heavily on the

4  side of non-disclosure.

5       **5.    Need for Accurate Fact Finding and Seriousness of**

6            **Litigation**

7       In addition to the FTC v. Warner factors, the court may also

8  consider the interest of the litigant, and ultimately society, in

9  accurate judicial fact finding, North Pacifica 274 F. Supp. 2d at

10  1122, Irvin, 127 F.R.D. at 173, and the seriousness of the

11  litigation and the issues involved, Irvin, 127 F.R.D. at 174. The

12  Magistrate Judge did not address these factors.

13       The desirability of accurate fact finding weighs in favor of

14  disclosure. See North Pacifica, 274 F. Supp. 2d at 1124.

15  Moreover, when the issues involved are alleged violations of

16  federally-protected civil rights, courts have consistently found

17  that this need is heightened and the privilege is outweighed. See

18  United States v. Phoenix Union High School, 681 F.2d 1235 (9th Cir.

19  1982), cert. denied, 459 U.S. 1191 (1983); Newport Pacific, 200

20  F.R.D. at 640; Irvin, 127 F.R.D. at 174.

21       Plaintiffs' allege that the State juvenile parole system is

22  in violation of the due process clause. This suit clearly involves

23  ────────────────────────

24  also noted that 32 states make agency budget requests part of the
    public record, "apparently without any chilling effect." Id. The

25  Sanchez court compelled production of BCPs and draft BCPs under a
    protective order in order to reduce any harm that might result from
    ordering the production. Id.

26

1   serious questions of Constitutional magnitude and accordingly,
2   there is a societal interest in accurate fact-finding. See, e.g.,
3   Newport Pacific, 200 F.R.D. at 640 (where plaintiffs alleged
4   violations of the Federal Fair Housing Act and Section 1983, the
5   court concluded that "[t]he interest in enforcing these laws is not
6   exclusive to the individual. It is an interest common to every
7   citizen, including the federal government. As a result, this factor
8   again favors disclosure.")
9   For these reason, the court finds that these final factors weigh
10  in favor of disclosure.
11  **D.  Whether the BCPs are Protected by Other Privileges**
12  Because the Magistrate Judge found that the deliberative
13  process privilege applied, he did not address the question of
14  whether the BCPs would be protected by either the attorney-client
15  privilege or the work-product doctrine.[13]  For the reasons
16  explained herein, the court concludes that the BCPs are not
17  protected by either of these alternative privileges.
18  **1.  Work Product Doctrine**
19  Defendants assert that many of the BCPs in question are non-
20  discoverable because they fall under the work product doctrine. The
21  court cannot agree.

22  _____

23  [13] Although the parties did not brief these issues on
    plaintiffs' request for reconsideration of the Magistrate Judge's
24  order, the issues were fully briefed in the parties' joint
    statement regarding plaintiffs' motion to compel. Accordingly, the
25  arguments regarding work-product and the attorney client privilege
    as applied to the BCPs has been fully briefed and may be resolved
26  at this time.

1      "The work-product doctrine is a qualified immunity which

2   protects from discovery documents and tangible things prepared by

3   a party or that party's representative in anticipation litigation."

4   Kintera, Inc. v. Convio, Inc., 219 F.R.D. 503, 507 (S.D. Cal.

5   2003); Fed. R. Civ. P. 26(b)(3).   As the party claiming the

6   privilege, defendants bear the burden of establishing that the

7   documents claimed as work product were in fact prepared in

8   anticipation of litigation.   Kintera, at 507.

9      In order for a document to be protected, it must be one "that

10  would not have been generated but for the pendency or imminence of

11  litigation."  Kintera, 219 F.R.D. at 507 (internal quotation marks

12  and citations omitted).  Accordingly, the doctrine does not protect

13  materials assembled in the ordinary course of business.   Griffith

14  v. Davis, 161 F.R.D. 687, 698-699 (D. Cal. 1995).   Rather, the

15  primary motivating purpose behind the creation of the documents

16  must be as an aid in possible future litigation.   Id.

17     It is evident that the BCPs and associated attachments in

18  question would have been prepared by the DJJ and BPH as part of the

19  routine budget procedure, regardless of any pending litigation.

