1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10

11   L.H., A.Z., D.K., and D.R.,
     on behalf of themselves and
12   all other similarly
     situated juvenile parolees
13   in California,
                                         NO. CIV. S-06-2042 LKK/GGH
14        Plaintiffs,

15     v.                                      O R D E R

16   ARNOLD SCHWARZENEGGER,
     Governor, State of
17   California, et al,

18        Defendants.
     _____/
19

20        This is a class action brought by a class of juvenile parolees

21   in California who claim that defendants' policies and practice deny

22   them their constitutional rights to due process, equal protection,

23   and assistance of counsel.  They also allege violation of their

24   statutory rights under the Americans with Disabilities Act, 42

25   U.S.C. §§ 12101-12213, and section 504 of the Rehabilitation Act,

26   29 U.S.C. § 794. Defendants include the Governor of the State of

                                    1

1  California   and   various   persons   and   entities   administering
2  California's juvenile parole system.

3       Plaintiffs   move   for   partial   summary   judgment   on   two
4  alternative grounds. First, plaintiffs seek that the Court find,
5  as a matter of law, that defendants violate plaintiffs' due process
6  rights by failing to conduct two hearings prior to revocation of
7  parole.   Alternatively,   plaintiffs   move   for   partial   summary
8  judgment on the grounds that, if a single hearing is sufficient to
9  revoke   plaintiffs'   parole,   defendants   violate   plaintiffs'   due
10 process   rights   by   failing   to   hold   such   a   hearing   promptly.
11 Plaintiffs
12 seek an injunction requiring that defendants hold probable cause
13 hearings for all juvenile parolees within ten calendar days of the
14 parolee being taken into custody for revocation proceedings. The
15 court grants the plaintiffs' motion on the issue of whether the
16 defendants violate the plaintiffs' due process rights, but the
17 court denies the motion as to injunctive relief.

18                    **I. BACKGROUND AND FACTS**[1]

19       Currently, there are approximately 2,775 juveniles on parole
20 in California. Decl. of Maria Morris ("Morris Decl.") Ex. L, ¶ 4.
21 The certified plaintiff class consists of juvenile parolees in or
22 under   the   jurisdiction   of   California,   including   all   juvenile
23 parolees   with   disabilities   as   defined   in   section   504   of   the
24 Rehabilitation Act and the Americans with Disabilities Act, who are

25

26          [1] All facts are undisputed unless otherwise noted.

1   (1) in the community under parole supervision or are at large, or

2   (2) in custody in California as alleged parole violators and who

3   are awaiting revocation of their parole, or (3) in custody after

4   having been found in violation of their parole and returned to

5   custody. Order Granting Class Certification, Feb. 28, 2007.

6       A juvenile parolee may have his parole revoked based on the

7   determination that he has committed a new crime or that he has

8   failed to abide by the other terms and conditions of parole. Cal.

9   Code Regs. tit. 15, § 4982. Prior to revocation, the parolee can

10  be arrested and detained pending the Juvenile Parole Board's

11  determination that there is probable cause to believe that the

12  parolee has violated the conditions of parole, or "when a violation

13  of parole has been established." Cal. Code Regs. tit. 15, §

14  4978(b)(1).

15  **A.   Current Process for Parole Revocation When the Parolee Is Not**

16      **Accused of a New Crime**

17      A parolee may have his parole revoked based upon his having

18  violated the terms of his parole, even when the parolee has not

19  been accused of a new crime. California regulations refer to this

20  as a "technical violation" of parole. Cal. Code Regs. tit. 15, §

21  4982(a)(2). The defendants' regulations do not provide for a

22  hearing to determine whether there is probable cause to believe

23  that the conduct comprising the technical violation did in fact

24  occur. SUF ¶ 10; Defendants' Response to Plaintiff's Request for

25  Admissions 14:16-15:16, Exh. C, Decl. of Sarah Laubach ("Laubach

26  Decl.") (admission of defendant Division of Juvenile Justice).

1    Once a parolee has been taken into custody for a technical
2    violation, California regulations require that a hearing occur
3    within sixty days to determine whether the parolee has violated a
4    condition of his or her parole.   Cal. Code Regs. tit. 15, §
5    4978(c)(1); SUF ¶ 13. This 60-day period can be extended upon
6    written justification. Cal. Code Regs. tit. 15, § 4978(c)(2); SUF
7    ¶ 15; cf. Decl. of Gay Grunfeld ("Grunfeld Decl.") Exh. A, B, F,
8    G, L.

9    More than half of all juvenile parole revocation proceedings
10   in recent years have been for technical violations. SUF ¶ 6. From
11   2004-2006, approximately 75 percent of parole revocation
12   proceedings for technical violations resulted in the parolee being
13   continued on parole or discharged from parole; in other words,
14   technical violations led to a parolee's parole being revoked in
15   only one-fourth of the cases. SUF ¶ 9.

16   **B.   Current Process for Parole Revocation When the Basis of the**
17   **Revocation is the Parolee's Having Been Charged With a New**
18   **Crime**

19   When the parolee faces revocation based on new criminal
20   charges, defendants' regulations provide for a preliminary hearing
21   to determine that there is probable cause to believe that the
22   parolee committed the crime. Cal. Code Regs. tit. 15, § 4981. The
23   juvenile parolee may be detained while this determination is made.
24   SUF ¶ 1. After the parolee is detained, the parolee's parole agent
25   prepares a detention report, which identifies the reasons for the
26

4

1   detention. Depo. of Marco Reyna[2] ("Reyna Depo.") 31:1-31:5, Exh.

