IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

L.H., A.Z., D.K., AND D.R.,
on behalf of themselves and all
other similarly situated juvenile
parolees in California,

      Plaintiffs,                         CIV. NO. S-06-2042 LKK GGH

    vs.

ARNOLD SCHWARZENEGGER, et al.,

      Defendants.                         <u>ORDER</u>

_____/

<u>INTRODUCTION AND SUMMARY</u>

        Previously pending on this court's law and motion calendar for September 13, 2007, was plaintiffs' motion for sanctions due to inadequate and improper interrogatory responses, filed August 23, 2007. Also before the court is plaintiffs' motion to seal the declaration of Maria Morris, filed August 23, 2007. Maria Morris appeared for plaintiffs. William Kwong and Gregory Gomez appeared for defendants.[1]

        With minimal exception explained below, defendants have not a leg to stand on in opposing plaintiffs' motion. Despite taking the opportunity to grant themselves what in essence were, initial, unilateral extensions of time, and despite the court being very attentive throughout

---

[1] Shelly Jones, an analyst for the California Department of Corrections and Rehabilitation ("CDCR"), also spoke on the record.

1

the course of discovery to the burdens imposed on state agencies by class action litigation, defendants issued final interrogatory responses which were evasive or incomplete, and which could have been issued months ago, if these were truly what defendants meant to answer. Moreover, as clearly indicated at hearing, defendants ignored the well established procedures in the law (Fed. R. Civ. P 33(d)) which would have alleviated delay and deficiency in response, and they did this despite having the logistical means by which to direct plaintiffs to the specific underlying data so that plaintiffs could construct their own statistical case.  Other interrogatories which called for identification of policies, which were specifically defined to include general practices, were answered without adherence to the definition.

        Having now reviewed the papers pertinent to the motions, the court issues the following order.[2]

GENERAL BACKGROUND

        This is a class action lawsuit wherein plaintiffs are juvenile parolees who allege due process violations throughout the parole revocation process, as well as violations of the Americans with Disabilities Act ("ADA") by the California Department of Corrections and Rehabilitation ("CDCR"), the Division of Juvenile Justice ("DJJ"), and the Board of Parole Hearings ("BPH").  This case has been related to Valdivia v. Schwarzenegger, Civ.S. 94-671 LKK GGH, which involves the same issues as applied to adult parolees.

        The motion for sanctions relates to plaintiffs' interrogatories which they claim took defendants 171 days to amend, and which still do not include complete responses, contain false assertions that they do not have the information requested, exaggerate the difficulty of locating the information, and misstate facts.  As a result, plaintiffs contend that they have to piece together the evidence in other ways, including depositions, and litigation over issues that

---

[2] The court has read the district court's order of September 19, 2007, granting plaintiffs' motion for partial summary judgment on their due process claim, but does not understand that the order dispositively affects any discovery disputes discussed herein.

otherwise might not be disputed.  Plaintiffs request an order to require full and complete responses and the evidence to back them up, as well as sanctions.  The Morris declaration, which plaintiffs move to seal, pertains to the discovery at issue in the motion for sanctions.

BACKGROUND RELATING TO DISCOVERY

Plaintiff propounded their first sets of interrogatories on January 22, 2007.[3]  After receiving two extensions of time from plaintiffs, responses were due March 30, 2007.  Defendants requested an extension from the court on March 29, 2007, and the court denied the request on April 2, 2007, but gave defendants only until April 9, 2007 to respond, with the warning that all objections were waived other than those based on privilege or work product immunity.  According to plaintiffs, defendants served their responses timely, but asserted numerous objections, including burden, and failed to answer many of the interrogatories.  Plaintiffs filed a motion to compel in April, but shortly before the hearing defendants amended their responses.  Although defendants did not specifically make a burden objection, as such had been waived, they instead claimed that responding to the request for statistical information would require too much work.  On May 21, 2007, the court issued an order granting in part plaintiffs' April 19, 2007 motion to compel compliance with the court's April 2, 2007 order, and ordered defendants to produce all outstanding discovery, including electronic discovery, by June 18, 2007.  Defendants were warned at that time that failure to comply with the order would result in sanctions.  On June 15, 2007, defendants requested and received an extension of time to comply with the May 21 order.  That order, filed June 19, 2007, gave defendants until June 25, 2007 to produce all outstanding discovery.   The court understands from oral argument and from dates on several of the exhibits to this discovery dispute that defendants served at least some of these responses beyond the time permitted by court order.

