1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                   EASTERN DISTRICT OF CALIFORNIA

9

10   L.H., A.Z., D.K., and D.R.,
     on behalf of themselves and
11   all other similarly
     situated juvenile parolees
12   in California,
                                    NO. CIV. S-06-2042 LKK/GGH
13            Plaintiffs,

14       v.                                  O R D E R

15   ARNOLD SCHWARZENEGGER,
     Governor, State of
16   California, et al,

17            Defendants.
     _____/
18

19        This motion arises out of this class action in which the

20   plaintiff class is comprised of convicted juvenile offenders who

21   have been released on parole. The plaintiffs allege that the

22   defendants have a policy and practice of denying the plaintiffs

23   their constitutional rights and their statutory rights under the

24   American with Disabilities Act, 42 U.S.C. §§ 12101-12213 and

25   section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

26        The plaintiffs have brought three motions that are pending

                                    1

before the court. The plaintiffs have moved for leave to file a second amended complaint and to amend the class definition. The plaintiffs also have moved for a preliminary injunction and for a remedial order. The court resolves the motions on the papers and after oral argument.[1]

## I. FACTS AND PROCEDURAL HISTORY

Plaintiffs brought this suit as a class action, filing their Complaint on September 13, 2006 and their First Amended Complaint on September 20, 2006. On February 28, 2007, the court granted the plaintiffs' motion for class certification. The certified class consisted of "juvenile parolees in or under the jurisdiction of California, including all juvenile parolees with disabilities as that term is defined in Section 504 of the Rehabilitation Act and the ADA, who are: (i) in the community under parole supervision or who are at large; (ii) in custody in California as alleged parole violators, and who are awaiting revocation of their parole; or (iii) in custody, having been found in violation of parole and returned to custody."[2]

On February 28, 2007, the court issued a scheduling order in

_____

[1]In light of the court's November 28, 2007, order requiring the parties to meet and confer to develop a joint remedial plan, as well as plaintiff's representation that they have been unable to create a joint plan, see Docket No. 238, the court will appoint Chase Riveland as a settlement referee. Consequently, the court denies without prejudice the plaintiffs' motion to enter their remedial plan.

[2]This case is related with Valdivia v. Schwarzenegger, Case No. Civ. S-94-671-LKK-GGH, which concerns similar issues in the adult parole system.

the case. It included the provision that no addition of parties or other amendments would be permitted except with leave of court, upon a showing of good cause, "with the exception of substitution of plaintiffs." The scheduling order was modified on October 29, 2007 to amend the pretrial and trial dates. The order set February 12, 2008 for the deadline for the designation of experts and production of expert reports; April 30, 2008 as the discovery cut-off; June 30, 2008 as the law and motion deadline; September 29, 2008 for the final pretrial conference; and January 6, 2009 for the trial.

Discovery in the case has begun and both parties agree that the plaintiffs have deposed at least five CDCR employees and/or defendants and that the defendants have produced a "large" amount of documents. See Declaration of Gay Grunfeld in Support of Plaintiffs' Motion for Leave to File a Second Amended Complaint and Amend the Class Definition ("Grunfeld Decl."), ¶¶ 14, 21; Declaration of Cynthia Fritz in Support of Defendants' Opposition to Plaintiffs' Motion ("Fritz Decl."), ¶¶ 4-5.

On September 19, 2007, the court granted partial summary judgment for the plaintiffs, holding that the defendants violated the plaintiffs' due process rights by failing to hold constitutionally-adequate probable cause hearings prior to parole revocation. See Morrissey v. Brewer, 408 U.S. 471 (1972). The court requested proposed remedial plans from each party and, on November 28, 2007, ordered the parties to meet and confer for the purpose of developing a joint remedial plan that addresses the

1 constitutional violations identified in the court's summary

2 judgment order.

**II. STANDARDS**

3

4 **A. STANDARD FOR AMENDING THE PLEADINGS UNDER FEDERAL RULE OF**

5 **CIVIL PROCEDURE 16(b)**

6     Federal Rule of Civil Procedure 16(b) provides in part:

7     (b) [The district court] ... shall, after consulting

8     with the attorneys for the parties and any unrepresented

9     parties, by a scheduling conference, ... enter a

10     scheduling order that limits the time,

11         (1) to join other parties and to amend the

12         pleadings;

13         (2) to file and hear motions; and

14         (3) to complete discovery.

