UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

L.H., A.Z., D.K., and D.R.,
on behalf of themselves and
all other similarly
situated juvenile parolees
in California,

NO. CIV. S-06-2042 LKK/GGH

        Plaintiffs,

   v.

O R D E R

ARNOLD SCHWARZENEGGER,
Governor, State of
California, et al,

        Defendants.
_____/

    Plaintiffs are a class of juvenile parolees who sued various state officials and agencies in order to obtain changes in parole revocation procedures. Upon the stipulation of the parties, the court awarded injunctive relief several months ago. Plaintiffs now seek attorney's fees and costs. Also pending is plaintiffs' motion for costs and fees associated with the magistrate judge's May 14, 2008 discovery sanctions order. The court resolves the motions on the papers and after oral argument.

1

# I. BACKGROUND[1]

This action was filed on September 13, 2006 as a class action challenging the parole revocation process for juvenile parolees as violating due process and the mandates of the Americans With Disabilities Act (ADA). The action was brought after the court had on September 6, 2006, denied plaintiffs permission to amend their complaint in <u>Valdivia v. Schwarzenegger</u>, which addresses due process requirements of parole revocation proceedings in the adult parole system, to add allegations regarding the juvenile parole system.

In the, approximately, two years of the case, the parties engaged in significant motion practice. Defendants moved to dismiss and to require plaintiffs to use their full names in all court filings, both of which were denied on February 23, 2007. Plaintiffs moved for class certification, which was granted on February 28, 2007. Plaintiffs moved for partial summary judgment on the central legal issue of the case, whether defendants were violating plaintiffs' constitutional and statutory rights in the parole revocation process, which was granted in part on September 19, 2007, with the court denying the motion as to remedy. Defendants were ordered to submit a proposed remedial plan, which the court found to be inadequate and ordered continued efforts by both plaintiffs and defendants in crafting an appropriate alternative.

---

[1]Defendants request the court take judicial notice of orders in this case and in <u>Valdivia v. Schwarzenegger</u>. It is unnecessary for the court to take judicial notice of its own orders.

When they were unable to accomplish this and in response to plaintiffs' motion for entry of a remedial order, the court appointed a settlement judge on January 29, 2008.

In the meantime, plaintiffs moved for a preliminary injunction and to amend the complaint. The court granted the motion for a preliminary injunction, providing for effective counsel at juvenile parole revocation hearings. The court denied in part the motion to amend; inter alia, the court denied plaintiffs' request to amend the complaint to encompass other hearings and proceedings beyond revocation hearings.

In March 2008, plaintiffs moved to enforce the court's prior orders and for appointment of a special master. The court granted the motion, appointing Chase Riveland as Special Master on May 22, 2008. Just prior to that order, plaintiffs had filed three motions for partial summary judgment and a motion for a remedial order. Two of those motions were then referred to the Special Master for resolution.

Discovery in this case was not uneventful, either. Plaintiffs moved for a protective order, which was granted by the magistrate judge on May 14, 2007. Plaintiffs also filed several motions to compel, most of which were granted.[2] Plaintiffs were twice awarded attorney's fees by the magistrate judge for motions to compel, the magistrate judge concluding both times that defendants'

---

[2]One was denied, but the court granted plaintiff's request for reconsideration of the magistrate judge's ruling. See Order, July 6, 2007.

3

nondisclosure of certain discovery was groundless. <u>See</u> Order, Sept. 21, 2007; Order, May 14, 2008.

On June 13, 2008, the parties moved for approval of their settlement. The court issued an order of preliminary approval of the settlement on June 17, 2008. The court approved the settlement on October 7, 2008, which included an order for permanent injunctive relief. The injunction provides for due process, provision of counsel, and accommodation of disabilities during juvenile parole revocation proceedings. Order, Oct. 7, 2008 at 7-17. It also provides that plaintiffs are the prevailing party in the action and that they could accordingly move for attorneys fees. <u>Id.</u> at 18.

## II. STANDARD

The Supreme Court has articulated the standard for a finding of prevailing party as whether the party has "succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983). The Ninth Circuit, in discussing whether a party has achieved prevailing status, has noted that a party can achieve that status by establishing a clear, causal relationship between the litigation brought and the practical outcome realized. <u>Rutherford v. Pitchess</u>, 713 F.2d 1416, 1419 (9th Cir. 1983).

The Supreme Court has adopted a two-pronged approach to the calculation of a reasonable attorneys' fees under any statute that permits recovery of attorneys' fees. <u>See</u> <u>Hensley</u>, 461 U.S. 424, 433 n. 7 ("The standards set forth in this [§ 1988] opinion are

4

generally applicable in all cases in which Congress has authorized an award of fees to a prevailing party."); <u>Fadhl v. City and County of San Francisco</u>, 859 F.2d 649, 650 n. 1 (9th Cir. 1988). A court must first calculate a lodestar figure by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. <u>Blum v. Stenson</u>, 465 U.S. 886, 888 (1984); <u>Cunningham v. County of Los Angeles</u>, 879 F.2d 481, 484 (9th Cir. 1988), cert. denied, 493 U.S. 1035 (1990). While this lodestar figure is presumed to represent an appropriate fee, under certain circumstances a court may adjust the award upward or downward to take into account special factors. <u>Blum</u>, 465 U.S. at 897.

