| | |
|---|---|
| BINGHAM McCUTCHEN LLP<br>GEOFFREY HOLTZ – 191370<br>Three Embarcadero Center<br>San Francisco, California 94111-4067<br>Telephone: (415) 393-2000 | ROSEN, BIEN & GALVAN, LLP<br>MICHAEL W. BIEN – 096891<br>GAY C. GRUNFELD – 121944<br>MARIA V. MORRIS – 223903<br>SHIRLEY HUEY – 224114<br>ELIZABETH H. ENG – 239265<br>315 Montgomery Street, Tenth Floor<br>San Francisco, California 94104<br>Telephone: (415) 433-6830 |
| PRISON LAW OFFICE<br>DONALD SPECTER – 83925<br>SARA NORMAN – 189536<br>1917 Fifth Street<br>Berkeley, California 94710-1916<br>Telephone: (510) 280-2621<br>Facsimile: (510) 280-2704<br>Attorneys for Plaintiffs | YOUTH LAW CENTER<br>SUSAN L. BURRELL – 074204<br>CAROLE SHAUFFER – 100226<br>CORENE KENDRICK – 226642<br>200 Pine Street, 3rd Floor<br>San Francisco, CA 94104<br>Telephone: (415)543-3379 |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.H., A.Z., D.K., D.R., M.N., and R.C., on behalf of themselves and all other similarly situated juvenile parolees in California,<br><br>    Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, Governor, State of California, MATTHEW CATE, Secretary, California Department of Corrections and Rehabilitation ("CDCR"); SCOTT KERNAN, Undersecretary of Operations, CDCR; BERNARD WARNER, Chief Deputy Secretary of the Division of Juvenile Justice; RACHEL RIOS, Director, Division of Juvenile Parole Operations; MARTIN HOSHINO, Executive Officer of the Board of Parole Hearings ("BPH"); ROBERT DOYLE, Chair of the BPH; SUSAN MELANSON, HENRY AGUILAR, ASKIA ABDULMAJEED, JOSEPH COMPTON, ROBERT CAMERON, JOYCE ARREDONDO, MARY SCHAMER, and TRACEY ST. JULIEN, Commissioners and Board Representatives; CHUCK SUPPLE, Executive Officer of the Juvenile Parole Board; CDCR; DIVISION OF JUVENILE JUSTICE; BOARD OF PAROLE HEARINGS; and the JUVENILE PAROLE BOARD,<br><br>    Defendants.[1] | Case No. 2:06-CV-02042-LKK-GGH<br><br>**JOINT STIPULATION REGARDING MODIFICATIONS TO DIVISION OF JUVENILE JUSTICE PAROLE REVOCATION POLICIES AND PROCEDURES** |

---

[1] The names of Defendants currently serving and their CDCR capacities have been substituted pursuant to Fed. R. Civ. P. 25.

PDF created with pdfFactory trial version www.pdffactory.com

WHEREAS, the Stipulated Order for Permanent Injunctive Relief ("Injunction") entered by this Court on October 7, 2008 requires "Defendants [to] develop sufficiently specific draft Policies, Procedures, and Plans ('Policies and Procedures') that will ensure that Revocation Proceedings are in continuous compliance with all of the requirements of the Constitution and applicable statutes[.];" and

WHEREAS, the parties in the above-captioned case have met and conferred regarding Defendants' Policies and Procedures issued pursuant to the Injunction; and

WHEREAS, without prejudice to either party's positions taken in the meet and confer discussions;

NOW, THEREFORE, subject to the approval of this Court, the parties hereby stipulate to the following changes to the Policies and Procedures issued pursuant to the Injunction:

## I. Definition of Good Cause to Apply and Be Used in All Policies and Procedures

The parties agree to modify the definition of good cause to be: "Justifiable, legitimate and unforeseeable reason for the delay, asserted in good faith and caused by factors that are beyond the control of the Defendants."[2]

## II. Agreed Revisions to JPB Policies

### A. Safety and Security During Hearings—Mechanical Restraints

The parties agree to modify the current language regarding mechanical restraints (from "The mechanical restraint decision shall be based upon . . . ." through "Pregnant parolees should not be shackled or restrained in a belly chain.") to state:

> Staff shall not routinely restrain parolees during Parole Revocation Hearings.  Parolees may only be hand-cuffed or shackled during Parole Revocation Hearings based on evidence that the individual parolee's present behavior, apparent emotional state or other conditions present a reasonable likelihood that he or she may become violent or attempt to escape. Other conditions may include behavior while on parole or violent behavior during the period of incarceration for this alleged parole violation.

