UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

L.H., A.Z., D.K., and D.R.,
on behalf of themselves and
all other similarly
situated juvenile parolees
in California,

        NO. CIV. S-06-2042 LKK/GGH

    Plaintiffs,

  v.                          O R D E R

EDMUND G. BROWN, JR.,
Governor, State of
California, et al,

    Defendants.
_____/

    The parties' Joint Motion to Terminate Stipulated Order for Permanent Injunctive Relief ("Joint Motion"), came on for hearing on March 25, 2013. Counsel for Plaintiffs and Defendants were present. This Court has reviewed the pleadings, records, and papers on file and accordingly makes the following determinations:

    Whereas, the parties have entered into a Stipulated Order Setting Forth Process for Terminating Stipulated Order for Permanent Injunctive Relief, which became an order of the Court on

1

January 18, 2013;

Whereas, the parties filed a Joint Motion on February 19, 2013, pursuant to Federal Rules of Civil Procedure 60(b)(5) and 23(e)(3);

Whereas, the Court has determined that adequate notice has been provided to the class members regarding the Joint Motion and the process of termination, pursuant to Federal Rule of Civil Procedure 23(e)(1);

Whereas, the Court has determined that the L.H. class members were provided with a reasonable opportunity to submit objections or other comments regarding the Joint Motion and the proposed process for termination, pursuant to Federal Rule of Civil Procedure 23(e)(5) but that no such comments and objections were received from class members;

Whereas, on March 18, 2013, the Office of the Special Master issued a recommendation to this Court addressing Defendants' compliance with the Injunction to date, and recommending that the court grant the Joint Motion (ECF No. 698);

Whereas, on March 25, 2013, the Court conducted a noticed public hearing regarding the Joint Motion, pursuant to Federal Rule of Civil Procedure 23(e)(2); and good cause appearing therefore, the Court now finds and orders as follows:

**FINDINGS**

a.  In orders dated September 19, 2007 and January 29, 2008, this Court found that California's juvenile parole revocation system violated juvenile parolees' due process rights, the

Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 ("ADA"), and section 504 of the Rehabilitation Act, 29 U.S.C. § 794. (ECF Nos. 201 and 266). The Court approved a Stipulation and Order for Permanent Injunctive Relief ("Injunction") on October 7, 2008, which set forth detailed requirements to remedy these federal violations, including attorney representation, revocation system procedures, effective communication and reasonable accommodations, and consideration of alternatives to incarceration. (ECF No. 438).

   b.   Since the Court approved the Injunction, the parties and the Office of the Special Master have worked diligently together to overhaul the juvenile parole revocation system. In just four years, Defendants (with the aid of Plaintiffs and the Office of the Special Master) made impressive progress, rapidly transforming the juvenile parole revocation system from one that was unconstitutional and fundamentally unfair to one that respects and protects juvenile parolees' constitutional rights to due process, equal protection, and assistance of counsel, and statutory rights under the ADA and the Rehabilitation Act.

   c.   Defendants have eliminated coercive procedures and actions, such as incarcerating youth for alleged parole violations without representation of counsel. All parolees are appointed counsel during the revocation process to further ensure protection of their due process rights. They have abolished practices that could keep revoked youth incarcerated indefinitely. They have systematized decision-making so that the steps are predictable, proceedings are based on evidence, and staff work to inform and

involve the juveniles. All proceedings are now provided with exceptional timeliness, and a substantial proportion of juveniles are diverted from revocation into alternatives to incarceration.

    d. Defendants have demonstrated compliance with virtually all of the Injunction's requirements, as evidenced by Special Master's Eighth Report on the Status of Conditions of the Stipulated Order, the parties' Joint Motion to Terminate, and the Special Master's Recommendation Regarding the parties' Joint Motion to Terminate. The Special Master has found Defendants to be in sustained substantial compliance with the vast majority of the Injunction's requirements; for the remaining few areas where sustained substantial compliance has not been shown, Defendants have made significant advances towards achieving substantial compliance.

    e. On August 24, 2007, Senate Bill ("SB") 81 was approved by the Governor and chaptered by the Secretary of State. As a result of SB 81, the type of youth who could be committed to the Division of Juvenile Justice ("DJJ") was limited: only youth whose most recent sustained offense was listed under Welfare and Institutions Code 707(b) (violent offenses), or an offense listed in Penal Code 290.008 (sex offenses) are eligible for commitment to DJJ. In addition, SB 81 required that non-707(b) offenders be returned to the county of commitment upon release for community supervision, rather than DJJ parole.

    f. On October 19, 2010, Assembly Bill ("AB") 1628 was approved by the Governor and chaptered by the Secretary of State.