20  Defendants fail to allege, much less meet their burden, that the

21  BCPs were created in anticipation of litigation.   See Joint

22  Statement Re: Pls.' Mot. To Compel at 33.   Accordingly, the BCPS

23  are not protected by the work-product doctrine.   See Griffith, at

24  698 (no protection for materials assembled in the normal course of

25  business).

26

### 2.   Attorney Client Privilege

Defendants also assert attorney-client privilege over some of the BCPs and attachments in question.  The attorney-client privilege protects "communications between client and attorney for the purpose of obtaining legal advice, provided such communications were intended to be confidential." Gomez v. Vernon, 255 F.3d 1118, 1131 (9th Cir. 2001).  "Because the attorney-client privilege has the effect of withholding relevant information from the fact-finder, it is applied only when necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to his or her attorney." Clarke v. American Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992)(citing Fisher v. United States, 425 U.S. 391, 403 (1976)).  As the party asserting the privilege, defendants bear the burden of establishing that the attorney-client privilege applies.  Clarke, 974 F.2d at 129.

Defendants have failed to establish that the BCPs and attachments in question are communications between attorney and client, nor that they were intended to be confidential.  Unlike some of the emails the court finds to be protected under the deliberative process privilege, these documents do not appear to be communications between the agency and its attorneys; rather they are drafts of documents to be submitted to another department for approval.  Therefore, the court concludes that the BCPs and attachments in question are not protected by the attorney-client privilege.

////

**IV.**

**Conclusion**

The Magistrate Judge was not in error in finding that the documents in question are protected by the deliberative process privilege.  That said, the privilege is qualified and as explained above, it may be overcome if the "need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure."  FTC v. Warner, 742 F.2d at 1161.  The Magistrate Judge's order failed to fully analyze this question.  Having conducted an independent *in camera* review of the documents at issue, and having analyzed the balancing test forth in FTC v. Warner, the court concludes that the need for BCPs and for accurate fact finding outweighs the government's interest in non-disclosure.  Specifically, the BCPs are relevant in evaluating the administrative burden associated with increased procedural protections.[14]

Accordingly, the court orders as follows:

1.    Plaintiffs' Request for Reconsideration is GRANTED.

2.    The defendants shall produce the following documents under seal to plaintiffs no later than close of business on July 13, 2007:

////

////

_____

[14]  Because the email communications and memoranda do not provide information relevant to the Mathews test, these remain protected by the deliberative process privilege and shall not be disclosed.

| Bates # | Document Title |
|---|---|
| [593-636] | 2007-2008  Budget Change Proposal (BCP) "Division of Juvenile Justice Parolee Due Process" |
| [637-665] | 2007-2008 Budget Change Proposal (BCP) "Division of Juvenile Justice Parolee Due Process" |
| [855-878] | 2007-2008 Budget Change Proposal (BCP) "Division of Juvenile Justice Parolee Due Process" |
| [838-855] | 2007-2008 Budget Change Proposal (BCP) "Board of Parole Hearings – Youthful Offender Hearing Services, Parolee Due Process" |
| [671-696] | 2006-2007 Legislative Proposal Package "Division of Juvenile Justice/BPH – Youth Board, Valdivia/Morrissey Hearing Enhancement" |
| [821-826] | 2006-2007 Legislative Proposal Package "Division of Juvenile Justice/BPH – Youth Board, Valdivia/Morrissey Hearing Enhancement" |
| [697-716] | 2005-2006 Budget Change Proposal (BCP) "Youth Authority Board/Department of the Youth Authority, Morrissey Hearing Enhancements (Valdivia Concept)" |
| [716-720] | 2005-2006 Legislative Proposal "Youth Authority Board/Department of the Youth Authority, Valdivia/Morrissey Hearing Enhancement" |
| [721-723] | 2004-2005 Budget Change Proposal "Youth Authority Board/Department of the Youth Authority, Morrissey Hearing Enhancements (Valdivia Concept)" |
| [755-65] | Draft BCP attached to Dec. 17 Memo |
| [743-47] | Undated document: "Response to the Department of Finance BCP Recommendations" |

24

1

        [748-49]        Document dated Nov. 13, 2006: "Response

2
                                  to   the   Department   of   Finance   BCP

3
                                  Recommendations"

IT IS SO ORDERED.

4

DATED: July 6, 2007.

5

6

7
                            LAWRENCE K. KARLTON

8
                            SENIOR JUDGE
                            UNITED STATES DISTRICT COURT

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26