2   E, Laubach Decl. This report is then reviewed by a Supervising

3   Parole Agent. Reyna Depo. 31:8-31:12, Exh. E, Laubach Decl. If the

4   Supervising Parole Agent decides to place a parole-hold on the

5   parolee, within forty-eight hours the parolee is given notice of

6   the allegation against him. Defendant's Reponse to Plaintiff's

7   Request for Admissions 4:19-4:20, Exh. C, Laubach Decl. (admissions

8   of defendant Division of Juvenile Justice). The parolee is able to

9   waive his appearance at the probable cause hearing. Reyna Depo.

10  25:2-25:17, Exh. E, Laubach Decl.

11          When the parolee is given notice of the allegation of the law

12  violation, the parolee is also given a "Parolee Probable Cause/

13  Violation Detention Hearing Waiver Feedback" form. Defendant's

14  Reponse to Plaintiff's Request for Admissions 16:9-16:11, Exh. C,

15  Laubach Decl. (admissions of defendant Division of Juvenile

16  Justice). This form presents the parolee with two options: that the

17  parolee waives "a probable cause/detention hearing and a timely

18  violation hearing for any law violations," stating that the parolee

19  understands the waiver is not an admission of guilt.

20  Alternatively, the parolee can request a detention hearing before

21  the Youth Authority Board. Decl. of Maria Morris ("Morris Decl.")

22  Exh. D. Parolees are not represented by counsel when given this

23  form. Reyna Depo. 70:10-70:12, Exh. E, Laubach Decl. If the waiver

24  form is not returned postmarked within five calendar days, the

25  ───────────────

26      [2] Marco Reyna is one of the persons designated by the
    defendants as most knowledgeable of juvenile parole hearings.

1   parolee is deemed to have automatically waived his right to appear
2   at the probable cause hearing. Morris Decl. Exh. D.

3       If the parolee waives his appearance at the probable cause
4   hearing, a hearing officer from the Juvenile Parole Board
5   determines whether the parolee should be detained pending
6   adjudication of the new crime with which the parolee has been
7   charged. Reyna Depo. 31:16-31:24, Exh. E, Laubach Decl. The hearing
8   officer bases his determination on the report offered in support
9   of the parole-hold. Id. Defendant concedes that in these
10  situations, where the parolee has waived his appearance at the
11  probable cause hearing, "California . . . does not conduct an
12  actual hearing." Defs.' Opposition at 10; cf. Reyna Depo. 25:2-
13  25:6, Exh. E, Laubach Decl. (stating that if the parolee signs the
14  waiver, he is "waiving [his] rights to a . . . probable cause
15  detention hearing").

16      Very rarely does a juvenile parolee invoke his right to appear
17  at the probable cause hearing; as defendants concede, only when the
18  parolee invokes this right does the hearing actually occur. SUF ¶
19  18; Defs.' Opposition at 10. Neither party has described for the
20  court in detail the process and procedures that exist at these
21  probable cause hearings.

22      After the parolee has been detained for a law violation,
23  California regulations allow sixty days for a probable cause
24  hearing. SUF ¶ 12; Cal. Code Regs. tit. 15, § 4978(c)(1)(B). This
25  period may be extended upon written justification being presented
26  to the hearing officer. SUF ¶ 14; Cal. Code Regs. tit. 15,

1  4978(c)(2); <u>cf</u>. Decl. of Gay Grunfeld Exh. H, I.

**III.**

**STANDARD FOR MOTION FOR SUMMARY JUDGMENT UNDER**

**FEDERAL RULE OF CIVIL PROCEDURE 56**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>see also</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Secor Ltd. v. Cetus Corp</u>., 51 F.3d 848, 853 (9th Cir. 1995).

> Under summary judgment practice, the moving party [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  <u>Id</u>.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  <u>See</u> <u>id</u>. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily

7

1  renders all other facts immaterial." <u>Id.</u>  In such a circumstance,

2  summary judgment should be granted, "so long as whatever is before

3  the district court demonstrates that the standard for entry of

4  summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id.</u>

5  at 323.

6      If the moving party meets its initial responsibility, the

7  burden then shifts to the opposing party to establish that a

8  genuine issue as to any material fact actually does exist.

9  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,

10  586 (1986); <u>see also</u> <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>,

11  391 U.S. 253, 288-89 (1968); <u>Secor Ltd.</u>, 51 F.3d at 853.

12      In attempting to establish the existence of this factual

13  dispute, the opposing party may not rely upon the denials of its

14  pleadings, but is required to tender evidence of specific facts in

15  the form of affidavits, and/or admissible discovery material, in

16  support of its contention that the dispute exists.  Fed. R. Civ.

17  P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11; <u>see also</u> <u>First Nat'l</u>

18  <u>Bank</u>, 391 U.S. at 289; <u>Rand v. Rowland</u>, 154 F.3d 952, 954 (9th Cir.

19  1998).  The opposing party must demonstrate that the fact in

20  contention is material, i.e., a fact that might affect the outcome

21  of the suit under the governing law, <u>Anderson v. Liberty Lobby,</u>

22  <u>Inc.</u>, 477 U.S. 242, 248 (1986); <u>Owens v. Local No. 169, Ass'n of</u>

23  <u>Western Pulp and Paper Workers</u>, 971 F.2d 347, 355 (9th Cir. 1992)

24  (quoting <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>,

25  809 F.2d 626, 630 (9th Cir. 1987)), and that the dispute is

26  genuine, i.e., the evidence is such that a reasonable jury could

1   return a verdict for the nonmoving party, <u>Anderson</u>, 477 U.S. 248-

2   49; <u>see also</u> <u>Cline v. Indus. Maint. Eng'g & Contracting Co.</u>, 200

3   F.3d 1223, 1228 (9th Cir. 1999).

4        In the endeavor to establish the existence of a factual

5   dispute, the opposing party need not establish a material issue of

6   fact conclusively in its favor.  It is sufficient that "the claimed

7   factual dispute be shown to require a jury or judge to resolve the

8   parties' differing versions of the truth at trial." <u>First Nat'l</u>

9   <u>Bank</u>, 391 U.S. at 290; <u>see also</u> <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.