---

[3] These first sets include a set propounded by L.H. on the BPH, a set propounded by A.Z. on the BPH, a set by D.K. on the BPH, a set by L.H. on the DJJ, and a set by A.Z. on the DJJ. Plaintiff D.K.'s set is one interrogatory related to D.K.'s requests for admissions propounded on BPH.

1   Defendants served responses on July 9, 2007, which purported to amend previous
2  responses, but according to plaintiffs, these responses added little information, and merely
3  pointed plaintiffs to a small group of documents that were mostly non-responsive. According to
4  plaintiffs, since the original responses of April, 2007, the content of the responses has not
5  changed much.
6   On July 12, 2007, the court held a discovery conference regarding electronic
7  discovery at defendants' request. The court ruled in part that "should plaintiffs have a motion to
8  make regarding completed discovery, they may file it forthwith." Order, filed July 13, 2007.
9   The scheduling order imposes a discovery cutoff in January, 2008 with all
10 motions required to be heard by December 20, 2007. Expert reports are due November 12, 2007.
11  At hearing, the court commented to plaintiffs' counsel that at times, plaintiffs'
12 argument in her papers appeared to encompass all interrogatories at issue. However, at other
13 times, only specific interrogatories appeared at issue. The court limited this discovery
14 order/sanctions to the interrogatories specifically referenced in plaintiff's motion.

15 DISCUSSION

16 I. Plaintiffs' Motion for Sanctions

17    A. Rule 37-251 Requirements

18  Defendants first argue that plaintiffs failed to meet and confer, or initiate the
19 preparation of a joint statement as required by E.D. Local Rule 37-251. Although plaintiffs'
20 motion does seek further responses as one of the requested sanctions, and might be viewed as
21 outside the total failure exception of this rule, the history outlined above excuses plaintiffs from
22 any meet and confer requirement. Plaintiffs have been attempting to obtain this discovery for
23 months, and the instant disputes have been the subject of court discussion and direction. This
24 court in its July 13th order specifically granted plaintiffs permission to bring the instant motion
25 without further ado. Defendants' grasping-at-straws objection to hearing this motion is
26 overruled.

B. <u>Legal Standards</u>

Before analyzing the specific discovery, it is necessary to set forth the law pertinent to the answering of these interrogatories, and specifically, the duties of a responding party in answering what may appear to be facially burdensome requests. Several themes in discovery law intersect on the matter.

Discovery does not mean that a party should have to prepare the other party's case. A responding party is generally not required to perform extensive research to acquire requested information. <u>La Chemise Lacoste v. Alligator Co. Inc.</u>, 60 F.R.D. 164, 171 (D.Del. 1973). And discovery should always be viewed from the context of Fed. R. Civ. P. 26(b) which generally instructs that the amount of discovery requested must be balanced by the need for such discovery. However, these general principles are tempered by the context of the case, and the law does not permit a party to avoid all burden and expense in responding to discovery. A party must make *reasonable* efforts to respond, and reasonableness is determined by the size and complexity of the case and the resources that a responding party has available to put to the case. <u>See</u> <u>United States ex rel Englund v. Los Angeles County</u>, 235 F.R.D. 675 (E.D. Cal. 2006). Moreover, if the responding party would necessarily have to gather the requested information to prepare its own case, objections that it is too difficult to obtain the information for the requesting party are not honored. <u>Flour Mills, Inc. v. Pace</u>, 75 F.R.D. 676, 680 (D. Okla. 1977). <u>See</u> <u>also</u> 8A Wright, Miller & Marcus, <u>Federal Practice and Procedure</u>, § 2174 at 302-05 (2nd ed. 1994).