15 See also Johnson v. Mammoth Recreations, Inc., 975 F.2d 604 (9th

16 Cir. 1992).

17     Unlike Rule 15(a)'s liberal amendment policy which focuses on

18 the bad faith of the party seeking to interpose an amendment and

19 the prejudice to the opposing party, Rule 16(b)'s "good cause"

20 standard primarily considers the diligence of the party seeking the

21 amendment. Harrison Beverage Co. v. Dribeck Importers, Inc., 133

22 F.R.D. 463, 469 (D.N.J. 1990); Amcast Indus. Corp. v. Detrex Corp.,

23 132 F.R.D. 213, 217 (N.D. Ind. 1990); 6A WRIGHT, MILLER & KANE, FEDERAL

24 PRACTICE AND PROCEDURE § 1522.1 at 231 (2d ed. 1990) ("good cause"

25 means scheduling deadlines cannot be met despite party's

26 diligence).

4

1   Moreover, carelessness is not compatible with a finding of

2   diligence and offers no reason for a grant of relief. <u>Cf</u>. <u>Engleson</u>

3   <u>v. Burlington Northern R.R. Co.</u>, 972 F.2d 1038, 1043 (9th Cir.

4   1992) (carelessness not a ground for relief under Rule 60(b));

5   <u>Martella v. Marine Cooks & Stewards Union</u>, 448 F.2d 729, 730 (9th

6   Cir. 1971) (same), <u>cert. denied</u>, 405 U.S. 974, 92 S. Ct. 1191, 31

7   L.Ed.2d 248 (1972). Although the existence or degree of prejudice

8   to the party opposing the modification might supply additional

9   reasons to deny a motion, the focus of the inquiry is upon the

10  moving party's reasons for seeking modification. <u>See</u> <u>Gestetner</u>

11  <u>Corp. v. Case Equip. Co.</u>, 108 F.R.D. 138, 141 (D.Me. 1985). If the

12  moving party was not diligent, the inquiry should end.

13  **B.   STANDARD FOR AMENDMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE**

14  **15(a)**

15  The Federal Rules provide that leave to amend pleadings

16  shall be freely given when justice so requires. Fed. R. Civ. P.

17  15(a).[1] Although the standard becomes progressively more stringent

18  as the litigation proceeds, the Circuit has explained that the same

19  four factors are pertinent to resolution of a motion to amend: (1)

20  the degree of prejudice or surprise to the non-moving party if the

21  order is modified; (2) the ability of the non-moving party to cure

22  any prejudice; (3) the impact of the modification on the orderly

23  and efficient conduct of the case; and (4) any degree of

24  _____
    [1]   The entire text of the rule reads:

25  "A party may amend the party's pleading only by leave of
    court or by written consent of the adverse party; and
26  leave shall be freely given when justice so requires."

1  willfulness or bad faith on the part of the party seeking the

2  modification.  See Byrd, 137 F.3d at 1132 (citing United States v.

3  First Nat'l Bank of Circle, 652 F.2d 882, 887 (9th Cir. 1981)).

4  The burden is on the moving party to show that consideration of

5  these factors warrants amendment.  See id.

6      Prejudice to the opposing party is the most important factor

7  to consider in determining whether a party should be granted leave

8  to amend.  See Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th

9  Cir. 1990)(citing Zenith Radio Corp. v. Hazeltine Research, Inc.,

10  401 U.S. 320, 330-31 (1971)). While delay alone is insufficient to

11  deny amendment, undue delay is a factor to be considered.  See

12  Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th

13  Cir. 1990)(affirming district court's denial of motion for leave

14  to amend to add new claims made two years into litigation).

15  Amendment may also be denied when it is futile.  See Kiser v.

16  General Electric Corp., 831 F.2d 423, 428 (3d Cir. 1987), cert.

17  denied, 485 U.S. 906 (1988).  The test for futility is identical

18  to the one used when considering the sufficiency of a pleading

19  challenged under Rule 12(b)(6).  Miller v. Rykoff-Sexton, Inc., 845

20  F.2d 209, 214 (9th Cir. 1988)(citing Baker v. Pacific Far East

21  Lines, Inc., 451 F. Supp. 84, 89 (N.D. Cal. 1978)).  Accordingly,

22  a proposed amendment is futile only if no set of facts can be

23  proved under the amendment to the pleading that would constitute

24  a valid and sufficient claim or defense.  Id.

25  ////

26  ////

**III. ANALYSIS**

**A.   Motion for Leave to File Second Amended Complaint and to Amend the Class Definition**

The plaintiffs seek leave to amend the class definition for the purpose of clarifying the claims, to name new defendants, and to substitute in new named class representatives. As explained herein, the court grants the motion in part.