### III. ANALYSIS

Plaintiffs seek $5,021,475.40 in attorneys' fees and costs. For the reasons stated herein, the court awards $4,421,173.46 in fees and $349,034.12 in costs, reduced by the amount of the November 14, 2008 interim fee award. The court also awards in full the fees sought by plaintiffs pursuant to the magistrate judge's May 14, 2008 sanction order.

### A. Plaintiffs' Entitlement to Fees

As a threshold matter, plaintiffs are the prevailing party in the litigation, as the entry of the injunction provided plaintiffs the relief they sought in the litigation. <u>See Hensley</u>, 461 U.S. at 433. Defendants acknowledged this by stipulation as a term of the injunction and they do not oppose the instant motion on this basis. Moreover, defendants do not oppose the award of attorneys' fees on the grounds that their

position was substantially justified or that there are any special circumstances that would render the award of fees unjust. See id. at 429. Accordingly, plaintiffs are entitled to fees and costs.

**B.  Amount of the Fee Award**

The amount of the fee award is determined by a lodestar, which is calculated by multiplying the number of hours the prevailing party reasonably spent on the litigation by a reasonable hourly rate. Hensley, 461 U.S. at 433-34. The lodestar may be adjusted upward when there is evidence that that is merited. Morales v. City of San Rafael, 96 F.3d 359, 364 (9th Cir. 1996). Generally, however, the reasonableness of the prevailing party's rates and the reasonableness of the time expended in the suit should accurately reflect most of the considerations relevant for the fees award. Id. Here, plaintiffs do not seek an upward adjustment of the lodestar.

**1.  Reasonable Hourly Rates**

The prevailing party should be awarded a reasonable hourly rate given the relevant legal community. Gates v. Deukmeijian, 987 F.2d 1392, 1405 (9th Cir. 1992). Typically, the relevant legal community is that in which the forum district is located. Id. The prevailing party may be awarded the reasonable rates of another legal community when it has tendered evidence that attorneys adequate to conduct the litigation at issue were unavailable in the forum market. Id. Finally, a reasonable rate should reflect not only the market rates, but the skill and

experience of the prevailing party's counsel. <u>Blum v. Stenson</u>, 465 U.S. 886, 898-99 (1984).

### a. **Plaintiffs' Counsel**

Plaintiffs contend that the relevant legal community for the purposes of this suit is the San Francisco Bay Area, rather than Sacramento. The court agrees. Consistent with plaintiffs' description, the suit was a complicated one requiring expertise in class action litigation, civil rights litigation, and youth law. It sought injunctive relief as its primary goal, rather than damages. Plaintiffs have tendered evidence that there were no Sacramento firms experienced and capable enough and willing to undertake such a suit. Decl. of Mark Chavez in Support of Pls.' Mtn. ("Chavez Decl.") ¶¶ 28-29; Decl. of Sidney Wolinsky in Support of Pls.' Mtn. ("Wolinsky Decl.") ¶ 28; Decl. of Joshua Konecky in Support of Pls.' Mtn. ("Konecky Decl.") ¶ 18; Decl. of Linda Dardanian in Support of Pls.' Mtn. ("Dardanian Decl.") ¶¶ 20-21; Decl. of Daniel Mason in Support of Pls.' Mtn. ("Mason Decl.") ¶ 11; Reply Decl. of Jay Allen Eisen In Support of Pls.' Mot. ("Eisen Reply Decl.") ¶¶ 18-19; Reply Decl. of Carter C. White In Support of Pls.' Mot. ("White Reply Decl.") ¶¶ 17-18; Reply Decl. of Sidney Wolinsky In Support of Pls.' Mot. ("Wolinsky Reply Decl.") ¶ 11; Reply Decl. of Jennifer Anne Scott In Support of Pls.' Mot. ("Scott Reply Decl.") ¶ 7; <u>see also</u> <u>Gates</u>, 987 F.2d at 1405 (holding similar evidence to be persuasive in determining the relevant legal market).

Defendants attempt to rebut this with evidence that three

7

Sacramento firms may have been able to represent plaintiffs in this suit. Decl. of S. Anne Johnson In Opp. to Pls.' Mot. ¶¶ 3-4, Ex. B-D. Defendants' evidence, however, consists of defense counsel's conclusion based on a perusal of Sacramento firms' websites. See id. The court is unpersuaded. As plaintiffs observe, there is no evidence that any of these firms have expertise in the issues central to this case, and two of the firms appear not to specialize in plaintiff's litigation. See id. Ex. C-D; Reply Decl. of Gay Grunfeld In Support of Pls.' Mot. ("Grunfeld Reply Decl.") ¶¶ 55, 57. Moreover, William Parish , founding member at one of the firms identified by the defendants, Parish & Small, has declared that his firm would not undertake this suit, as it is out of their area of expertise. Reply Decl. of William Parish In Support of Pls.' Mot. ¶ 1, 5. Defendants' evidence, therefore, is even less persuasive than the declarations that defendants offered in Gates, which the court held did "not persuasively rebut plaintiffs' overwhelming contrary proof that Sacramento firms could not have successfully provided the expert representation required to effectively represent the litigants in this matter." Gates, 987 F.2d at 1405.