---

[2] The parties continue to dispute how the definition of "good cause" will be interpreted in addressing delays caused by persons not directly employed by Defendants.

1

PDF created with pdfFactory trial version www.pdffactory.com

The final determination regarding the use of mechanical restraints resides with the BCPA and shall be made prior to the commencement of the hearing and shall be documented in the Board Order at the conclusion of the hearing. If the use of restraints is determined to be appropriate, it shall be the responsibility of the BCPA and/or the parole agent present at the hearing to properly restrain the parolee prior to or immediately upon being escorted into the hearing room. The BCPA or parole agent responsible for applying the restraints shall double check the restraints for proper application and to ensure that they are not causing pain or loss of circulation for the parolee.

Any restraints shall allow the parolee limited movement of the hands to read and handle documents and writings necessary to the hearing. Under no circumstances should a parolee be restrained using fixed restraints to a wall, floor or furniture. Pregnant parolees should not be shackled in a "belly belt" around the waist or in leg restraints.

When mechanical restraint is required, handcuffs, alone or attached to a waist chain, will be the means of restraint normally used.  However, additional mechanical restraint, including leg irons, additional chains, leather cuffs, or other specialized restraint equipment may be used when the circumstances indicate the need for the level of control that such devices will provide, and when applied by custodial staff who have received training in the proper use of such devices.

**B.     Supplemental Charges for Parolees Pending Revocation**

The parties agree to replace:

Parolees charged with serious in-custody misconduct that occurs while the parolee is in custody pending revocation proceedings may be assessed up to an additional twelve (12) months, based upon behaviors and relevant assessments as provided in the Revocation Extension Matrix.

With:

Parolees charged with serious in-custody misconduct involving violence against a person that occurs while the parolee is in custody pending revocation proceedings may be assessed up to an additional twelve (12) months, based upon relevant assessments as provided in the Revocation Extension Matrix.

**C.     Fearful Witnesses**

The parties agree to add the following section to the JPB Policies and Procedures:

**FEARFUL WITNESS HEARING PROCEDURES**

If a witness has been designated as fearful or claims to be fearful, prior to having the witness testify, the Hearing Officer shall:

2

JOINT STIPULATION REGARDING MODIFICATIONS TO DIVISION OF JUVENILE JUSTICE PAROLE REVOCATION POLICIES AND PROCEDURES, Case No. 2:06-CV-02042-LKK-GGH

PDF created with pdfFactory trial version www.pdffactory.com

1. Inform the attorney that the witness has been designated as fearful based on the witness's statement of fearfulness, and the hearing officer's determination based on objective factors that face-to-face confrontation would result in significant emotional distress to the witness.

2. Give the attorney the opportunity to object to the witness's designation

- If the attorney's objection is sustained, the Hearing Officer shall :

    i. Explain to the witness, outside of the presence of the parolee, that the witness cannot be designated as fearful.

    ii. Resume the hearing and treat the witness as any other witness would be treated.

- If the attorney's objection is overruled, the Hearing Officer shall:

    i. Prior to the witness entering, have the parolee removed from the hearing room. The parolee will be placed in a location that prohibits visual contact with the witness.

    ii. Allow the attorney a reasonable amount of time to consult with the parolee regarding potential questions, prior to the testimony of the fearful witness.

    iii. Continue the hearing with the parolee absent for the duration of the fearful witness's testimony.

    iv. Allow the parolee's attorney to question the witness in the parolee's absence.

    v. Give the attorney the opportunity to consult with the parolee to discuss the testimony of the fearful witness before the witness is excused. At this time the parolee shall be granted the opportunity to listen to the witness's testimony as recorded and to discuss any concerns or questions about the testimony with his or her attorney.