As a result of AB 1628, first commitment youth ("first-commits") to DJJ were released from the Division of Juvenile Facilities ("DJF") upon the completion of their sentence, discharged from DJJ parole, and sent to their county of commitment for supervision. These persons are no longer subject to DJJ parole supervision or revocation procedures and may not be returned to a DJJ facility to serve a parole revocation sentence. To the extent these former class members have been subject to revocation, the Court is informed that juvenile probation revocation procedures under the supervision of the Superior Courts, including representation by counsel, are required by state law.

  g. On June 27, 2012, Senate Bill ("SB") 1021 was approved by the Governor and chaptered by the Secretary of State. After passage of SB 1021, most juvenile parole operations terminated as of January 1, 2013. However, juvenile parolees who were alleged to have violated the terms of their parole prior to January 1, 2013 were still subject to revocation proceedings after January 1, 2013. All such revocation proceedings completed on January 17, 2013 (although there are currently one or more juveniles on optional waiver who could activate their waiver and request an optional waiver review hearing on or before June 20, 2013).

  h. As a result of Assembly Bill 1628 and Senate Bill 1021, the number of juvenile parolees in California has dropped dramatically. As of January 1, 2013, no new class members will be added since juvenile parole supervision terminated. As of February 16, 2013, only 21 class members remained, all of whom are in

custody on revocation terms, and by June 28, 2013, there will no longer be any L.H. class members. Additionally, on January 1, 2013, Defendants ended the practice of revocation extension whereby juveniles' revocation terms could be extended for misbehavior while in custody. Accordingly, the terms of the juveniles serving revocation terms cannot be extended.

    i.  This Court has adopted all of the findings in the eight previously-filed Reports of the Special Master on the Status and Conditions of the Stipulated Order. In the Recommendation filed with this Court on March 18, 2013, the Office of the Special Master issued her findings with respect to the Joint Motion.

    j.  Plaintiffs have requested that this court "reserve jurisdiction" over this case for five (5) years for the "limited" purpose of "ensuring that the State does not re-institute a system of state-run juvenile parole." Defendants assert that such a reservation of jurisdiction is beyond this court's power. Because plaintiffs have identified no constitutional, statutory, Supreme Court or Ninth Circuit authority for the proposition that this court could engage in such conduct - exercising authority over the State in the absence of any claim of current or even threatened constitutional or statutory violation -- the court declines the invitation to do so.[1]

---

[1] See Collins v. Thompson, 8 F.3d 657 (9th Cir. 1993), cert. denied, 511 U.S. 1127 (1994) (in the context of a prison consent decree, affirming the district court's decision not to continue the exercise of jurisdiction beyond the time the constitutional violations were fully remedied); accord, Board of Education v. Dowell, 498 U.S. 237 (1991) (in the context of a school

k.    Accordingly, the Court finds that the jointly requested relief is fair, reasonable and adequate within the meaning of Fed. R. Civ. P. 23(e)(2).  The court further finds that the Stipulated Order for Permanent Injunctive Relief has been satisfied pursuant to Fed. R. Civ. P. 60(b)(5), inasmuch as defendants' full, good-faith and long-term compliance with the injunction and their cooperation with the Special Master have permanently eliminated the constitutional and statutory violations.  Further, defendants have now eliminated the juvenile parole system, which was the focus of the injunction, effective June 28, 2013.

**GOOD CAUSE APPEARING THEREFORE, IT IS HEREBY ORDERED THAT:**

l.    The Stipulated Order for Permanent Injunctive Relief shall apply in full force until the last scheduled hearing (including hearings requested as a result of the activation of optional waivers) has taken place.  During this time, the parties shall continue to track and monitor Defendants' compliance with the Injunction.

m.    Defendants shall notify Plaintiffs' counsel, the Special Master, and the Court once the last scheduled hearing (including

---

desegregation decree, "necessary concern for the important values of local control of public school systems dictates that a federal court's regulatory control of such systems not extend beyond the time required to remedy the effects of past intentional discrimination") (internal quotation marks omitted); Labor/Community Strategy Center v. Los Angeles County Metropolitan Transp. Authority, 564 F.3d 1115, 1123 (9th Cir. 2009) (in the context of a consent decree regarding a public transportation system, "federal court intervention in state institutions is a temporary measure and may extend no longer than necessary to cure constitutional violations").

hearings requested as a result of the activation of optional waivers) has been completed.  Ten (10) days after Defendants file such notification, Defendants shall be relieved of any duty to comply with the requirements emanating from the Injunction, until the last parolee serving a revocation term has been released from custody, except for the following provisions:

   a.   Tracking parolee discharge dates to ensure that parolees are not over-detained;

   b.   Notifying Plaintiffs' counsel, the Special Master, and the Court once the last parolee serving a revocation term has been released from custody.

   n.   Upon Defendants' notification that the final class member has been released, the parties and the Special Counsel shall, within twenty (20) days, file their motions, if any, for attorneys' fees, and fees for the Special Master Court.

   o.   Upon resolution of the fee motions, the court will terminate this case.

   IT IS SO ORDERED.

   DATED: March 29, 2013.

                              _____
                              LAWRENCE K. KARLTON
                              SENIOR JUDGE
                              UNITED STATES DISTRICT COURT