10  Thus, the "purpose of summary judgment is to 'pierce the pleadings

11  and to assess the proof in order to see whether there is a genuine

12  need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R.

13  Civ. P. 56(e) advisory committee's note on 1963 amendments); <u>see</u>

14  <u>also</u> <u>Int'l Union of Bricklayers & Allied Craftsman Local Union No.</u>

15  <u>20 v. Martin Jaska, Inc.</u>, 752 F.2d 1401, 1405 (9th Cir. 1985).

16       In resolving the summary judgment motion, the court examines

17  the  pleadings,  depositions,  answers  to  interrogatories,  and

18  admissions on file, together with the affidavits, if any.  Rule

19  56(c); <u>see also</u> <u>In re Citric Acid Litigation</u>, 191 F.3d 1090, 1093

20  (9th Cir. 1999).  The evidence of the opposing party is to be

21  believed, <u>see</u> <u>Anderson</u>, 477 U.S. at 255, and all reasonable

22  inferences that may be drawn from the facts placed before the court

23  must be drawn in favor of the opposing party, <u>see</u> <u>Matsushita</u>, 475

24  U.S. at 587 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654,

25  655 (1962) (<u>per</u> <u>curiam</u>)); <u>See also</u> <u>Headwaters Forest Def. v. County</u>

26  <u>of Humboldt</u>, 211 F.3d 1121, 1132 (9th Cir. 2000).  Nevertheless,

1  inferences are not drawn out of the air, and it is the opposing

2  party's obligation to produce a factual predicate from which the

3  inference may be drawn.  See Richards v. Nielsen Freight Lines, 602

4  F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

5  (9th Cir. 1987).

6       Finally, to demonstrate a genuine issue, the opposing party

7  "must do more than simply show that there is some metaphysical

8  doubt as to the material facts. . . . Where the record taken as a

9  whole could not lead a rational trier of fact to find for the

10 nonmoving party, there is no 'genuine issue for trial.'"

11 Matsushita, 475 U.S. at 587 (citation omitted).

**IV. ANALYSIS**

**A.   Evidentiary Issues**

**1.   Plaintiffs' Objections to Defendants' Declarations in Opposition to Plaintiffs' Motion for Summary Judgment**

16      Federal Rule of Civil Procedure 56(e) mandates that affidavits

17 supporting or opposing a motion for summary judgment "set forth

18 such facts as would be admissible in evidence, and shall show

19 affirmatively that the affiant is competent to testify to the

20 matters stated therein."  Competence to testify requires that the

21 witness have personal knowledge of the facts comprising his

22 testimony. Fed. R. Evid. 602. An affiant whose statements rely on

23 hearsay clearly does not meet this standard. Block v. City of Los

24 Angeles, 253 F.3d 410, 419 (9th Cir. 2001).

25      An affiant who has not established the basis of his or her

26 knowledge has also failed to meet the requirements of Federal Rule

10

1  of Civil Procedure 56(e). In such a situation, as the Ninth Circuit

2  explained, "it is impossible to evaluate potential hearsay

3  implications of [the] statements [in the affidavit] without the

4  required personal knowledge foundation." <u>Norita v. N. Mariana</u>

5  <u>Islands</u>, 331 F.3d 690, 697 (9th Cir. 2003). Although the affiant

6  may have based his or her statements on personal knowledge, the

7  affiant also could have based the statements on business records

8  he or she read, conversations with others who did have personal

9  knowledge, or even double hearsay. <u>Id.</u> at 697-98. These

10  possibilities justify strict adherence to the directives of Rule

11  56(e).

12  　　　Here, portions of the declaration by Shelley Jones that

13  defendants offer in support of their opposition to summary judgment

14  purport to explain how the regulations for revoking the parole of

15  a juvenile are in fact carried out. <u>See</u> Decl. of Shelly Jones

16  ("Jones Decl.") ¶ 3 (describing how parole agents "often"

17  investigate the circumstances of a law violation and when the

18  Juvenile Parole Board "usually" holds probable cause hearings), ¶

19  4 (describing how the Supervising Parole Agent decides whether to

20  issue a parole-hold), ¶ 5 (stating that "occasionally" the

21  revocation hearings do not occur within the typical timeline), ¶

22  6 (averring "upon information and belief" that there are

23  educational and work opportunities for juvenile parolees in DJJ

24  facilities). In her April 11, 2007 deposition, Ms. Jones identified

25  her job duties, which include scheduling hearings; drafting changes

26  to regulations, policies, and procedures; training hearing officers

1  and parole agents; analyzing appeals from wards; and analyzing
2  legislation. Depo. of Shelly Jones, Exh. F, Laubach Decl. This
3  being the case, the court concludes that the above-referenced
4  portions of the Jones declaration fail to comply with Rule 56(e),
5  because the basis of Ms. Jones' knowledge is neither stated nor
6  apparent to the court. Therefore, the court sustains the
7  plaintiffs' objection with regards to the factual averments
8  contained in these portions of her declaration.[3]

9      The declaration from Allen Wilcher that defendants offer in
10  support of their opposition to summary judgment is similarly
11  flawed. In his declaration, Mr. Wilcher described what occurs after
12  a juvenile parolee has been arrested on a new charge or when he is
13  believed to have committed a technical violation of the terms of
14  his parole. Decl. of Allen Wilcher ("Wilcher Decl.") ¶¶ 2-3.
15  Although Mr. Wilcher identified himself as a Parole Agent III at
16  California Department of Corrections and Rehabilitation, a position
17  he has held since 1997, he has not explained how he is aware of the
18  steps that actually occur when a parolee is suspected to have
19  violated the terms of his parole. See Wilcher Decl. ¶ 1. Mr.
20  Wilcher has not declared that his statements are based on his
21  personal knowledge and observations. Because the statements in Mr.
22  Wilcher's declaration may very well be based on business records
23  Mr. Wilcher read, conversations with others who did have personal

24

25      [3] It may be that the defendants sought to tender Jones as an
    expert, which might justify reliance on otherwise impermissible
26  matters.  The defendants, however, failed to seek a determination
    of that status or actually even notice such a status.