All of the above centers about what is excessive burden in discovery, and what is not. In this case, as previously ordered, defendants have waived burden objections.

Furthermore, in situations where a requesting party has asked for much information, and this information could be gleaned from reference to the responding party's records, the law permits a responding party to specifically direct the requesting party to such records.

The Federal Rules of Civil Procedure permit a responding party the option to produce records in responding to interrogatories where the requesting party is as capable of reviewing the documents and formulating a response as is the responding party. Fed. R. Civ. P. 33(d); U.S. v. Rachel, 289 F. Supp. 2d 688, 693 (D. Md. 2003).

Rule 33(d) provides in relevant part:

> Where the answer to an interrogatory may be derived or ascertained from the business records, including electronically stored information, of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, including a compilation, abstract or summary thereof, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts, or summaries. A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.

Fed. R. Civ. P. 33(d).

The reference to such records, however, must be specific and designed to provide the information requested. "[U]nder Rule 33(d), the responding party chooses to produce business records in answer to the interrogatories – not to avoid answering them. To answer an interrogatory, a responding party has the duty to specify, by category and location, the records from which answers to interrogatories can be derived." O'Connor v. Boeing North American, Inc., 185 F.R.D. 272, 277 (C.D.Cal.1999); see Pulsecard, Inc. v. Discover Card Services, Inc., 168 F.R.D. 295, 305 (D. Kan. 1996). The responding party may not avoid answers by imposing on the interrogating party a mass of business records from which the answers cannot be ascertained by a person unfamiliar with them. See 7 Moore's Federal Practice, § 33.105 [3] (3d ed. 2001). References to such records must be specific and designed to provide the requested information. "The records must be offered 'in a manner that permits the same direct and economical access that is available to the [responding] party.' If compilations and summaries

exist, these should be made available." United States ex. rel. Englund, 235 F.R.D. at 680 (citations omitted). A responding party's familiarity with the method of record retention and organization may facilitate review of records based on this knowledge that is unavailable to the opposing party. Id., citing T.N. Taube Corp. v. Marine Midland Mortg. Corp., 136 F.R.D. 449, 454 (W.D.N.C. 1991). The response referring to business records must at a minimum provide the category and location of records which will provide the answers, and if the records are voluminous, the response must include an index guiding the party to the responsive documents. Id. at 680-81. See also Walt Disney Co. v. DeFabiis, 168 F.R.D. 281, 284 (C.D. Cal. 1996) (specification of records must be in sufficient detail to allow party to locate and identify documents from which the interrogatory answer may be ascertained, as readily as the party served). If the party can not identify which specific documents contain the answer to the interrogatories, they must completely answer the interrogatories without referring to the documents. Cambridge Electronics Corp. v. MGA Electronics, Inc., 227 F.R.D. 313, 323 (C.D. Cal. 2004).

  C. Analysis

    Defendants have delayed finally responding to the interrogatories at issue for approximately seven months, requiring multiple extensions of time which plaintiffs reasonably stipulated to at first, but ultimately requiring plaintiffs to file a motion to compel and the instant motion for sanctions, as well as engage in numerous meet and confer sessions. With a discovery cutoff only three months away,[4] and expert reports due in less than two months, defendants have not only wasted much of plaintiffs' time during this phase of the case, but have actually prejudiced plaintiffs.

    Defendants claim they responded in good faith and due diligence to plaintiffs' discovery requests and the court's orders. They point to their increased staffing levels, their

---

[4] Discovery cutoff is in January, 2008, but all motions to compel must be heard by December 20, 2007.

immediate hiring of an electronic discovery expert, and their production of thousands of pages of documents and electronic discovery in this case.

Defendants' excuses are not satisfactory in light of the legal authority outlined above. Defendants could have utilized Rule 33(d) over six months ago to refer plaintiffs to the ward files which are maintained in a central location. Defendants were also informed in April that all burden and other objections had been waived, and only substantive privileges remained. After that time, any objection based on having to review thousands of files, due to workload issues, or that information is not maintained in the form requested, was not an appropriate objection. With these considerations in mind, the court now addresses each category of disputed interrogatories.