**1.   Clarification of the Basis of the Causes of Action**

First, the plaintiffs seek leave to amend the complaint and the definition of the plaintiff class so as to "clarify" that the causes of action encompass not only juvenile parole revocation  proceedings, but all proceedings related to parole, including parole consideration hearings, "time-add" hearings (a hearing by which the juvenile ward's parole date is extended), and others. Accordingly, the plaintiffs also seek to amend the complaint to replace "parolee" with "ward/parolee." The plaintiffs also wish to add a fourth category to the plaintiff class: "ward/parolees who have not yet paroled and are subject to 'parole proceedings,' which include parole consideration, time-add, YAAC, JJAC, YAB, DDMS, Intake Case Review, Annual Case and/or Good Cause and/or Progress Reviews, Appeal Hearing/Review, Appeal Resolution, Discharge, Special Agenda, Rescission, Corrective Action Plan, Parole Consideration Date, Projected Board Date Determination Review, and other hearings that implicate a liberty interest by extending the amount of time a ward/parolee is detained in custody and/or in a DJJ

1  institution, whether these hearings are held before the ward is

2  released on parole or after the ward/parolee is serving a

3  revocation term." <u>See</u> Grunfeld Decl. Exh. C, ¶ 132.

4       As stated above, once a scheduling order has been issued, a

5  motion to amend the complaint is treated as a motion to amend

6  the scheduling order under Federal Rule of Civil Procedure 16(b)

7  and will be granted only upon a showing of good cause.[2] <u>Johnson</u>,

8  975 F.2d at 607-609. "Good cause" is shown where the party

9  seeking leave to amend has demonstrated sufficient diligence.

10 <u>Id.</u> at 609. Here, the court specifically instructed the parties

11 in its February 28, 2007 scheduling order that the <u>Johnson</u>

12 standard for amendment would be required, "with the exception of

13 the substitution of plaintiffs."

14      Good cause may be found to exist where the moving party

15 shows that she assisted the court with creating a workable

16 scheduling order, that she is unable to comply with the

17 scheduling order's deadlines due to matters that could not have

18 reasonably been foreseen at the time of the issuance of the

19 scheduling order, and that she was diligent in seeking an

20 amendment once it became apparent that she could not comply with

21 the scheduling order. <u>Jackson v. Laureate, Inc.</u>, 186 F.R.D. 605,

22 608 (E.D. Cal. 1999)(citations omitted). A court may supplement

23 its determination by noting the prejudice to the other party.

24 <u>Johnson</u>, 975 F.2d at 609. If good cause is found, then the court

25 _____

26      [2]In their motion to amend, the plaintiffs erroneously assert
   that Rule 15 applies to this amendment. It does not.

8

1  turns to Rule 15 to determine whether the amendment sought
2  should be granted. Id. at 608.

3      The plaintiffs explain that at the time that class
4  certification was sought, the defendants had provided little
5  discovery. It was only until the summer of 2007, plaintiffs
6  assert, that they realized that the wards should be explicitly
7  included as plaintiffs in the complaint, and that additional
8  juvenile proceedings should be added to the allegations of the
9  complaint.

10     Although the court is mindful of the difficulty with which
11 a plaintiff is necessarily faced in drafting an accurate
12 complaint and seeking class certification before discovery is
13 complete, the court nevertheless must conclude that amendment of
14 the first amended complaint is not proper here. Simply, the
15 plaintiffs did not act diligently enough. Even accepting as true
16 that the plaintiffs did not know of the facts underlying the
17 wards' claims until this summer, the plaintiffs did not bring
18 the present motion until mid-November. Significantly, on October
19 22, 2007, the plaintiffs requested an amendment of the
20 scheduling order to extend the deadline for expert disclosures.
21 Neither in this request nor in the court's October 25, 2007
22 telephone conference with the parties to discuss this request
23 did the plaintiffs indicate that they might wish to amend the
24 First Amended Complaint to expand the plaintiff class. On the
25 contrary, in their October 22, 2007 Stipulation and Proposed
26 Order Extending Dates for Expert Designation Reports and

1    Depositions, the plaintiffs represented to the court that they

2    contemplated filing additional summary judgment motions that

3    would "narrow the case." According to the plaintiffs' counsel's

4    declaration, however, at the time of making this request and

5    participating in the telephone conference, the plaintiffs were

6    also seeking a stipulation from the defendants to amend the

7    First Amended Complaint to expand the plaintiff class. <u>See</u>

8    Grunfeld Decl., ¶¶ 6-10. Given this set of events, the court

9    cannot conclude that the plaintiffs exercised the diligence

10   necessary to constitute

11   "good cause" that would permit leave to amend under Rule 16.[3]