Plaintiffs have also tendered evidence to establish the 2008 market rates in San Francisco for attorneys of various experience levels. Defendants have offered no rebuttal evidence. The court summarizes that evidence here:

| Years of experience | General rates[3] (Rosen Decl.) | General rates[4] (Pearl Decl.) | Rates for specialists in ADA and/or class action litigation[5] |
|---|---|---|---|
| 25+ | 525-750 | 495-785 | 575-900 |
| 20-24 | 510-750 | 500-700 | 575-700 |
| 15-19 | 575-725 | 490-590 | 495-550 |
| 10-14 | 430-540 | 400-500 | 465-500 |
| 5-9 | 355-515 | 325-560 | 340-475 |
| 0-4 | 260-415 | 250-520 | 285-410 |

Plaintiffs have also tendered evidence to establish that the three firms for whom they seek fees[6] are considered experts in prisoners' rights litigation or litigation on behalf of juveniles. Pearl Decl. ¶¶ 9-11; Dardanian Decl. ¶¶ 16-18; Mason Decl. ¶¶ 14-16; Konecky Decl. ¶¶ 14-16; Wolinsky Decl. ¶¶ 23-25; Chavez Decl. ¶¶ 24-26. Several of the plaintiffs' attorneys also represent the plaintiffs in <u>Valdivia v. Schwarzenegger</u>, the related case addressing due process in the parole revocation process for adult parolees. As such, they bring particular

[3]These are taken from the declaration of Sanford J. Rosen in support of plaintiffs' motion, Exhibit E.

[4]These are taken from the declaration of Richard M. Pearl in support of plaintiffs' motion at ¶ 16.

[5]These are taken from the Chavez Declaration ¶ 21, Wolinsky Declaration ¶ 20, Konecky Declaration ¶ 9, Dardanian Declaration ¶ 13, and Mason Declaration ¶ 10.

[6]Although plaintiffs were represented by four firms, they do not seek fees or costs for their representation by the Prison Law Office.

expertise to this litigation. The court observes that Michael Bien has been recognized as a "genuine expert in the area of complex, institutional prison reform litigation," so as to merit exceptional fees. <u>Lucas v. White</u>, 63 F. Supp. 2d 1046, 1061-62 (N.D. Cal. 1999).

Accordingly, the court finds the fees requested for the attorneys of Rosen, Bien & Galvan to be reasonable and awards them. This determination is based on consideration of the 2008 market rates and the skill of the individual attorneys as evidenced by their resumes and their involvement with the Valdivia litigation. <u>See</u> Grunfeld Decl. Ex. F-W. The court also notes that these rates were awarded to some of these attorneys in 2008 in other prison litigation cases. <u>See</u> <u>Valdivia v. Schwarzenegger</u>, No. 940671, Order, June 30, 2008; <u>Armstrong v. Schwarzenegger</u>, No. 94-2307, Order, June 27, 2008.

Plaintiffs have not persuaded the court, however, that the rates requested for the Bingham McCutchen attorneys are reasonable. Although several of these attorneys have been involved in the <u>Valdivia</u> suit and demonstrate, through their resumes, experience in complex litigation generally, there has been no evidence tendered that persuades the court that these attorneys' skill and experience exceeds that of their counterparts at Rosen Bien. <u>See</u> Holtz Decl. Ex. A. Accordingly, the court awards the Bingham McCutchen attorneys the same rates as the Rosen Bien attorneys with similar experience levels.

Finally, the court concludes that the rates requested by

the Youth Law Center attorneys are reasonable. These rates fall in the low to middle range of market rates for attorneys at their experience level. Additionally, the resumes of both of the Youth Law Center attorneys demonstrate experience in litigation on behalf of juveniles, which further demonstrates the reasonableness of these rates. See Burrell Decl. Ex. A-B.

The following chart summarizes the court's order regarding the reasonable hourly rates awarded for plaintiffs' counsel:

| Attorney | Firm | Years Practicing (as of 2008) | Rate Sought | Rate Awarded |
|----------|------|-------------------------------|-------------|--------------|
| Burrell | YLC | 31 | 570 | 570 |
| Bien | RBG | 28 | 640 | 640 |
| Grunfeld | RBG | 24 | 475 | 475 |
| Kennard | BM | 19 | 580 | 475 |
| Galvan | RBG | 11 | 450 | 450 |
| Holtz | BM | 11 | 585 | 450 |
| Zimmerman | RBG | 8 | 380 | 380 |
| Morris | RBG | 7 | 370 | 370 |
| Palumbo | BM | 7 | 485 | 370 |
| Lang | RBG | 6 | 360 | 360 |
| Huey | RBG | 6 | 360 | 360 |
| Maznavi | RBG | 5 | 340 | 340 |
| Kendrick | YLC | 5 | 340 | 340 |
| Walczak | RBG | 5 | 340 | 340 |
| Rosenbaum | BM | 4 | 420 | 340 |
| Reardon | BM | 3 | 380 | 295 |

| Ellsworth | BM | 3 | 380 | 295 |
| Stewart | RBG | 3 | 295 | 295 |
| Laubach | RBG | 3 | 295 | 295 |
| Berger | BM | 2 | 345 | 295 |
| Stonework | BM | 2 | 345 | 295 |
| Mah | BM | 2 | 325 | 295 |