    The Hearing Officer should permit the parolee sufficient time to review the witness's testimony and to consult with his or her attorney.

    vi. Following this consultation, the attorney will be allowed to continue with questioning.

    vii. Excuse the fearful witness when testimony and questioning is complete.

3

PDF created with pdfFactory trial version www.pdffactory.com

      viii.  Request that the parolee be returned to the hearing room after the fearful witness has been excused.

      ix.  Upon reconvening the hearing, the Hearing Officer shall ask the attorney if there is any additional information he or she wishes to add in order to enhance the parolee's understanding of the testimony provided by the fearful witness.

### D.   Parolee's Right to Continue Hearings

The parties agree to replace: "The parolee shall have the right to a continuance of a timely Revocation Hearing in the absence of a good cause showing to deny such request." With: "A parolee may be granted a continuance of his or her hearing for good cause shown."

### E.   Parolee's Alleged Refusal to Attend a Hearing

The parties agree to add the following sentence to each instance in which a parolee's refusal to attend a hearing is discussed: "In the event that a parolee refuses to attend a hearing that is taking place in a DJJ facility, the parolee's attorney shall be escorted to the housing unit to confer with the parolee regarding the refusal to attend."[3]

### F.   Remedies for Late Hearings

The parties agree to replace:

> If the Revocation Hearing occurs after one hundred twenty (120) calendar days following the placement of a parole hold without a showing of good cause, prejudice will be presumed, the case shall be dismissed, the hold lifted and the parolee released as soon as possible but no later than three (3) business days from the one hundred twenty-first (121st) day.

With:

> If the Revocation Hearing occurs after ninety (90) calendar days following the placement of a parole hold without a showing of good cause, prejudice will be presumed, the case shall be dismissed, the hold lifted and the parolee released as soon as

---

[3] Plaintiffs do not waive their position that Defendants should also facilitate such communications when parolees housed in county jails or CDCR institutions refuse to attend hearings or when parolees refuse to board a bus for transport to a hearing.

4

JOINT STIPULATION REGARDING MODIFICATIONS TO DIVISION OF JUVENILE JUSTICE PAROLE REVOCATION POLICIES AND PROCEDURES, Case No. 2:06-CV-02042-LKK-GGH

PDF created with pdfFactory trial version www.pdffactory.com

possible but no later than three (3) business days from the ninety-first (91st) day.[4]

### G. Private Counsel's Ability to Subpoena Witnesses

The parties agree to add the following sentence to the JPB Policies and Procedures: "A parolee's attorney may subpoena witnesses to appear at a parole revocation hearing or revocation extension hearing."

### H. Exit Interview

The parties agree to replace: "Additional special conditions of parole, not requested in the Parole Placement Plans, may be added as appropriate and deemed necessary." With "Additional special conditions of parole, not requested in the Parole Placement Plans, that do not impact the parolee's placement may be added as appropriate and deemed necessary."[5]

### I. Administrative Appeals

The parties agree to eliminate the following sentence: "The final decision of whether an administrative appeal should be filed in any given case rests with the attorney."

### J. Legal Mail

The parties agreed to add the following sentence to the section regarding Administrative Appeals: "All appeals will be treated as legal mail."

## III. DJPO Policies

### A. Notice of NIC Hearing

The parties agree to add the following sentence to the section regarding Parole Agent Responsibilities for Not In Custody (NIC) Referral: "The Parole Agent shall be responsible for giving notice of the date, time and location of a NIC Hearing to the parolee."

---

[4] By stipulating to this modified language, Plaintiffs do not waive their positions that failure to hold a hearing within 35 days absent good cause is a violation of the Injunction and contempt, and that prejudice can be demonstrated and/or should be presumed after thirty-five (35) days. In this and the other areas addressed by this Stipulation and Order, Plaintiffs' agreement to revised language in a particular provision shall not be construed as acquiescence in the validity of any aspect of Defendants' Policies and Procedures, except as previously agreed to.