12

1  knowledge, or even double hearsay, the declaration does not satisfy

2  Rule 56(e).[4]

3      Accordingly, the court sustains plaintiffs' objections to

4  defendants' declarations in opposition to plaintiffs' motion for

5  summary judgment.

6      **2.   Plaintiffs' Request for Judicial Notice**

7      Plaintiffs request the court take judicial notice of Senate

8  Report number 94-369, 1976 U.S.C.C.A.N. 335. This report describes

9  the Parole Commission and Reorganization Act. Plaintiffs have

10  provided a copy of this report to the Court as Exhibit K to the

11  Declaration of Maria Morris in Support of Plaintiff's Motions for

12  Partial Summary Judgment.

13      A court may take judicial notice of a fact not subject to

14  reasonable dispute, either because the fact is generally known

15  within the territorial jurisdiction of the trial court or because

16  the fact is capable of accurate and ready determination from

17  sources whose accuracy cannot reasonably be questioned. Fed. R.

18  Evid. 201(b). A court shall take judicial notice of a judicially

19  noticeable fact "if requested by a party and supplied with the

20  necessary information." Fed. R. Evid. 201(d).

21      Here, the Senate Report is a public record, and therefore the

22  court is able to accurately and readily determine its contents.

23  Furthermore, the contents of the Report derive from a source whose

24  accuracy cannot reasonably be questioned. Finally, plaintiffs have

---

25

26      [4] Again, the defendants have failed to even seek to have
Wilcher declared an expert.

1   complied with Federal Rule of Evidence 201(d) by requesting
2   judicial notice and supplying the court with a copy of the Report.

3        Therefore the court takes judicial notice of Senate Report
4   number 94-369, 1976 U.S.C.C.A.N. 335.

5   **B.   Framework for Analysis of Plaintiffs' Motion for Summary**
6   **Judgment**

7        Plaintiffs move for partial summary judgment on two
8   alternative grounds. First, plaintiffs argue that, as a matter of
9   law, defendants violate plaintiffs' due process rights by failing
10  to conduct two hearings prior to revocation of parole, one of which
11  being a preliminary hearing. Second and alternatively, plaintiffs
12  move for partial summary judgment on the grounds that, if a single
13  hearing is sufficient to revoke plaintiffs' parole, defendants
14  violate plaintiffs' due process rights by failing to hold such a
15  hearing promptly. Plaintiffs seek an injunction requiring that
16  defendants hold probable cause hearings for all juvenile parolees
17  within ten calendar days of the parolee being taken into custody
18  for revocation proceedings.

19       Because the issues presented in the present case present a
20  legal analysis similar to that which the court undertook in
21  Valdivia v. Davis, 206 F. Supp. 2d 1068 (E.D. Cal. 2002), the court
22  recreates the relevant portions of that opinion here.

23       In Mathews v. Eldridge, 424 U.S. 319 (1976), the Supreme Court
24  established a three step balancing test to resolve procedural due
25  process claims. While *Mathews* did not involve claims arising in a
26  parole context, that fact does not appear significant. Indeed,

                                    14

1    procedural due process jurisprudence appears to employ the same

2    three part test irrespective of the context in which the claim

3    arises. See Greenholtz v. Inmates, Nebraska Penal & Correctional

4    Complex, 442 U.S. 1, 18,(1979).[5] Of course to recognize that the

5    same standard applies, is not to say that context is irrelevant.

6    On the contrary, as explained below, context is one of the elements

7    to be considered in arriving at a conclusion as to what process is

8    due. I turn to the three part test.

9        The first criteria in assessing the process due is the value

10   of the liberty interest and the degree of potential deprivation.

11    See Mathews, 424 U.S. at 341. (citing Morrissey, 408 U.S. 471).

12    As the Court in Morrissey noted, "consideration of what procedures

13   due process may require under any given set of circumstances must

14   begin with a determination of the precise nature of the government

15   function involved as well as of the private interest that has been

16   affected by the governmental action." Morrissey, 408 U.S. at 481

17   (quoting Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S.

18   886, 895 (1961)).   After identifying the nature of the right at

19   issue, the court must consider "the fairness and reliability of the

20   

21        [5] Morrissey v. Brewer, 408 U.S. 471 (1972), the seminal parole

22   violation case preceded Mathews. It cited to Mathews' "direct
     ancestors in reaching its conclusions". See Morrissey, 408 U.S. at

23   481(citing Goldberg v. Kelly, 397 U.S. 254, 263(1970); Fuentes v.
     Shevin, 407 U.S. 67(1972)). Moreover, Mathews, while involving a

24   property interest in Social Security disability benefits, cited to
     cases in the prison context, as well as Morrissey, to develop its

25   test for determining the process due before deprivation of a
     constitutionally protected interest. See Mathews, 424 U.S. at

26   333-34 (citing Wolff v. McDonnell, 418 U.S. 539, 557-58(1974);
     Morrissey, 408 U.S. at 481)

1    existing pretermination procedures, and the probable value, if any,

2    of additional procedural safeguards." Mathews, 424 U.S. at 343.