### 1. Interrogatories Requesting Statistical Information

One example of this type of interrogatory is plaintiffs' request for the mean and median length of time each year between filing of an appeal and appellate decision in a parole revocation proceeding. Interrogatory 18:

> State the mean and median length of time each year between the filing of an APPEAL and the APPELLATE decision.

Response to Interrogatory 18:

> Defendant does not maintain this data in the form requested. For board appeals within the past year, Defendant would have to prepare a report detailing which wards had filed appeals. Thereafter, Defendant would have to manually review each ward's file to find the dates of filing and decision for the ward. For appeals made in 2006-07, Defendant would have to prepare a report which will include: 1) the date of filing for each appeal; and 2) the date of the appellate decision. For appeals filed in prior years, all files would have to be manually reviewed to determine: 1) which wards had filed an appeal; 2) date of filing; and 3) decision date. After these reports are completed, Plaintiff can perform the statistical analysis requested.
>
> Defendant further responds that per Rule 32(c) of the Federal Rules of Civil Procedure [sic] [having nothing to do with interrogatories, but rather the presentation form of depositions] : [certain identified documents previously produced] that were produced as part of Defendant's June 18, 2007, Response to Plaintiff's Request for Production are responsive *to the extent appeals are tracked in each report.* (Emphasis added).

Pls' Ex. 4.

Of course, defendant made no representation of the extent to which appeals are tracked in each report, if at all. Any statistical showing from this documentation would have been worthless without such representation. Thus, any reference to records contained in the interrogatories, and there were specific references, are out of compliance with Rule 33(d) because that rule requires an affirmative, verified representation that the information requested can indeed be found in the documents.

Plaintiffs made the argument that defendants' need to manually review all case files was disingenuous because in piecing together information from other discovery responses (production of records), they were able to construct answers to the interrogatories which were not answered – thus arguing that defendants could have done the same thing and simply answered the interrogatory. However, it became clear in the papers and at oral argument that defendants would not vouch for the accuracy of the information in such documents saying that the information contained therein was "best estimates" or "prepared by clerks [with unverified information]" or words to that effect. The point of Rule 33(d) is that when reference to specific records is made, the rule *requires a verification* that the information requested is contained therein, not that it "might be," or "could be." Of course, when such nebulous assurances are made as were made here, when it comes to trial or summary judgment, defendants would object to the foundation of the statistics used by plaintiffs thereby reaping an improper windfall from their improper responses. The undersigned understands that defendants indeed made such an objection in the recently completed partial summary judgment.

Defendants cannot have it both ways – they cannot make an indirect reliance on documents pursuant to an inferential assertion to Rule 33(d), and then disclaim the accuracy of the documents to which they refer.

Furthermore, and despite reference to specific documents, defendants have responded to this and other interrogatories by stating that they do not maintain data in the format

9

requested, and that an accurate response would require a review of about 15,3731 [sic] case files for the period January, 2001 through December, 2006.  First, such a response is tantamount to a burden objection, which has already been waived.  Second, at hearing defendants represented that all case files are located at the DJJ head office in Sacramento.  This concession clearly indicates that defendants could have directed plaintiffs to these files six months ago and permitted a Fed. R. Civ. P. 33(d) inspection at that time.  Plaintiffs would then have had time to prepare their own statistical case.  Consequently, defendants' failure to do so is inexplicable and directly pertinent to plaintiffs' current request for sanctions.  Third, the court inquired of defendants' counsel how their experts were planning to prepare a statistical case.  Counsel did not substantively respond to the question, but rather fell back on a statement that such did not need to be shared at this time. True enough in the abstract, but the response left the distinct impression that defendants' experts would be performing the analysis using the data which was denied to plaintiffs.   Given the precarious litigation of defendants in this sanctions motion, such a response was ill advised.