12       The court's view is supported by consideration of the

13   prejudice to the defendants that the sought amendment would

14   cause. Although the plaintiffs characterize their amendments as

15   mere "clarifications" of language and claims already extant in

16   the First Amended Complaint, in actuality the proposed

17   amendments represent a significant expansion of the nature of

18   the suit. For instance, while the First Amended Complaint dealt

19   only with the procedures governing parole revocations, the

20   proposed Second Amended Complaint would be directed at over

21   _____

22       [3]Even if the court found that the plaintiffs met the standard
     for amendment of the pleadings under Rule 16, the plaintiffs only
23   raise in their reply brief their argument that the proposed new
     plaintiffs meet Rule 23(b)(2)'s requirements for class
24   certification, particularly the typicality requirement. Although
     it may be that Rule 23(b)(2) would be met by the proposed new
25   plaintiffs, it is not proper for the court to rely on this argument
     without the defendants' having had an opportunity to respond. <u>See</u>
26   <u>Provenz v. Miller</u>, 102 F.3d 1478, 1483 (9th Cir. 1996).

1  fifteen additional hearings that implicate a ward/parolee's

2  liberty interest. Although the First Amended Complaint alluded

3  to some of these procedures, <u>see</u>, <u>e.g.</u>, First Amended Complaint

4  ¶¶ 39, 50, 130, 148 (referring to revocation proceedings

5  specifically, as well as "other" or "additional" parole

6  proceedings), the complaint was clearly directed towards alleged

7  inadequacies in the parole revocation process. <u>See</u>, <u>e.g.</u>, First

8  Amended Complaint, ¶¶ 72-88 (describing the named plaintiffs

9  only with regards to their experiences with parole revocation),

10 130 (describing the second cause of action, alleging due process

11 violations, only in terms of revocation procedures). This was

12 the focus of the class certification, the September 2007 summary

13 judgment motion, and, logically and according to the defendants'

14 counsel's declaration, the strategy defendants have developed.

15 <u>See Eagle v. American Telephone & Telegraph, Co.</u>, 769 F.2d 541

16 (9th Cir. 1985)(Rule 16 amendment improper to permit the

17 addition of a new damages theory, where the plaintiff had

18 proposed the theory in his summary judgment motion). The expense

19 and delay with which the proposed amendment would burden the

20 defendants constitute appreciable prejudice. <u>See Kaplan v. Rose</u>,

21 49 F.3d 1363, 1370 (9th Cir. 1994); <u>Morongo Band of Mission</u>

22 <u>Indians v. Rose</u>, 893 F.2d 1074, 1079 (9th Cir. 1980).

23      The plaintiffs argue, in their reply brief, that this

24 prejudice is mitigated by the fact that the defendants were on

25 notice of the plaintiffs' intent to include non-revocation

26 proceedings in the suit. For example, in <u>Sousa ex rel. Will of</u>

11

1  <u>Sousa v. Unilab Corporation</u>, 252 F. Supp. 2d 1046, 1059 (E.D.

2  Cal. 2002), the court opined that an amendment could be granted

3  under Rule 16 when the other party had notice of the new theory

4  or allegation. There, the defendants raised a statute of

5  limitations defense in their motion for summary judgment,

6  although in the scheduling order the court had identified a

7  different issue as the "sole issue" in the case. <u>Id.</u> at 1057-58.

8  Despite this, the court noted that the defendants had raised the

9  statute of limitations defense in their answer, that it was

10 listed in the parties' joint pretrial statement, and that it was

11 discussed at the pretrial conference. <u>Id.</u> at 1059. Notice was

12 evinced by the plaintiffs having addressed the statute of

13 limitations in their own motion for summary judgment. <u>Id.</u> The

14 court characterized the statute of limitations defense as having

15 been "accidentally omitted" from the scheduling order. <u>Id.</u> at n.

16 4. Based on this, the court found good cause under Rule 16 to

17 amend the order. <u>Id.</u> at 1059.

18     Here, the plaintiffs do not present such compelling

19 evidence of notice. As described above, though the First Amended

20 Complaint contained references to hearings other than revocation

21 hearings, these references are brief and seem obviously

22 incidental to the thrust of the complaint, which was the

23 inadequacy of parole revocation hearings. The court cannot

24 conclude that these brief mentions put the defendants on notice

25 of the breadth of the plaintiffs' claims, as the plaintiffs

26 argue here.

1     The evidence of discovery is similarly uncompelling as to

2 the defendants' notice. The plaintiffs offer the interrogatories

3 served on defendants, pointing out that the "Definitions"

4 section of the document lists several non-revocation hearings.