### b. Support Staff

Plaintiff has also tendered some evidence of the reasonable market rates for 2008 in San Francisco for paralegals, paralegal clerks, and law clerks.[7] Defendants have tendered no rebuttal evidence. According to plaintiffs, the 2008 rates for paralegals range from $125-250, with $200 being the average. Rosen Decl. Ex. G; Pearl Decl. ¶ 16; Chavez Decl. ¶ 23; Wolinsky Decl. ¶ 21; Konecky Decl. ¶ 13; Dardanian Decl. ¶ 15; Mason Decl. ¶ 13. The average hourly rate for a paralegal clerk is $143. Rosen Decl. Ex. G. The average hourly rate for a "litigation support assistant / analyst" is $173. Id. The hourly rates for law clerks ranges from $165-295. Wolinsky Decl. ¶ 21; Pearl Decl. ¶ 16.

Here, there has been no evidence tendered that the paralegals, paralegal clerks, litigation assistants, or law clerks possessed special skill meriting a higher hourly rate. The only evidence of the experience levels of any of these

---

[7]Plaintiffs have also tendered unrebutted evidence that it is typical practice for these support staff to bill their time separately in the San Francisco market. Rosen Decl. ¶ 22.

support personnel establish that the paralegals and paralegal clerks of Rosen Bien all had one to three years of experience in 2008. Grunfeld Decl. Ex. Q-W. Given this, the court concludes that rates at the low end of the market rates are reasonable. Additionally, although Bingham McCutchen employed three litigation technology personnel, to manage the "voluminous" electronic files in the case, there is no evidence tendered of the market rates for these specialists. See Holtz Decl. ¶¶ 15, 19. Because their function seems to approximate a paralegal's, the court finds that rate reasonable.

The court's award is as follows:

| Name | Position | Firm | Rate awarded |
|------|----------|------|--------------|
| Panday | law clerk | RB | 170 |
| Harpster | paralegal | RB | 150 |
| Roudebush | paralegal | RB | 150 |
| Johnson-Silk | paralegal | RB | 150 |
| Richardson | paralegal clerk | RB | 130 |
| Hastings | law clerk | RB | 170 |
| Diaz | paralegal | RB | 150 |
| Wilkinson | paralegal | RB | 150 |
| Lepie | law clerk | RB | 170 |
| Cooppan | law clerk | RB | 170 |
| Harrison | paralegal | RB | 150 |
| DeLeon | paralegal | BM | 150 |

| Yip | litigation technology | BM | 150 |
|-----|----------------------|-----|-----|
| Ma | litigation technology | BM | 150 |
| Cisneros | litigation technology | BM | 150 |
| Bates | law clerk | YLC | 170 |
| Stuckemeyer | law clerk | YLC | 170 |

### 2. Reasonable Hours Expended

Plaintiffs may only be compensated for those hours of work that were "reasonably expended." Hensley, 461 U.S. at 433-34. The court will not grant a fee award for "hours that are excessive, redundant, or otherwise unnecessary." Id. The burden lies with the prevailing party to tender evidence of the hours spent on the litigation. Id.; Gates, 987 F.2d at 1397. The opposing party can rebut this with evidence that the time charged is inaccurate or unreasonable. Gates, 987 F.2d at 1397-98. Nevertheless, the court has an independent duty to review the fee request for reasonableness, notwithstanding the opposing party's objections or the absence thereof. Id. at 1401.

### a. Defendants' Objections

Defendants first argue that it is unreasonable to award plaintiffs fees for their failed motions. These include plaintiffs' motion to amend the Valdivia complaint and motion to amend the First Amended Complaint to include allegations regarding all proceedings relating to parole. Defendants'

14

position is unsupported by the law. A prevailing party may recover fees for aspects of the litigation for which it was unsuccessful. Gates, 987 F.2d at 1404. As the Supreme Court observed, "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not sufficient reason for reducing a fee." Hensley, 461 U.S. at 435. Instead, the court should consider the reasonableness of seeking fees for failed motions in terms of how it reflects the results obtained by the prevailing party. Blum, 465 U.S. at 900; Gates, 987 F.2d at 1404. Of course, the court should not award fees for unsuccessful claims that were "unrelated to" the successful claims. Gates, 987 F.2d at 1404, citing Hensley, 461 U.S. at 434; see also Thomas v. City of Tacoma, 410 F.3d 644, 649 (9th Cir. 2005) (prevailing party should recover fees for those tasks a reasonably prudent lawyer would have performed to prevail on the successful claims).