[5] Agreeing to this revision does not constitute a waiver of Plaintiffs' position that no special conditions of parole should be added at the Exit Interview.

5

JOINT STIPULATION REGARDING MODIFICATIONS TO DIVISION OF JUVENILE JUSTICE PAROLE REVOCATION POLICIES AND PROCEDURES, Case No. 2:06-CV-02042-LKK-GGH

PDF created with pdfFactory trial version www.pdffactory.com

**B.     Supplemental Charges**

The parties agree to add the following language regarding Supplemental Charges: "The parole agent shall review the field file for all known parole violations, except for ongoing investigations as provided for in Evidence Code § 1040(b)(2), prior to completing DJJ Form 3.264A. Supplemental charges may not be made based on evidence contained in the field file at the time the DJJ Form 3.264A is completed."

**C.     Field Parole Agent Responsibilities for Exit Interviews**

The parties agreed to replace:

> Conduct a review of the release packet/slough file to identify any accommodation and/or effective communication needs, or contact the institutional Parole Agent to discuss any accommodation/effective communication needs.

With:

> Conduct a review of the release packet/slough file and, if the parolee is in a DJJ facility, contact the institution parole agent, to identify any accommodation and/or effective communication needs.

**IV.    Facilities Revocation Extension Policies**

**A.     Expedited Revocation Extension Procedures**

The parties agreed to add the following language: "If a parolee is subject to revocation extension proceedings for behavior that occurs within 30 days of his or her RRD, the DDMS Coordinator is responsible for expediting the revocation extension proceedings such that the parolee is not held for more than 35 days past his or her RRD for purposes of completing those proceedings.  In the event that a parolee is detained for more than 35 days past his or her RRD, he or she will be given day-for-day credit for every additional day the hearing occurs beyond 35 days."

**V.     Revocation and Revocation Extension Matrices**

**A.     Description of Revocation Extension Matrix**

The parties agree to replace: "The following behaviors are Level 3 violations that may warrant referral to the Juvenile Parole Board for revocation extension proceedings."  With: "The following behaviors are Level 3 violations that rise to the level of serious in-custody

PDF created with pdfFactory trial version www.pdffactory.com

misconduct and may warrant referral to the Juvenile Parole Board for revocation extension proceedings."

### B.  Driving Violations

The parties agree to amend charge code 899 to "Other driving violations rising to the level of misdemeanor or felony" in both the parole revocation charge codes and the assessment matrix.

### C.  Pressuring

The parties agree to amend charge codes 3JA-3JC by adding the phrase "to violate the law or a facility policy" at the end of each of these charge code titles/ descriptions.

### D.  Exposure of Genitals

The parties agree to amend charge code 3DC in the revocation extension matrix to "Intentional exposure of genitals."

### E.  Violation 3S

The parties agree to eliminate the 3S category of violations from the Revocation Extension Matrix and replace it instead with "Disruptive Behavior that threatens the safety and security of the facility."

### F.  Violation 3TD

The parties agree to eliminate charge code 3TD from the Revocation Extension Matrix.

### G.  Willful Program Failure

The parties agree to add a numerical charge code for Willful Program Failure in the Revocation Extension Matrix.

///
///
///
///
///
///

7

PDF created with pdfFactory trial version www.pdffactory.com

## VI. MODIFICATION

Defendants may modify the Policies and Procedures outlined herein in the manner provided for in Paragraph 12 of the Stipulated Order for Permanent Injunctive Relief dated June 4, 2008.

IT IS SO STIPULATED.

Dated:  September 8, 2009          ROSEN, BIEN & GALVAN, LLP

                                   By: */s/ Gay Crosthwait Grunfeld*
                                        Gay Crosthwait Grunfeld
                                        Attorneys for Plaintiffs

Dated:  September 8, 2009          HANSON BRIDGETT LLP

                                   By: */s/ S. Anne Johnson*
                                        S. Anne Johnson
                                        Attorneys for Defendants
                                        Arnold Schwarzenegger, et al.

IT IS SO ORDERED.

Dated: September 10, 2009

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

PDF created with pdfFactory trial version www.pdffactory.com