3    Finally, the court must consider the administrative burden and

4    other societal costs, or benefits, which might be associated with

5    requiring more process as a matter of constitutional law. Id. at

6    347.

7        As Morrissey noted, the liberty interest at stake in cases

8    such as the one at bar, is a parolee's interest in retaining the

9    "enduring attachments of normal life" so long as he or she does not

10   violate the conditions of parole. 408 U.S. at 482.[6] While there

11   may be no constitutional right to parole and while the conditions

12   of parole may significantly restrict a parolee's freedom, it is

13   self-evident that the liberty interest of a parolee is quite

14   significant, and much greater than the liberty interest of a

15   prisoner still confined within the prison system. See id.[7]

16   ("Though the State properly subjects [a parolee] to many

17   restrictions not applicable to other citizens, his condition is

18   very different from that of confinement in prison.").[8]

19   _____

20       [6] The Court explained that:
     "Subject to the conditions of his parole, he [the parolee] can be
21   gainfully employed and is free to be with family and friends and
     to form the other enduring attachments of normal life ..."
22   Morrissey, 408 U.S. at 480. While juveniles may not all be seeking
     gainful employment, they may be enrolled in school, an equally
23   important opportunity.

24       [7] Just ask any defendant in a criminal trial whether he wants
     probation or imprisonment.
25

26       [8] Since the liberty interest of those persons outside the
     prison is far greater then those who are imprisoned, cases such as

1    Under the rationale of <u>Morrissey</u>, the "fairness and
2  reliability" of the existing procedures should then be measured by
3  determining how effective the procedures are in assuring a
4  factually accurate statement of (1) whether there is probable cause
5  to believe that the parolee violated parole (procedures during
6  preliminary stage), and (2) whether the parolee did in fact violate
7  parole (procedures during revocation hearing).  As the High Court
8  explained, "[i]n analyzing what [process] is due, we see two
9  important stages in the typical process of parole revocation ...
10 The first stage occurs when the parolee is arrested and detained,
11 usually at the direction of the parole officer.  The second occurs
12 when parole is formally revoked."  408 U.S. at 485. The first stage
13 is to insure that the parolee's life is not disrupted by an
14 unjustified parol hold, while the second stage requires reliable
15 information justifying the parolee's long term reincarceration. <u>Id</u>.
16 Fundamentally, the process due must include procedures which will
17 prevent parole from being revoked because of "erroneous information
18 or because of an erroneous evaluation."  <u>Id</u>. at 484.

19    Of course, as with all due process considerations, the balance
20 which the court strikes in the parole revocation context is
21 informed by an understanding that "due process is flexible and
22 calls for such procedural protections as the particular situation

23 ───────────────────

24 <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), and <u>Meachum v. Fano</u>, 427
   U.S. 215 (1976), which involve asserted rights within prison, do
25 not inform what weight is to be accorded the liberty interest at
   stake in the parole context. <u>See</u> <u>also</u> <u>Young v. Harper</u>, 520 U.S.
26 143, 147-48(1997).

demands." Id. at 481. Put bluntly, however, flexibility is not a shibboleth permitting something less than what the particular situation does demand.

Given all the above, I now consider the process that is due specifically when a parolee's liberty interest is endangered by a claimed violation of the terms of parole.[9]

To assess the validity of plaintiffs' claim, the court must first determine whether there is controlling precedent speaking to the particular procedures due at the initial stage of the parole revocation process. Obviously where binding precedent requires particular procedures, the pertinent question is whether defendants are providing those required procedures. In the absence of such controlling precedent, the task is to apply the *Mathews* process to the procedures at issue. As I now observe, the courts by which I am bound have spoken with less than perfect clarity on the issues before me.

**C.   Due Process Requirements for Pre-Revocation Hearings**

_____

[9] Defendants appear to suggest that the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626(a)(1)(A), has altered the values to be balanced requiring the court to afford "substantial weight" to any adverse impact upon public safety or the operation of the criminal justice system. I cannot agree. By its terms, Section 3626(a)(1)(A) applies to any "civil action with respect to prison conditions." Here, plaintiffs do not challenge prison conditions. Rather, plaintiffs challenge quite a different subject, parole violation procedures. As noted *supra,* the Supreme Court has long recognized different issues are at stake when addressing parolees as contrasted with those who are imprisoned. Young v. Harper, 520 U.S. 143(1997). While considerations of public safety and the impact on the criminal justice system are proper factors to weigh in determining the process due, the weight to be accorded those factors is unaffected by PLRA.

18

1   Plaintiffs argue that due process requires, alternatively, a

2   bifurcated process that includes a preliminary hearing before the

3   revocation hearing, or a single revocation hearing held promptly.

4   This court concludes that because neither a preliminary hearing is

5   held promptly nor a single revocation hearing held promptly, the

6   defendants' policies and practices violate the plaintiffs' due

7   process rights.

8   Plaintiffs' first alternative claim is that they are being

9   denied due process because defendants do not afford juvenile

10   parolees preliminary hearings to verify the existence of probable

11   cause prior to the revocation hearing. Defendants acknowledge that

12   juvenile parolees accused of technical violations do not receive

13   preliminary probable cause hearings. SUF ¶ 10. Defendants contend,

14   however, that all juvenile parolees accused of law violations are

15   entitled to preliminary hearings, although many choose to waive

16   their appearance at them. Defendants argue that the resulting

17   "hearing"[10] that occurs in the parolee's absence satisfies the

18   demands of due process.