The same analysis requires further responses to other interrogatories requesting statistical information.  Plaintiffs have referenced other examples of interrogatories where defendants responded that they could not respond without manually reviewing 17,280 case files, or that they do not maintain the information in the format plaintiffs seek it.  For example, there are interrogatories which seek the number of parole revocation hearings each year held more than fifty miles from the ward's residence or place of arrest, the number of instances each year in which a ward placed on parole hold had a preliminary hearing within 13 business days of imposition of parole hold, and the number of instances each year in which a ward received assistance of counsel or was appointed counsel for a parole revocation hearing.  The court does not find it necessary to identify all the interrogatories pertaining to statistics because it is ordering the files disclosed instead as a sanction.  See discussion in Remedy section, supra.

\\\\\

\\\\\

2. Interrogatories Seeking Information on Policies

In regard to interrogatories seeking policies, defendants have responded with the most cursory description and citation to written, system-wide policies. This response has been given despite plaintiffs' definition of policy in the interrogatory as "a policy, standard course of action, procedure, practice, or guideline, whether written or unwritten, and whether instituted system-wide or at any given agency, institution or facility." (Morris Decl., Ex. 28.)

For example, interrogatory number 4 to L.H.'s first set of interrogatories states:

> Describe all BPH policies that relate to notifying a ward of charges against him or her in parole revocation proceedings, including the persons responsible for providing the notice, any forms that are used or referred to, and the timing for giving notice.

Pls.' Ex. 1.

Defendants gave the following response:

> This defendant states that it is unable to respond to this interrogatory since it does not have responsibility for or over "PAROLE REVOCATION PROCEEDINGS" relating to wards under the jurisdiction of the DJJ, nor does it maintain or have access to or control over records which may be responsive to this interrogatory. Under California Penal Code section 5075.1(j), all commissioners appointed and trained to hear juvenile parole matters, together with their duties prescribed by law as functions of the BPH concerning wards, were transferred to the Chief Deputy Secretary for Juvenile Justice effective January 1, 2007.
>
> Notwithstanding the above, during the time the BPH had control of ward hearings from July 2005 to December 31, 2006, BPH responds: Wards are initially provided notice of alleged violation by the parole agent of record, and subsequently by the board coordinating parole agent. Policies regarding the notice and service of process are found in: California Code of Regulations title 15, §§ 4852 and 4977 and in § 12 of the Parolee Rights and Responsibilities Handbook (October 2003). The Y.A. 3.218 "Notice to Parolee Awaiting Violation Action" is used by the agent in charge. Forms Y.A. 3.230 "Notice of Rights," 3.235 "Request for Attorney," and 3.232 "Request for Hearing" as well as a copy of the violation report, disposition report and applicable police report are used by the board coordinating parole agent to provide notice.

Id.

\\\\\\

Based on the previously recited broad definition of "policy" which was not objected to by defendants, defendants' apparent refusal to acknowledge this definition in framing their responses does not show a good faith attempt to respond. If in truth, there were no practices guidelines etc. which deviated at all from the formalized policy, defendants' response would have been satisfactory. However, given the definition, defendant(s) had an obligation to say so. In the absence of such a statement, the response is incomplete. Obviously, plaintiffs seek, in part, to avoid a surprise "secret constitutionally compliant practice" from being sprung upon them at trial. In the alternative, plaintiffs have a right to understand if constitutionally deficient practices exist despite the formalized policies. Defendants must respond to these interrogatories as they pertain to practice or any other form of plaintiffs' definition of policy.

Therefore, defendants shall respond further to the following interrogatories within 15 calendar days of this order.

<u>L.H.'s First Set of Interrogatories on BPH (Pls.' Ex. 1)</u>

Defendants shall respond to interrogatories numbered 4, 5, 15, 19, 24.

<u>A.Z.'s First Set of Interrogatories on BPH (Pls.' Ex. 2)</u>

Defendants shall respond to interrogatories numbered 1, 3, 4, 11, 13.

<u>L.H.'s First Set of Interrogatories on DJJ (Pls.' Ex. 3)</u>

Defendants shall respond to interrogatories numbered 8, 9, 18, 20.

<u>A.Z.'s First Set of Interrogatories on DJJ (Pls.' Ex. 4)</u>

Defendants shall respond to interrogatories numbered 9, 10, 13, 14, 16, 17, 18, 19.