5 <u>See</u> Reply Declaration of Gay Grunfeld ("Grunfeld Reply Decl."),

6 Exh. A at 2:2-25. This characterization is misleading, however,

7 as the non-revocation hearings (e.g., "parole consideration

8 hearings, time-adds, YAAC hearings," etc.) are listed in the

9 definition for "Parole Revocation Hearings" and are described by

10 plaintiffs as "the process whereby a determination is made

11 whether or not to revoke or continue the revocation of parole."

12 <u>Id.</u> at 2:9-23. The court does not see how this would put the

13 defendants on notice that the plaintiffs intended their claims

14 to encompass non-revocation hearings.

15     The plaintiffs also direct this court to transcripts of

16 depositions of individuals employed by defendants, who testified

17 about proceedings other than revocation proceedings, two of whom

18 defendants had designated as persons most knowledgeable about

19 these hearings. <u>See</u> Grunfeld Reply Decl., ¶¶ 6-8, Exh. B-D.

20 Although this inclines the court to believe that the defendants

21 may have been on notice of the plaintiffs' intention to include

22 these hearings in their causes of action, the evidence of notice

23 is not conclusive. The court thus cannot conclude that good

24 cause to amend exists as a result of the defendants' having had

25

26

1  notice.[4]

2      Finally, a note about judicial economy. The plaintiffs

3  point out, correctly in this court's view, that judicial economy

4  is amply served by permitting the amendment the plaintiffs seek.

5  By denying leave to amend, the court creates a situation in

6  which the plaintiffs would be required to file a new suit in

7  order to address claims involving non-revocation proceedings for

8  juveniles. That new suit might include allegations of facts,

9  legal claims, and a potential remedy that would overlap

10 appreciably with the present case.[5] Nevertheless, Rule 16 and

11 the court's scheduling order are not optional directives; the

12 court is bound by them. A loss of efficiency is the resultant

13 price that the parties and the court must pay.

14      Because the plaintiffs have not shown good cause and

15 mindful of the prejudice that would result, the court declines

16 to grant plaintiffs leave to amend the First Amended Complaint

17 in order to make explicit the inclusion of wards and additional

18 juvenile proceedings in the plaintiffs' causes of action.[6]

19 _____

20      [4]Furthermore, the plaintiffs raise the notice argument for the
first time in their reply brief. The court's reliance on it would
21 be improper. Provenz, 102 F.3d at 1483.

22      [5]Moreover, as noted in the hearing, a motion to relate the new
suit would most likely be granted.

23      [6]The court also observes that in Farrell v. Hickman, Alameda
County Superior Court case number RG03079344, the defendants have
24 agreed to a remedial plan that includes modifications to the
juvenile disciplinary, time-add, and grievance procedures. See
25 Fritz Decl., ¶ 19. The court is hesitant to permit expansion of the
present case in a manner that may result in inconsistent judgments
26 in the respective cases.

1              **2.    Addition of Defendants**

2      Under Federal Rule of Civil Procedure 25(d), when a public

3 official is named as a party, his successor is "automatically"

4 substituted as a party. The court can see no reason why the Rule

5 should be construed to only apply to individuals listed as

6 parties and not to public agencies. See Cayuga Indian Nation of

7 New York v. Pataki, 188 F. Supp. 2d 223, 256 (N.D.N.Y. 2002)

8 (holding same). As of January 1, 2007, the Juvenile Parole Board

9 is now the agency responsible for parole revocation hearings for

10 juveniles. Cal. Penal Code § 5075.1. The plaintiffs also propose

11 naming as defendants Askia Abdulmajeed and Tomas Martinez, two

12 Board members who have since been appointed. In accordance with

13 Rule 25(d), the court finds this amendment proper.

14            **3.    Substitution of Plaintiffs**

15     According to the February 28, 2007 scheduling order, good

16 cause need not be shown for the plaintiffs to substitute named

17 plaintiffs as representative class members. The plaintiffs

18 assert that substitution is necessary because the named class

19 members will soon age out of the juvenile parole system, thus

20 mooting the case if they are not substituted. This is a proper

21 basis for allowing substitution. See Gluth v. Kangas, 951 F.2d

22 1504, 1509 (9th Cir. 1991); Gomez v. Vernon, 962 F. Supp. 1296,

23 1301 (D. Idaho 1997).