Here, plaintiffs two unsuccessful motions are reasonably related to their successful claims. The proposed amendment to the Valdivia complaint was reasonable given the common legal issues between the cases. If successful, it might well have facilitated a prompt recovery for what later became the L.H. plaintiff class, as the plaintiffs' challenge to the due process provisions in parole proceedings had previously been resolved favorably for the Valdivia plaintiffs. The court's decision to deny that motion was inter alia, based on its uncertainty as to

15

the relationship of adult and juvenile law. It appears entirely reasonable for the plaintiffs to have moved initially to expand the Valdivia suit to encompass the allegations of juvenile parolees.

It also was reasonable for plaintiffs to have moved to amend the first amended complaint to include all proceedings relating to juvenile parole, including parole consideration hearings and time-add proceedings. If, as plaintiffs alleged, plaintiffs' counsel had become aware of possible violations of due process and the ADA in those proceedings and because L.H. addressed similar allegations against the same defendants, a reasonably prudent attorney in plaintiffs' counsels' position would have brought the motion. Furthermore, the court notes that although this motion was unsuccessful, some of the plaintiffs' concerns about the non-revocation parole hearings were ultimately resolved in the stipulated permanent injunction. See Permanent Injunction ¶ 35.

Similarly, defendants object to an award for fees for hours expended observing or otherwise performing work related to time-add hearings, parole consideration hearings and other proceedings not made part of the operative complaint by virtue of the denial of plaintiffs' motion to amend. This objection is not well-taken. The court has reviewed, line-by-line, all of the time records submitted by plaintiffs' counsel. It appears that no hours were billed for that work after January 29, 2008, the date of the court's order denying the motion to amend. It is

reasonable for plaintiffs' counsel, before that date, to have conducted research on the viability of those causes of action sought to be included via amendment and to have begun to develop a factual record were the court to have granted the motion.

Defendants also sweeping object to plaintiff counsels' allegedly excessive billing, noting that many hours were billed for work on drafting the complaint or individual motions. Preliminarily, defendants have not explained how from the plaintiffs' time records they have computed these figures. The court's independent review of the records suggests that defendants representations are not accurate.[8] Moreover, defendants have not tendered any evidence that the amount of hours billed are objectively unreasonable for a case such as this, which was a class action suit seeking institutional change by the state, involving myriad complicated legal issues and a large factual record. Furthermore, the quality of representation by plaintiffs' counsel throughout the suit was exceedingly high. All of plaintiffs' briefs on every substantive motion before the court were thorough, well-written, and accurately addressed the relevant law, attributes which suggest a great deal of preparation. Although the time records reflect a great deal of time billed for communications among plaintiffs' counsel, this does not reflect inefficiencies or excess in the billing

_____

[8]For example, as plaintiffs note in the reply brief, there is no indication in plaintiffs' time logs that Rosen Bien attorney Loren Stewart billed any time for work on the proposed Second Amended Complaint.

practice. As the court has noted, this suit was complicated and implicated areas of law in which various of plaintiffs' counsel brought varying levels of expertise. Communication among them was undoubtedly essential to their effective representation of their clients. <u>See</u> <u>Probe v. State Teachers' Retirement System</u>, 780 F.2d 776, 785 (9th Cir. 1986) (holding that in a large class action case, the participation of multiple attorneys was not unreasonable).

Additionally, the plaintiffs succeeded on several important motions before the court, including that for class certification and for partial summary judgment on one of the central legal issues. These victories undoubtedly led the plaintiffs to the exceptional results they ultimately obtained, which was the injunctive relief they had sought in filing suit. This relief is not only exceptional because it represents a vindication of the rights of their clients, but because it may serve as an exemplar for others as "the most comprehensive and important victory of this kind in the United States." Adachi Decl. ¶ 16. Therefore, in light of the quality of the plaintiffs' counsel's representation of their clients and the results obtained, the court concludes that the hours billed for motion practice and drafting the complaints were reasonable.

Next, defendants object to time billed for representation of individual plaintiffs in non-revocation hearings and depositions of individuals whose testimony did not relate to revocation hearings. These objections are also unpersuasive. As

described above, most if not all of the observations of non-revocation hearings and most of the depositions of witnesses occurred before the court's denial of the motion to amend and it is not unreasonable for plaintiffs' counsel to have performed these tasks in preparation for the possible amendment. Moreover, the injunction addressed those other proceedings, although they were outside the scope of the complaint and hence plaintiffs were successful in obtaining the relief they sought with regards to these proceedings.