19   Plaintiffs' second alternative claim is that if a distinct

20   probable cause hearing is not required, defendants nevertheless

21   violate plaintiffs' due process rights by failing to hold a hearing

22   in a sufficiently timely manner. Whether a juvenile parolee is

23   _____

24   [10] Defendants concede that, when a juvenile parolee waives his appearance at the preliminary hearing, the State then does not hold "an actual hearing." Defs.' Opposition at 10. Instead, a hearing

25   officer makes a probable cause determination based on the information provided by the Supervising Parole Agent. Reyna Depo.

26   31:16-31:24, Exh. E, Laubach Decl.

1   taken into custody for an alleged technical violation or a law

2   violation, the State has sixty days (or more, upon written

3   explanation) to hold any hearing. SUF ¶¶ 12-15. This includes the

4   single revocation hearing for alleged technical violators and the

5   probable cause determination for law violators. SUF ¶¶ 12-13.

6       As the court explains below, because for neither technical nor

7   law violators does the State make a prompt probable cause

8   determination, the defendants' parole revocation process for

9   juvenile offenders violates the latter's due process rights. Even

10  if there is some question as to whether a separate preliminary

11  hearing must be held in order to satisfy the demands of due

12  process, it is clear that the law requires that a probable cause

13  determination be made promptly.

14      **1.   Defendants Are Required to Provide Plaintiffs With a**

15      **Prompt Probable Cause Determination**

16      In _Morrissey_, the Supreme Court appeared to determine that the

17  Constitution requires a two stage process. 408 U.S. at 485, ("[W]e

18  see two important stages in the typical process of parole

19  revocation," the first being the "arrest and preliminary hearing"

20  stage, and the second, "when parole is formally revoked."). The

21  Court explained that the initial "inquiry should be seen as in the

22  nature of a 'preliminary hearing' to determine whether there is

23  probable cause or reasonable ground to believe that the arrested

24  parolee has committed acts that would constitute a violation of

25  parole conditions." _Id_.

26      The _Morrissey_ Court's explanation of the requirements for a

preliminary procedure plainly suggests that it contemplated a "hearing" rather than some ex-parte process, for confirming probable cause. For instance, in describing the "preliminary hearing," the Court stated that "the parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation." Id. at 486-87. The Court added that "[a]t the hearing, the parolee may appear and speak in his own behalf;  he may bring letters, documents, or individuals who can give relevant information to the hearing officer." Id. at 487. Moreover, on request of the parolee, the "person who has given adverse information on which parole revocation is to be based is to be made available for questioning in his presence." Id. Finally, the Court required that the determination of reasonable grounds "should be made by someone not directly involved in the case." Id. at 485.

Despite the fairly detailed description of a constitutionally sufficient preliminary determination, it remains true that the Court has repeatedly taught, and not just in Morrissey, that the requisites of due process are flexible. As will be seen, this teaching has suggested to some that Morrissey did not command two hearings under all circumstances. As I now explain, that conclusion, while plausible, is difficult to maintain in light of the Supreme Court's next discussion of the issue.

A year after Morrissey, the Court explained that in that case "we held that a parolee is entitled to two hearings, one a

1  preliminary hearing at the time of his arrest and detention to

2  determine whether there is probable cause to believe that he has

3  committed a violation of his parole, and the other a somewhat more

4  comprehensive hearing prior to the making of the final revocation

5  decision." _Gagnon v. Scarpelli_, 411 U.S. 778, 781-82, (1973); _see_

6  _also_  _id_. at 786("_Morrissey_ mandated preliminary and final

7  revocation hearings."). The _Gagnon_ Court again emphasized that

8  "[a]t the preliminary hearing, a probationer or parolee is entitled

9  to notice of the alleged violations ... an opportunity to appear

10 and to present evidence on his own behalf, a conditional right to

11 confront adverse witnesses, an independent decisionmaker, and a

12 written report of the hearing."  411 U.S. at 786. Observing no

13 difference between parole revocation and probation revocation, the

14 Court stated that "we hold that a probationer, like a parolee, is

15 entitled to a preliminary and final revocation hearing." _Id_. at

16 782.

17      While it would appear that, without more, _Morrissey_ and _Gagnon_

18 are dispositive, this court is also bound by the Ninth Circuit's

19 interpretation of the teachings of the High Court. I thus turn to

20 the Circuit's cases.

21      Nine years after _Gagnon_, the question of hearings under

22 _Morrissey_ was discussed in _Pierre v. Washington State Board of_

23 _Prison Terms and Paroles_, 699 F.2d 471 (9th Cir. 1983). There, a

24 habeas petitioner, after having his parole revoked, claimed that

25 the State did not adhere to its own guidelines for determining his

26 minimum prison term. The petitioner also claimed that he was denied

due process because the State did not provide him with a preliminary hearing prior to his revocation hearing. On appeal, the petitioner abandoned his claim regarding the preliminary hearing. Nonetheless, after rejecting his claim concerning State guidelines, the Circuit panel stated that "[a]lthough appellant abandoned his contention that failure to hold a preliminary hearing prior to the formal on-site revocation hearing violated his due process right, we believe the issue is before us." Pierre, 699 F.2d at 472.[11] The Pierre court then opined that the Supreme Court did not intend to require two hearings in every case, but only in cases with a fact pattern similar to the one before it in Morrissey. See Pierre, 699 F.2d at 472-73.[12] Emphasizing the language in Morrissey abjuring formalism in the revocation process, Pierre then declared that "[u]nder the facts of Morrissey, the two-hearing system requirement was just one way to satisfy minimum due process; it is not the only way in every case." Id. The Circuit panel failed to discuss Gagnon's explanation that in Morrissey the Court had held that, indeed, two hearings were required.