3.  <u>DK's Interrogatory to BPH for Information Underlying Defendants' Responses to Requests for Admissions</u>

This dispute concerns one interrogatory:

> For each of your responses to plaintiff D.K.'s first set of requests for admissions that is not an unqualified admission, separately state all facts upon which you base your response, including the circumstances that justify your response, the names, addresses and telephone numbers of all persons who have knowledge of those

facts, and all documents and other tangible things that support your response.

Pls.' Ex. 5.

The first three responses submitted by BPH to the requests for admissions were entirely devoid of facts, according to plaintiffs, stating only that responsibility for hearings was transferred away from BPH and identifying John Monday (BPH) and Bernard Warner (DJJ) as persons with knowledge of the transfer. Even though defendants' fourth response to the requests for admissions was responsive for years prior to the transfer of jurisdiction, including admissions, partial admissions, and denials, defendants did not change their response to the interrogatory accompanying the request.

Defendants will not be sanctioned for any failure in response as this interrogatory is improper in requiring defendants to basically lay out their entire case in response. Not only is it overbroad, but it constitutes an abuse of the discovery process. See Heartland Surgical Specialty Hosp., LLC v. Midwest, 2007 WL 756631, *7 (D. Kan. 2007) (ruling that interrogatories seeking each and every fact and which blanket the entire case are improper). This is especially so in that the parties contemplate many depositions, including knowledgeable persons depositions, in which this very same information can be more easily documented without duplication.

### 4. Miscellaneous Responses

Plaintiffs complain that defendants' responses are shoddy in numerous ways, including careless assertions of fact, reference to the wrong civil rules, reference to non-responsive documents, and that they ignore responsive documents. For example, BPH stated in a footnote that wards held for technical violations are held up to 30 days prior to hearing, but their documents demonstrate that wards can be held up to 60 days. See Pls.' Reply at 16-20.

Defendants will not be required to served amended responses to this category of interrogatories. Instead, plaintiffs can determine whether to use the inconsistencies at trial.

D.  <u>Remedy</u>

"Federal Rule of Civil Procedure 37 authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules." <u>Wyle v. R.J. Reynolds Industries, Inc.</u>, 709 F.2d 585, 589 (9th Cir. 1983).  Professors Wright and Miller have opined:

> Any failure to disclose, regardless of the reason for it, brings the sanctions of Rule 37 into play, although the reason for the failure is an important consideration in determining what sanction to impose. If the failure is because of inability to comply, rather than because of willfulness, bad faith, or any fault of the party, the action may not be dismissed, nor a default judgment given, and less severe sanctions are the most that should be invoked.

8A C. Wright & A. Miller, <u>Federal Practice and Procedure</u>, § 2284, at 620-22 (1994). Rule 37 provides that in lieu of, or in addition to, imposing other sanctions,

> If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(4)(A).

"[I]f a failure to comply has occurred, it becomes incumbent upon the disobedient party to show that his failure is justified or that special circumstances would make an award of expenses unjust.  Notes of the Advisory Committee on Rule 37." <u>David v. Hooker</u>, 560 F.2d 412, 419 (9th Cir. 1977).

In addition to Rule 37 sanctions, "[c]ourts are invested with inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" <u>Unigard Sec. Ins.

Co. v. Lakewood Engineering & Mfg. Corp., 982 F.2d 363, 368 (9th Cir. 1992) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123, 2132 (1991)); accord Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 348 (9th Cir. 1995) (recognizing inherent power to dismiss counterclaim for concealing discovery documents); Winn v. Associated Press, 903 F. Supp. 575, 580 (S.D.N.Y. 1995) (imposing monetary sanctions for deliberately impeding discovery and willful noncompliance with document production).