24     The plaintiffs propose the addition of M.N., C.B., and R.C.

25 as named plaintiffs. See Grunfeld Decl. Exh. C, ¶¶ 72-100. All

26 three of these individuals are juveniles who have been released

1  on parole. M.N. and R.C. allegedly suffered due process

2  violations, including delays in revocation hearings and failure

3  to have attorney assistance for the revocation hearing. After

4  reviewing the allegations of these three individuals, the court

5  concludes that M.N. and R.C. satisfy the typicality requirement

6  of Rule 23 and therefore the court permits the plaintiffs to

7  amend their First Amended Complaint to add them as named

8  plaintiffs.[7]

9  **B.   Motion for Preliminary Injunction**

10       The plaintiffs have moved for a preliminary injunction to

11  require the defendants to 1) provide all juvenile parolees with

12  effective counsel at parole revocation proceedings, 2) provide

13  juvenile parolees with adequate ADA accommodations at every

14  stage of the parole revocation proceedings, and 3) revise their

15  forms and documents to make them more comprehensible to the

16  juvenile parolees. The court grants the injunction in part.

17       A preliminary injunction may issue if the movant shows

18  either "a combination of probable success and the possibility of

19  irreparable harm, or that serious questions are raised and the

20  balance of hardship tips in its favor." Prudential Real Estate

21  Affiliates, Inc. v. PPR Realty, Inc., 204 F.3d 867, 874 (9th

22  Cir. 2000). At a minimum, the movant must show "a fair chance of

23  success on the merits, or questions serious enough to require

24       [7]The court reminds the plaintiffs that the only "experiences"
    of the named plaintiffs that are relevant, given the court's
25  present ruling, are those that relate to parole revocation.
    Extraneous allegations may be subject to a motion to strike. See,
26  e.g., Grunfeld Decl. Exh. C, ¶ 80.

1  litigation" and a significant threat of irreparable injury.

2  Arcamuzi v. Continental Air Lines, Inc., 819 F.2d 935, 937 (9th

3  Cir. 1987). In considering a request for a preliminary

4  injunction, the court need only conclude that there is a

5  probability that the necessary facts can be proven in a

6  subsequent proceeding or at trial. Sierra On-Line, Inc. v.

7  Phoenix Software, Inc., 739 F.2d 1415, 1423 (9th Cir. 1984).

8    **1.   Effective Counsel for All Juvenile Parolees in**

9         **Revocation Proceedings**

10       Under Gagnon v. Scarpelli, 411 U.S. 778, 790 (1973), a

11 parolee presumptively is entitled an attorney in revocation

12 proceedings where either the parolee has a colorable claim that

13 he did not violate the terms of his parole, or when the parolee

14 has substantial reasons that justified or mitigated the

15 violation and the reasons would be difficult for the parolee to

16 present. If the parolee appears not "capable of speaking

17 effectively for himself," this weighs in favor of the

18 appointment of counsel. Id. at 790-91.

19       The Gagnon court observed that, where the parolee is

20 unsophisticated, the assistance of counsel is the necessary

21 means by which the due process protections of Morrissey are

22 realized:

23       [T]he effectiveness of the rights guaranteed by
         Morrissey may in some circumstances depend on the use
24       of skills which the probationer or parolee is unlikely
         to possess. Despite the informal nature of the
25       proceedings and the absence of technical rules of
         procedure or evidence, the unskilled or uneducated
26       probationer or parolee may well have difficulty in

                                  17

1       presenting his version of a disputed set of
facts . . . .

2 <u>Id.</u> at 786-87.

3      Although the <u>Gagnon</u> court held that the determination of

4 whether appointment of counsel was necessary in revocation

5 procedures should be made on a case-by-case basis, the court

6 concludes that juvenile parolees are a special class of parolees

7 for whom appointment of counsel is always appropriate. Put

8 plainly, a parolee's lack of skills and education that the

9 <u>Gagnon</u> court held weighed in favor of the appointment of counsel

10 is inherent to a juvenile. The court had found this to be true

11 in its order certifying the class and it is no less true now.

12     In addition to juveniles' lack of education, maturity, and

13 skills as a function of their age, there are significant

14 allegations that members of the plaintiff class possess

15 additional difficulties that would impede their ability to argue

16 on their own behalf at parole revocation proceedings. As the

17 court has previously observed, learning disabilities, substance

18 abuse, difficulties in speaking and understanding English are

19 alleged to abound among the class members. <u>See</u> Feb. 28, 2007

20 Order at 7, 14. This further suggests to the court that the

21 plaintiffs are likely to succeed in showing that failure to

22 appoint counsel to juvenile parolees in revocation procedures

23 violates those parolees' rights under <u>Gagnon</u>.