Plaintiffs' counsels' billing for time spent directly representing clients at their hearings also appears reasonable. This representation would serve to inform plaintiffs' counsel as to the procedures used by defendants in parole proceedings, information that was particularly valuable given defendants' continued reluctance to comply with discovery requests, as noted above. The court also agrees with plaintiffs' counsel's position that they had an ethical duty to represent their clients when their due process rights were threatened by defendants' conduct. See Burrell Reply Decl. ¶ 15. This situation is not inapposite to cases in which the Ninth Circuit has held that counsel may be compensated for time spent on amici briefs for cases whose disposition could affect the likelihood of success in their own litigation. See Armstrong v. Davis, 318 F.3d 965, 971-73 (9th Cir. 2003); Gates v. Gomez, 60 F.3d 525, 535 (9th Cir. 1995); Hasbrouck v. Texaco, 879 F.2d 632, 638 (9th Cir. 1989). In those cases, that time was held to have been reasonably billed because

the amici were filed "to protect the interests of the class." Gomez, 60 F.3d at 535. Here, the same principle would permit plaintiffs' counsel to protect their clients due process rights on an individual basis when called upon to do so, as that was the precise result they sought to obtain on a class-wide basis.

Defendants next object to plaintiffs' counsel billing for time spent observing revocation hearings that were being videotaped. They contend that the same work could have been performed adequately by a paralegal. Plaintiffs have tendered evidence, however, that the presence of attorneys at the hearings was important to the representation of their clients, as counsel needed to ensure the hearing officers permitted the use of videotaping and counsel made observations at the hearings that were not captured by video but that were useful in subsequent motions. Grunfeld Reply Decl. ¶¶ 43-45. Plaintiffs' counsel's presence at the hearings, therefore, appears reasonable.

Finally, defendants object to Bingham McCutchen's use of a paralegal to perform clerical duties. These include the paralegal's "printing email and attachments for case files," "preparing special records folders for case materials," "organizing files," "updating files," "indexing or revising the index to files," and scheduling the videotaping of parole revocation hearings. See Defs.' Opp. to Pls.' Mot. at 16. The Supreme Court has held that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of

who performs them." <u>Missouri v. Jenkins</u>, 491 U.S. 274, 288 n. 10 (1989). These tasks appear clerical and plaintiffs have tendered no evidence that these are tasks that required the skill of a paralegal. The court therefore finds awarding them unreasonable. Accordingly, the hours billed by paralegal DeLeon are reduced by 161.3 hours.

### b. Court's Review of Time Billed

Independent of considering the defendants' objections to plaintiffs hours billed, the court has reviewed the time logs line-by-line to determine their reasonableness. <u>See</u> <u>Henley</u>, 461 U.S. at 433. As discussed above, both the skill evinced by plaintiffs' counsel in litigating a factually and legally complex case and the quality of the results obtained both militate towards a finding that the hours expended were reasonable. <u>See</u> <u>Morales</u>, 96 F.3d at 364, citing <u>Kerr v. Screen Guild Extras, Inc.</u>, 526 F.2d 67, 70 (9th Cir. 1975). A review of the time records also reveals that plaintiffs' counsel exercised billing discretion by reducing hours billed by over $291,000 in attorney hours, in order to address inefficient, redundant, or non-legal work. Burrell Decl. ¶ 23, Ex. D; Holtz Decl. ¶ 24, Ex. C; Grunfeld Decl. ¶ 92, Ex. AA. The court has also reviewed the time logs and finds most of the hours billed reflect time reasonably spent advancing the litigation and therefore should be award. There are a few exceptions, however.

First, the court finds unreasonable plaintiffs' counsel's billing of time related to the press about the case. Although

non-litigation activities such as lobbying or working with the media may be compensable when "directly and intimately related to the successful representation of a client" and when they "contribute, directly and substantially, to the attainment of [the] litigation goals," <u>Davis</u>, 976 F.2d at 1545, here, there has been no evidence tendered that that is the case. As such, the court finds an award of these hours unreasonable. Accordingly, plaintiffs are not awarded the following billed hours:

| Attorney | Date | Hours billed |
|----------|------|--------------|
| Burrell | 6/19/2006 | 0.7 |
| Burrell | 6/20/2006 | 0.4 |
| Burrell | 6/21/2006 | 1.1 |
| Burrell | 2/28/2007 | 0.8 |
| Burrell | 9/19/2007 | 0.9 |
| Burrell | 1/21/2008 | 0.1 |
| Burrell | 1/29/2008 | 0.3 |
| Burrell | 1/30/2008 | 0.3 |
| Burrell | 6/3/2008 | 0.9 |
| Burrell | 6/4/2008 | 1.2 |
| Kendrick | 6/20/2006 | 1.9 |
| Kendrick | 6/21/2006 | 1.3 |
| Kendrick | 1/29/2008 | 0.8 |
| Kendrick | 4/3/2008 | 0.1 |
| Kendrick | 6/3/2008 | 1.3 |
| Kendrick | 6/4/2008 | 1.5 |
| Bein | 2/28/2007 | 0.5 |

| | | |
|---|---|---|
| Berger | 1/29/2008 | 0.4 |
| Berger | 1/31/2008 | 0.3 |
| Lang | 2/1/2008 | 0.4 |
| Bein | 2/18/2008 | 0.1 |
| Huey | 2/19/2008 | 0.1 |