---

[11] Given that anyone may waive a constitutional claim, the Pierre court's assertion is indeed puzzling

[12] In Morrissey, the Court explained the importance of a prompt preliminary hearing noting that because "there is typically a substantial time lag" between arrest and the final revocation determination, and since "it may be that the parolee is arrested at a place distant" from the place where the final revocation hearing will take place, "due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available." 408 U.S. at 485.

1    At least one way of reading <u>Pierre</u> so as to be consistent with

2 <u>Morrissey</u>, is to read it as not departing from an obligation to

3 provide a preliminary probable cause hearing, but rather, as

4 concluding no more than that a final revocation hearing occurring

5 within twenty-one days of the arrest of a parolee was "prompt

6 enough to *qualify as* the preliminary probable cause determination

7 required by <u>Morrissey</u>." <u>Pierre</u>, 699 F.2d at 473 (italics added).

8 This reading of <u>Pierre</u> is supported by subsequent Ninth Circuit

9 cases. In <u>United States v. Stocks</u>, 104 F.3d 308 (9th Cir.1997), a

10 panel stated that "[a]fter <u>Morrissey</u>, parole may not be revoked

11 unless the parolee is afforded a hearing as to probable cause and

12 a final revocation hearing. At the preliminary parole revocation

13 hearing, a parolee is entitled to notice of the alleged parole

14 violations, an opportunity to appear and to present evidence, a

15 conditional right to confront the government's witnesses, an

16 independent decision-maker, and a written report of the hearing."

17 <u>Id</u>. at 311; <u>see</u> <u>also</u> <u>White v. White</u>, 925 F.2d 287 (9th Cir.

18 1991)(finding that <u>Morrissey</u> contemplated both a preliminary and

19 a final revocation hearing).[13]

20    Whatever else may be said for <u>Pierre</u>, it seems apparent it is

21 dicta. Moreover, although this court should pay respectful

22 _____

23    [13]  In <u>White</u> the Ninth Circuit held that the Parole
     Commission's refusal to allow plaintiff to confront and
24   cross-examine adverse witnesses at his parole revocation hearing
     violated his right to due process. 925 F.2d at 290. While the case
25   addressed the final revocation hearing, the <u>White</u> court examined
     <u>Morrissey</u> in detail and concluded that "[t]o gather the facts
26   necessary to make the two-part decision, the <u>Morrissey</u> court
     contemplated two hearings." <u>Id</u>. at 291

1   attention to Circuit dicta, given all the above it would seem the

2   defendants can only rely on Pierre if their practice of delaying

3   the revocation hearing for up to sixty days or more meets

4   Morrissey's requirement that there be a prompt determination of

5   probable cause. California's time frame for holding a hearing far

6   exceeds the twenty-one days the Pierre panel thought sufficed.

7       Defendants provide no authority to support the proposition

8   that an delay of sixty days or more is acceptable under Morrissey

9   and Gagnon.[14] While some state courts have held that a preliminary

10  hearing can occur within thirty days from the date of arrest, see

11  State v. Myers, 86 Wash.2d 419, 545 P.2d 538 (1976)(en banc), it

12  does not appear that any court has indicated that a delay of more

13  than thirty days would be justifiable.[15] Indeed, even in Ellis v.

14  District of Columbia, 84 F.3d 1413 (D.C.Cir.1996), the D.C. Circuit

15  case on which defendants rely, the policy required the final

16  revocation hearing to occur within thirty days from the date the

17  Board was notified of the execution of a warrant, and regulations

18

19      [14] While Pierre opined that twenty-one days was not
    inappropriate, the Seventh Circuit has suggested in dicta that a
20  ten day delay may violate Morrissey. See Luther v. Molina, 627 F.2d
    71, 75, n. 3 (7th Cir.1980)("Chief Justice Berger [in Morrissey]
21  seemed to be contemplating an almost immediate hearing.... It is
    possible that a ten day delay between detention and the preliminary
22  hearing does not meet ... constitutional ... requirements.")

23      [15] It may be of some interest that the United States Senate
    has noted relative to preliminary hearings in the federal parole
24  system, that a two-day detainment could result in a loss of
    employment and severe disruption of the reintegration effort. See
25  S.Rep. No. 369, 94th Cong., 1st Sess. 25-26 (1975), reprinted in
    1976 U.S.C.C.A.N. 335, 347, cited in Ellis v. District of Columbia,
26  84 F.3d 1413, 1430 (D.C. Cir.1996).

1  mandated a preliminary interview prior to the revocation hearing.

2  <u>Id</u>. at 1420.[16]

3      Given all the above, the court concludes that even if a prompt

4  unitary hearing would meet constitutional muster, a question I need

5  not resolve, California's system allowing a delay of up to sixty

6  days or more before providing the parolee an opportunity to be

7  heard regarding the reliability of the probable cause determination

8  does not.[17]