Precluding evidence so that the recalcitrant party cannot support defenses is comparable to entering dismissal, which "represent[s] the most severe penalty that can be imposed." U.S. v. Kahaluu Const., 857 F.2d 600, 603 (9th Cir. 1988); accord, Valley Engineers v. Electric Engineering Co., 158 F.3d 1051 (9th Cir. 1998). Accordingly, such orders are authorized only in "extreme circumstances" of violations "due to willfulness, bad faith, or fault of that party." Kahaluu Const., 857 F.2d at 603.[5]

Five relevant factors also determine whether severe sanctions are appropriate:

(1) the public's interest in expeditious resolution of litigation;
(2) the court's need to manage its docket;
(3) the risk of prejudice to the other party;
(4) the public policy favoring disposition of cases on their merits; and
(5) the availability of less drastic sanctions.

Wanderer v. Johnston, 910 F.2d 652 (9th Cir. 1990) (default judgment for defendants' failure to comply with discovery); Malone v. U.S. Postal Service, 833 F.2d 128, 130 (9th Cir.1987).

---

[5] See also, e.g., Fjelstad v. American Honda Motor Co., Inc., 762 F.2d 1334, 1338 (9th Cir. 1985) ("'Where the drastic sanction of dismissal . . . [is] imposed . . . the range of discretion is narrowed and the losing party's non-compliance must be due to willfulness, fault, or bad faith,'" quoting Sigliano v. Mendoza, 642 F.2d 309, 310 (9th Cir.1981); G-K Properties v. Redevelopment Agency, 577 F.2d 645, 647-48 (9th Cir.1978) (bad faith crucial in Rule 37 dismissal, citing National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 96 S. Ct. 2778 (1976)); Henry v. Gill Industries, Inc, 983 F.2d 943, 946, 948-49 (9th Cir.1993) (reviewing Rule 37 dismissal under multiple factors, including willfulness, bad faith or fault); Porter v. Martinez, 941 F.2d 732, 733 (9th Cir.1991) (reviewing Rule 37 default judgment pursuant to multiple factors including bad faith); Wanderer v. Johnston, 910 F.2d 652, 655-56 (9th Cir.1990) (same).

The circuit has acknowledged that "[l]ike most elaborate multifactor tests, our test has not been what it appears to be, a mechanical means of determining what discovery sanction is just." Valley Engineers Inc. 158 F.3d at 1056.  Inevitably where a court order is violated or discovery belatedly is produced, factors 1 and 2 support preclusive sanctions, and factor 4 cuts against them.  Accordingly, factors 3 and 5 become the decisive factors, and the court must focus on the amount of prejudice to the party seeking sanctions, and the availability of less drastic sanctions.  Adriana International Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990).  Most critical for evaluating the risk of prejudice and whether less drastic sanctions would suffice is whether the discovery violations "so damage[] the integrity of the discovery process that there can never be assurance of proceeding on the true facts." Valley Engineers Inc., 158 F.3d at 1058.

This case concerns matters of statewide important which require resolution on their merits.  There is a much greater public interest in expeditious resolution of matters raised herein than is present in many cases filed in this court.  This action should not be resolved based on defendants' actions in discovery, although they are clearly at the very least negligent.[6]  The court has reviewed the factors set forth in Wanderer and concludes that the prejudice suffered by plaintiffs can be for the most part remedied by other sanctions imposed in this order, and that this case can fairly be decided on its merits.  The court does not find that defendants' violations so damaged the integrity of the process such that plaintiffs will not be assured of proceeding on the true facts.  Valley Engineers Inc., 158 F.3d at 1058.  Therefore, defendants will not be sanctioned with evidence preclusion.

### 1. Files to be Produced

Plaintiffs request a sanction of requiring defendants to produce certain categories of files, including ward/parolee files related to certain subject matters, documents relating to the

---

[6] Defendants' representations at hearing that they maintain all ward master files in a central location, but did not permit plaintiffs to inspect them, and their statement that they do not want to reveal what they would do at trial in regard to presentation of statistics, indicates their unreasonableness and lack of good faith.