24     The injuries of which the plaintiffs complain are

25 deprivations of liberty, one of the most serious deprivations

26 that can occur and a parolee possesses a substantial interest in

1  it. See Morrissey, 408 U.S. at 481-83. The causal link between

2  the loss of a parolee's liberty and his inability to effectively

3  represent himself in revocation hearings is implicit in Gagnon.

4  See Gagnon, 411 U.S. at 781, 786-87. There can be no question

5  that the plaintiffs have made the requisite showing that there

6  is a significant threat of irreparable injury if the preliminary

7  injunction does not issue.

8      Defendants do not dispute the necessity of appointing

9  counsel to all juvenile parolees in revocation proceedings, but

10  argue that a preliminary injunction is not necessary because the

11  appointment of counsel is already a part of the defendants'

12  remedial plan. See September 19, 2007 Order at 29, n. 18

13  (requiring defendants to produce a remedial order to address

14  constitutional violations under Morrissey).

15      Although the court lauds the defendants for creating a

16  remedial plan that addresses all of the corrections they intend

17  to make of the juvenile parole system, those provisions that lie

18  outside the scope of the court's September 19, 2007 summary

19  judgment order are, strictly speaking, unenforceable as a remedy

20  to the violations found at summary judgment. Therefore, the

21  preliminary injunction is a necessary mechanism for mandating

22  and enforcing the appointment of counsel for juvenile parolees.[8]

23      The defendants also ask the court to take judicial notice

24

25

26

[8]As a practical matter, the court observes that the parties could stipulate to a permanant injunction that includes the remedial plan for the September 19, 2007 summary judgment order as well as other provisions, as was done in Valdivia v. Schwarzenegger.

1  of the Youth Bill of Rights, S.B. 518, Cal. 2007-08 Reg. Sess.

2  (Cal. 2007), effective October 13, 2007. The court does so

3  pursuant to Federal Rule of Evidence 201, because the accuracy

4  of the document provided cannot reasonably be questioned and

5  because a copy of the bill was provided to the court. Under the

6  bill, juveniles housed at the Division of Juvenile Facilities

7  are "to have counsel and a prompt probable cause hearing when

8  detained on . . . parole violations." As the plaintiffs argue,

9  the bill neither provides for juveniles housed elsewhere nor

10  delineates the extent of counsel's participation in order to

11  ensure that representation would be effective. The court also

12  observes that the Youth Bill of Rights contains no funding

13  provisions. As such, the court cannot conclude that this bill

14  obviates the need for a preliminary injunction.

15      Finally, the court holds that the plaintiffs do not have to

16  file a bond, as required by Federal Rule of Civil Procedure

17  65(c), because the defendants have made no showing of the cost

18  of compliance with the injunction.[9]  Additionally, given that

19  the plaintiff class is comprised of juveniles, the court

20  believes they are likely indigent. These factors permit a court

21  to waive the security requirement, Barahona-Gomez v. Reno, 167

22  F.3d 1228, 1237 (9th Cir. 1999), and the court concludes no bond

23  is appropriate here.

24      The court grants the preliminary injunction requiring

25      [9]On the contrary, the defendants take the position that the

26  injunction in unnecessary because they would voluntarily implement
    the requested changes.

1  defendants to appoint counsel to represent juvenile parolees at

2  every parole revocation hearing. Additional requirements to

3  ensure the effectiveness of counsel follow in Section V, *infra*.

4          **2.    ADA Accommodations at Revocation Hearings**

5          Under the ADA, a disabled individual must "be provided with

6  'meaningful access' to state provided services." <u>Armstrong v.</u>

7  <u>Davis</u>, 275 F.3d 849, 861 (9th Cir. 2001). In the parole context,

8  this includes ensuring notice is adequate in light of a

9  parolee's disability, training to state personnel to identify

10 and communicate with disabled individuals, and ensuring the

11 accessibility of hearing facilities. <u>Id.</u> at 861-63. The state's

12 failure to provide such accommodations constitutes

13 discrimination under the ADA. <u>Id.</u> at 863.

14         Here, the plaintiffs have shown that there is a fair chance

15 they will succeed in proving that the defendants do not comply

16 with the ADA in parole revocation proceedings. <u>See</u>

17 Declaration of Michael Bien in Support of Plaintiffs' Motion for

18 a Preliminary Injunction, Exh. A at 81-82, Exh. C at 174;

19 Grunfeld Decl., Exh. E at 161-62, Exh. F at 115-16 .

20 Additionally, the possibility that the affected plaintiffs would

21 consequently suffer discrimination that would impede their

22 ability to participate in proceedings in which their liberty

23 rights are at stake demonstrates the likelihood of irreparable

24 injury.