Second, plaintiffs' counsel has billed several hours for activities that did not directly relate to the litigation, but rather addressed gaps in the attorney's background knowledge that would be relevant to the case. This includes research on Local Rules and previous <u>Valdivia</u> orders. This category also includes internal management, such as training interns on billing coding practices. Billing for these hours is not reasonable. The court therefore declines to award the following hours:

| Attorney | Date | Hours billed |
|---|---|---|
| Burrell | 7/17/2007 | 1.5 |
| Mah | 12/21/2006 | 0.1 |
| Rosenbaum | 12/26/2006 | 1.8 |
| Rosenbaum | 12/28/2006 | 1.4 |
| Rosenbaum | 2/1/2007 | 0.2 |
| Rosenbaum | 2/13/2007 | 0.2 |
| Rosenbaum | 3/29/2007 | 0.8 |
| Rosenbaum | 4/2/2008 | 0.7 |
| Roudebush | 11/29/2007 | 0.1 |
| Laubach | 5/23/2008 | 1.3 |

Finally, there are some hours billed that do not seem to directly relate to the representation of the plaintiffs in this

case. The entries indicate that these hours may relate to work on the <u>Valdivia</u> case or are related to other litigation or whose relationship to the instant case is simply unclear. This includes observation of and representation of parolees at non-revocation hearings after January 29, 2008 and attendance at statewide meetings. Plaintiffs have not demonstrated that billing for these activities is reasonable and the court therefore declines to award them. Those hours are summarized here:

| Attorney | Date | Hours billed |
|----------|------|--------------|
| Burrell | 5/15/2006 | 0.3 |
| Burrell | 6/20/2006 | 1.5 |
| Kendrick | 1/30/2008 | 0.3 |
| Kendrick | 2/1/2008 | 0.4 |
| Kendrick | 5/9/2008 | 0.9 |
| Kendrick | 5/10/2008 | 0.4 |
| Kendrick | 5/12/2008 | 4.2 |
| Harpster | 6/1/2006 | 0.5 |
| Lang | 3/27/2008 | 8.5 |

The court's award of the reasonable fees for plaintiffs' counsel is summarized here:

| Staff member | Hours awarded | Rate Awarded | Total |
|--------------|---------------|--------------|-------|
| Burrell | 448.4 | 570 | 255,588 |
| Bien | 621.9 | 640 | 398,016 |
| Grunfeld | 1973.8 | 475 | 937,555 |
| Kennard | 128 | 475 | 60,800 |

| | | | |
|---|---|---|---|
| Galvan | 56.2 | 450 | 25,290 |
| Holtz | 115.2 | 450 | 51,840 |
| Zimmerman | 202.5 | 380 | 76,950 |
| Morris | 1592.15 | 370 | 589,095.50 |
| Palumbo | 54.9 | 370 | 20,313 |
| Lang | 1131.2 | 360 | 407,232 |
| Huey | 772.9 | 360 | 278,244 |
| Maznavi | 122.2 | 340 | 41,548 |
| Kendrick | 535.65 | 340 | 182,121 |
| Walczak | 49.5 | 340 | 16,830 |
| Rosenbaum | 330.6 | 340 | 112,404 |
| Reardon | 35.6 | 295 | 10,502 |
| Ellsworth | 76 | 295 | 22,420 |
| Stewart | 41.7 | 295 | 12,301.50 |
| Laubach | 1526.55 | 295 | 450,332.25 |
| Berger | 77.5 | 295 | 22,862.50 |
| Stonework | 81.8 | 295 | 24,131 |
| Mah | 203 | 295 | 59,885 |
| Panday | 25.8 | 170 | 4,386 |
| Harpster | 426.3 | 150 | 63,945 |
| Roudebush | 412.3 | 150 | 61,845 |
| Johnson-Silk | 668.4 | 150 | 100,260 |
| Richardson | 699.9 | 130 | 90,987 |
| Hastings | 152.6 | 170 | 25,942 |
| Diaz | 462 | 150 | 69,300 |
| Wilkinson | 249.5 | 150 | 37,425 |
| Lepie | 114.1 | 170 | 19,397 |
| Coopan | 140.8 | 170 | 23,936 |
| Harrison | 184.9 | 150 | 27,735 |

| | | | |
|---|---|---|---|
| DeLeon | 146.3 | 150 | 21,945 |
| Yip | 252 | 150 | 37,800 |
| Ma | 15 | 150 | 2,250 |
| Cisneros | 15.4 | 150 | 2,310 |
| Bates | 22.4 | 170 | 3,808 |
| Stuckemeyer | 25.5 | 170 | 4,335 |
| **TOTAL** | | | 4,653,866.8 |

### 3. Percentage Reduction of the Lodestar

Both plaintiffs and defendants propose an across-the-board reduction of the lodestar to account for duplicative or otherwise unnecessary time billed by plaintiffs. Plaintiffs propose a 5% reduction of all attorneys' fees, while defendants propose a 10% reduction. After having received supplemental briefing on this issue by both parties, it is apparent to the court that a percentage reduction of the lodestar is proper so long as the court clearly identifies its doing so and demonstrates that it has independently reviewed the fee application. Gates, 987 F.2d at 1400. The Ninth Circuit has approved a "small reduction," of ten percent or less, without specific explanation by the district court. Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008).