9      **2.  The Court's Conclusion is Compelled by *Mathews***

10     Even assuming that <u>Morrissey</u> and <u>Gagnon</u> do not compel a

11  prompt, distinct probable cause hearing, the court's conclusion

12  _____

13  [16] The majority in <u>Ellis</u>, like <u>Pierre</u>, emphasized the flexible
    nature of due process and distinguished the facts in the District
14  of Columbia from those in <u>Morrissey</u>. As the dissent pointed out,
    however, that reasoning fails to come to grips with <u>Gagnon</u>'s
    explanation that two hearings are required by <u>Morrissey</u>.   <u>See</u>
15  <u>Ellis</u>, 84 F.3d at 1429-30 (Tatel, J., dissenting). While the
    majority relied on the footnote in <u>Gagnon</u> encouraging the States
16  to devise "creative solutions" to cope with the practical
    difficulties of complying with <u>Morrissey</u>, <u>Ellis</u>, 84 F.3d at 1422
17  (citing <u>Gagnon</u>, 411 U.S. at 782, n. 5), that cannot reasonably be
    construed as an invitation to avoid the fundamental requirements
18  of <u>Morrissey</u>. Whatever "creative solutions" or flexibility the Due
    Process Clause permits, it would appear that the Supreme Court has
19  so far done nothing to indicate a retreat from its previous
    position. Finally, for what it is worth, California's situation far
20  more clearly resembles that found in <u>Morrissey</u> rather than the
    situation in the District of Columbia.   In sum, then, with all due
21  respect, I do not find <u>Ellis</u> helpful in resolving the issue before
    this court.
22
23  [17] Plaintiffs further have argued that the hearing offered to
    juvenile parolees accused of law violations is illusory, because
24  the process by which defendants obtain waivers of the parolees'
    appearance at the hearings is unlawful. The court observes that a
    waiver of a Constitutional right must be made knowingly and
25  voluntarily, <u>Ostund v. Bobb</u>, 682 F.2d 1371, 1373 (9th Cir. 1987),
    but the court need not reach the question of whether defendants'
26  waivers comply with this requirement.

1  above is necessitated upon application of the Mathews test. In

2  order to protect a parolee's liberty interest, Morrissey requires

3  procedures to insure not only that the State does not revoke parole

4  without an adequate factual basis, but that parolees are not

5  detained without some sort of assurance that there is probable

6  cause to suspect a parole violation. The effect of detention

7  itself, in its disruption of the juvenile parolee's family

8  relationships, education, job, and life, is sufficiently

9  significant to require such a procedure.

10      Moreover, it is clear that the informal probable cause

11  determination procedures used for technical violations and when a

12  parolee waives his appearance at the preliminary hearing for a law

13  violation place a severe strain on an accurate fact-finding

14  process. In both situations, the decision to hold a juvenile

15  parolee in custody appears to be based solely on the determination

16  of the parole officer and Supervising Parole Agent, who appear to

17  rely solely on the evidence the parole officer has gathered to

18  support the parole-hold. See Reyna Depo. 31:16-31:24, Exh. E,

19  Laubach Decl. Such decisions contain few of the hallmarks of a

20  reliable process as envisioned by the Mathews Court. Because the

21  conclusion that a parole violation has occurred is one where "a

22  wide variety of information may be deemed relevant, and issues of

23  witness credibility and veracity are often critical to the

24  decisionmaking process," the procedures currently in place for

25  these groups of alleged parole violators seem only minimally

26  reliable. See Mathews, 424 U.S. at 907.

1    Finally, of course, the court must balance the social interest
2  in protecting an individual's interest in remaining at large with
3  the State's interest in protecting the public from parolees who
4  have violated the conditions of their parole. In seeking to weigh
5  that interest, however, the court is handicapped, since the
6  defendants offer no evidence for the proposition that a delay of
7  sixty days or more is necessary to insure protection of that
8  interest. Moreover, while administrative inconvenience is a proper
9  Mathews consideration, the inconvenience occasioned by a prompt
10 probable cause hearing would not appear to be, in and of itself,
11 a sufficient justification for the potentially catastrophic
12 consequences of delay. Indeed, the Supreme Court seems to view with
13 equanimity the inconvenience that Morrissey engendered. See Gagnon,
14 411 U.S. at 782, n. 5 ("[s]ome amount of disruption inevitably
15 attends any new constitutional ruling.").

16   For all the above reasons, the court concludes that whether
17 viewed as compelled by Morrissey or the result of a Mathews
18 balancing test, the current California parole revocation system
19 violates the plaintiffs' due process rights.

20 **D.   Injunctive Relief**

21   Plaintiffs argue that because the due process violations at
22 issue in this case are so similar to those in Valdivia, the
23 Valdivia remedy should equally apply here. Specifically, the
24 plaintiffs seek this court to order defendants to make probable
25 cause determinations within ten calendar days of the juvenile
26 parolee being taken into custody, as the court ordered for adult

1  parolees in Valdivia. See order.

2      Such an order, however, is premature for the case at bar.

3  Although the due process failures that occur for juvenile parolees

4  are similar to those that the court identified in Valdivia, that

5  does not necessarily require identical remedies. Indeed, the

6  Supreme Court in both Morrissey and Gagnon noted that the solutions

7  to due process violations in the parole revocation context depend

8  on the demands of the particular circumstances. See Morrissey, 408

9  U.S. at 481; Gagnon, 411 U.S. at 782, n. 5. The touchstone of any

10  remedy is that the State meet the mandates of Morrissey and Mathews

11  for guaranteeing due process in the juvenile parole revocation

12  procedures. The plaintiffs have not shown that there is no genuine

13  issue of material fact that the circumstances of juvenile parole

14  revocation require that the probable cause determination be made

15  within ten calendar days of the parolee being taken into custody.

16                           **VI. CONCLUSION**

17      Plaintiffs' motion for partial summary judgment is GRANTED as

18  to their due process claim, but DENIED as to the issue of

19  injunctive relief.[18]

20      IT IS SO ORDERED.

21      DATED: September 18, 2007.

22

23                                _Lawrence K. Karlton_
                                  LAWRENCE K. KARLTON
                                  SENIOR JUDGE
24                                UNITED STATES DISTRICT COURT

25      [18] Having said as much, the court does not mean to encourage
    delay.  The defendants have thirty (30) days to tender a plan to
26  meet constitutional standards.

                                  29