1  parole revocation process sent to the Research Division/Information Systems Unit since January
2  1, 2001, and files containing requests for counsel or information about such requests which are
3  known to the Juvenile Parole Board executive officer.
4      At hearing, defendants represented that all ward files are maintained in a master
5  file at DJJ's headquarters.  This concession to maintaining all master files which may contain
6  information responsive to these interrogatories in one location defies defendants' representations
7  of good faith and due diligence in responding to the interrogatories and failing to do so in a
8  timely manner.  Therefore, defendants shall organize all ward/parolee files pursuant to Rule
9  33(d).  They shall then make the files available for plaintiffs' review within 15 calendar days of
10 this order.  These files may be reviewed by plaintiffs' counsel, paralegals and experts.
11 Defendants shall pay for the culling, arranging and review, including formulation of appropriate
12 statistics, of these files by plaintiffs' counsel, paralegals, and experts.  This order does not give
13 plaintiffs carte blanche to burden the taxpayer with excessive costs, but to spend what is
14 necessary and reasonable.  Should it turn out that plaintiffs' review resulted in unreasonable
15 expenditures, a remedy is available for such a transgression also.
16      *In the alternative*, if defendants are willing to verify the accuracy of summary
17 documents, *and* if defendants verify that the information contained in the summary documents
18 are fully responsive to all statistically based interrogatories sought by plaintiffs (or plaintiff could
19 easily discern those facts from the information presented) the summary documents may be
20 produced in lieu of all ward files.
21      2. Responses to Interrogatories
22      As discussed above, there is no point to requiring defendants to respond to most
23 of the insufficient interrogatories as other remedies will assist plaintiffs in discovery in a more
24 efficient and accurate manner.  Therefore, as previously set forth, responses will only be
25 compelled to interrogatories pertaining to policy and practice.
26 \\\\\

3. <u>Depositions</u>

Plaintiffs seek to depose persons knowledgeable about information in the untimely interrogatory responses with one week notice. This suggested remedy is unworkable, as the deponent would not have enough time to sufficiently prepare for a deposition that would aid plaintiffs' case. Instead, during the month of October, plaintiffs may notice Rule 30(b)(6) depositions on two weeks notice, and the designated officials will make themselves available during October. Moreover, plaintiffs will be permitted to have priority in deposing experts. Defendants shall make their experts available to plaintiffs between November 12, 2007 and December 7, 2007.[7] During this period, defendants are precluded from scheduling depositions of plaintiffs' experts.

4. <u>Attorneys' Fees and Costs</u>

Plaintiffs shall provide declarations setting forth fees and costs incurred in bringing the instant motion and the motion heard on May 17, 2007. An order will then issue awarding monetary sanctions.

II. <u>Plaintiffs' Motion to Seal Morris Declaration</u>

Plaintiffs state that the declaration and exhibits contain information from juvenile files which are required to be under seal pursuant to the protective order on file in this case, and an interim stipulated order which states that documents identified by the originating party as confidential shall be treated as confidential. Orders, filed May 14 and June 12, 2007. The Morris declaration contains exhibits which do not appear to be confidential, despite defendants having labeled them as such. Where identifying information would normally be found, it has been redacted. Therefore, plaintiffs' motion to seal this declaration is denied.

\\\\\

\\\\\

---

[7] Plaintiffs may stipulate to taking depositions of defendants' experts outside this time period if they wish.

CONCLUSION

Accordingly, IT IS ORDERED that:

1. Plaintiffs' motion for discovery sanctions, filed August 23, 2007, is granted.

2. Defendants shall produce the files outlined in this order within 15 calendar days of this order.

3. Defendants shall respond in full to the interrogatories outlined above regarding policy, within 15 calendar days of this order.

4. Plaintiffs are permitted to depose knowledgeable persons during October, 2007, on two weeks notice. Designated officials shall make themselves available during this month.

5. Defendants shall make their experts available to plaintiffs between November 12, 2007 and December 7, 2007. During this period, defendants are precluded from scheduling depositions of plaintiffs' experts.

6. Fees and costs shall be awarded. Plaintiffs shall submit declarations in support of their claimed fees and costs within 15 days of this order.

7. Plaintiffs' motion to seal declaration of Maria Morris, filed August 23, 2007, is denied.

DATED: 9/21/07                                     /s/ Gregory G. Hollows

                                                   GREGORY G. HOLLOWS
                                                   U. S. MAGISTRATE JUDGE

GGH:076/L.H.2042.san