25         Therefore, the court issues a preliminary injunction to

26 require defendants to develop sufficiently specific draft

Policies, Procedures, and Plans ("Policies and Procedures") that will ensure continuous compliance with all of the requirements of the Americans with Disabilities Act in parole revocation proceedings. Defendants will promptly disseminate their Policies and Procedures in an effective manner. The Policies and Procedures must ensure that Juvenile Parolees with effective communication needs (including but not limited to mental illness, other cognitive or communication impairments, illiteracy, limited English-language proficiency, and the need for a foreign language interpreter) and/or disabilities are able to participate, to the best of their abilities, in all parole revocation proceedings.  The Policies and Procedures shall include detailed procedures for accommodating and effectively communicating with Juvenile Parolees with Disabilities and/or effective communication needs at all Parole Revocation Proceedings.

Defendants shall submit the draft Policies and Procedures to the Court no later than March 15, 2008.  The parties shall attempt to resolve any disputes informally.  If there are any disputes that the parties cannot resolve, such disputes shall be briefed by the parties to the Court for hearing in May 2008.  If there are no unresolved disputes, the parties shall so inform the Court no later than March 31, 2008.

**3.   Revision of Forms**

Finally, the plaintiffs seek a preliminary injunction to require defendants to revise their parole revocation forms to

make them comprehensible at a sixth grade reading level. The defendants have agreed to revise the forms.  Accordingly, the court will not consider the matter further.

**IV. CONCLUSION**

In light of the above, the court orders as follows:

1.   Plaintiffs' motion to amend the first amended complaint is DENIED except to add plaintiffs M.N. and R.C. as named plaintiffs and the Juvenile Parole Board, Askia Abdulmajeed, and Tomas Martinez as defendants;

2.   Plaintiffs' motion to enter a remedial order is DENIED;

3.   Plaintiffs' motion for preliminary injunction is GRANTED IN PART. The defendants are ordered as follows:

a.   Commencing on or before February 15, 2008, Defendants shall appoint counsel to represent each and every Juvenile Parolee in Parole Revocation Proceedings;

b.   Counsel shall be appointed and provided with all necessary files at a time sufficiently in advance of the Probable Cause Hearing to allow adequate and competent preparation.  Counsel shall not be denied reasonable access to all of their clients' files;

c.   Counsel shall be provided reasonable access to

their clients in areas or spaces that provide for confidential communications;

d.   No Juvenile Parolee shall be precluded from obtaining counsel of his or her own choosing at his or her own cost, including his or her public defender or other appointed counsel, retained counsel, or pro bono counsel.  Such counsel shall have the same rights under this Preliminary Injunction, except as to compensation, as counsel appointed by Defendants.  As part of the Policies and Procedures promulgated under this Order, Defendants shall develop a process for timely notifying a Juvenile Parolee's counsel of record or public defender of the imposition of a parole hold;

e.   Defendants shall ensure effective communication and shall provide necessary accommodations to all Juvenile Parolees throughout the Revocation Process;

f.   Defendants shall develop sufficiently specific draft Policies and Procedures that will ensure continuous compliance with all of the requirements of the Americans with Disabilities Act in parole revocation proceedings. Defendants will promptly disseminate their Policies and Procedures in an effective manner. The Policies

24

and Procedures must ensure that Juvenile Parolees with effective communication needs (including but not limited to mental illness, other cognitive or communication impairments, illiteracy, limited English-language proficiency, and the need for a foreign language interpreter) and/or disabilities are able to participate, to the best of their abilities, in all parole revocation proceedings. The Policies and Procedures shall include detailed procedures for accommodating and effectively communicating with Juvenile Parolees with Disabilities and/or effective communication needs at all Parole Revocation Proceedings;

g. Defendants shall submit the draft Policies and Procedures, as described in 3(f), *supra*, to the Court no later than March 15, 2008. The parties shall attempt to resolve any disputes informally. If there are any disputes that the parties cannot resolve, such disputes shall be briefed by the parties to the Court for hearing in April 2008. If there are no unresolved disputes, the parties shall so inform the Court no later than March 31, 2008.

4. Chase Riveland is appointed to serve as settlement referee in the case. In accordance with the parties' representations, Mr. Riveland's fee will

1        be paid by the parties, with the plaintiffs and

2        defendants each bearing half of the cost.

3   IT IS SO ORDERED.

4   DATED: January 29, 2008.

5

6

7                              LAWRENCE K. KARLTON
                               SENIOR JUDGE
8                              UNITED STATES DISTRICT COURT

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26