Having reviewed in detail the plaintiff's fee request, a five percent reduction appears appropriate. Although it is difficult if not impossible for the court to pinpoint precisely which of plaintiffs' counsel's hours were duplicative or unnecessary, the court observes that plaintiffs' counsel has

billed an appreciable number of hours for communication among members of the legal team. See Moreno, 534 F.3d at 1112 (acknowledging that "even the district court cannot tell by a cursory examination which hours are unnecessarily duplicative"). While use of many attorneys with various expertise and levels of experience may contribute to the likelihood of success for the client, it also results in inefficiency, as is apparent here. Accordingly, a five percent reduction is proper to account for this. Plaintiffs' fee award is therefore reduced from $4,653,866.80 to $4,421,173.46.

### 4. Costs and Expenses

Plaintiffs are entitled to those costs and expenses associated with the litigation that would normally be billed to a fee-paying client. Davis, 976 F.2d at 1556. Defendants do not object to most of plaintiffs' costs, with the exception of travel expenses and legal research fees. Billing separately for these is permissible where the prevailing party has tendered evidence that this is the practice of the relevant legal community. Id. at 1543, 1556. Plaintiffs here have tendered evidence that this is the fee practice in San Francisco. See, e.g., Holtz Reply Decl. ¶ 14; Scott Reply Decl. ¶ 8. Plaintiffs have tendered evidence justifying their fees and expenses for the litigation. Grunfeld Decl. Ex. BB; Holtz Decl. Ex. D; Burrell Decl. Ex. E. The court therefore awarded the full amount of costs requested.

### 5. Interest

Finally, plaintiffs seek interest on the amount awarded running from either the date the stipulated injunction was signed by the parties or the date that it was ordered by the court. Plaintiffs are entitled to interest beginning on the date that their "entitlement to fees is secured." Friend v. Kolodzieczak, 72 F.3d 1386, 1391-92 (9th Cir. 1995) (en banc); see also 28 U.S.C. § 1961(a). Although defendants may have acknowledged plaintiffs' status as the prevailing party on the date the stipulated injunction was signed, plaintiffs did not become entitled to that by virtue of a judgment in their favor until the court's order on October 7, 2008. The Ninth Circuit has not held on the issue of whether a plaintiff recovering under the ADA or under § 1988 is entitled to pre-judgment interest, although another court has concluded that such an award would comport with the Ninth Circuit's provision of pre-judgment interest in other federal question cases. Golden State Transit Corp. v. City of Los Angeles, 773 F. Supp. 204, 216-20 (C.D. Cal. 1991). Out of an abundance of caution due to the absence of Circuit precedent on this issue, the court awards interest from the date of the entry of the injunction, October 7, 2008.

**B.   Costs and Fees for Discovery Sanctions**

On May 14, 2008, the magistrate judge granted plaintiffs' motion for discovery sanctions. The magistrate judge concluded that an award of fees and costs was merited for the plaintiffs' March 13, 2008 and April 10, 2008 motions for sanctions, but

declined to grant the award pending the court's resolution of the instant motion. Pursuant to the order of the magistrate judge, plaintiffs filed a declaration setting forth the fees and costs associated with those motions on May 29, 2008.

The court has reviewed the plaintiffs' evidence tendered in support of their application for costs and fees for the discovery sanctions motions. Both the hours billed and the rates sought are reasonable. In addition to the court's observations with regard to plaintiffs' counsel's skills and quality of representation in the suit generally, as noted above, the work on the two motions appears to have been particularly onerous given the defendants' conduct during discovery, as detailed in the magistrate judge's orders. Additionally, plaintiffs have exercised billing discretion by seeking 2007 rates, although the work was performed in 2008, and declining to seek reimbursement for a great deal of time spent on the successful motions. See Declaration of Michael Bein in Support of Plaintiff's Application for Monetary Sanctions ¶¶ 18-19. Plaintiffs also declined to seek an award for costs and expenses. Id. ¶ 19. Defendants' objections are not persuasive, as they fail to rebut the reasonableness of the award for several of the same reasons as described in section III.A, *supra*, and fail to account for the severity of the discovery abuses identified by the magistrate judge.

Plaintiffs are therefore awarded $16,392 for their work on the motion for discovery sanctions and $30,322 for their work on

the motion to compel production of improperly held documents. Interest shall run from May 14, 2008, the date of the entry of the Magistrate Judge's order, in accordance with 28 U.S.C. § 1981.

### IV. CONCLUSION

For the reasons stated herein, the court orders as follows:

1. Plaintiffs' motion for reasonable attorneys' fees and costs is (Doc. No. 444) GRANTED IN PART. Plaintiffs are awarded $4,421,173.46 in fees and $349,034.12 in costs, less $200,000 in fees and $349,034.12 in costs that were ordered as an interim fee award in the court's November 14, 2008 order, plus interest accrued from October 7, 2008.

2. Plaintiffs' are awarded $16,392 and $30,322 in discovery sanctions, pursuant to the magistrate court's May 14, 2008 order.

IT IS SO ORDERED.

DATED: March 5, 2009.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT