UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

L.H., A.Z., D.K., and D.R.,
on behalf of themselves and
all other similarly
situated juvenile parolees
in California,

                                 NO. CIV. S-06-2042 LKK/GGH

       Plaintiffs,

    v.                                 <u>O R D E R</u>

EDMUND G. BROWN, JR.,
Governor, State of
California, et al,

       Defendants.
_____/

    The parties' Joint Motion to Terminate Stipulated Order for Permanent Injunctive Relief ("Joint Motion"), came on for hearing on March 25, 2013.  Counsel for Plaintiffs and Defendants were present.  This Court has reviewed the pleadings, records, and papers on file and accordingly makes the following determinations:

    Whereas, the parties have entered into a Stipulated Order Setting Forth Process for Terminating Stipulated Order for Permanent Injunctive Relief, which became an order of the Court on

1

1  January 18, 2013;

2      Whereas, the parties filed a Joint Motion on February 19,
3  2013, pursuant to Federal Rules of Civil Procedure 60(b)(5) and
4  23(e)(3);

5      Whereas, the Court has determined that adequate notice has
6  been provided to the class members regarding the Joint Motion and
7  the process of termination, pursuant to Federal Rule of Civil
8  Procedure 23(e)(1);

9      Whereas, the Court has determined that the L.H. class members
10 were provided with a reasonable opportunity to submit objections
11 or other comments regarding the Joint Motion and the proposed
12 process for termination, pursuant to Federal Rule of Civil
13 Procedure 23(e)(5) but that no such comments and objections were
14 received from class members;

15     Whereas, on March 18, 2013, the Office of the Special Master
16 issued a recommendation to this Court addressing Defendants'
17 compliance with the Injunction to date, and recommending that the
18 court grant the Joint Motion (ECF No. 698);

19     Whereas, on March 25, 2013, the Court conducted a noticed
20 public hearing regarding the Joint Motion, pursuant to Federal Rule
21 of Civil Procedure 23(e)(2); and good cause appearing therefore,
22 the Court now finds and orders as follows:

23                          **FINDINGS**

24     a.   In orders dated September 19, 2007 and January 29, 2008,
25 this Court found that California's juvenile parole revocation
26 system violated juvenile parolees' due process rights, the

2

1  Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 ("ADA"),

2  and section 504 of the Rehabilitation Act, 29 U.S.C. § 794. (ECF

3  Nos. 201 and 266).  The Court approved a Stipulation and Order for

4  Permanent  Injunctive  Relief  ("Injunction")  on  October  7,  2008,

5  which  set  forth  detailed  requirements  to  remedy  these  federal

6  violations,  including  attorney  representation,  revocation  system

7  procedures,  effective  communication  and  reasonable  accommodations,

8  and consideration of alternatives to incarceration. (ECF No. 438).

9      b.   Since the Court approved the Injunction, the parties and

10  the Office of the Special Master have worked diligently together

11  to  overhaul  the  juvenile  parole  revocation  system.   In  just  four

12  years, Defendants (with the aid of Plaintiffs and the Office of the

13  Special Master) made impressive progress, rapidly transforming the

14  juvenile    parole    revocation    system    from    one    that    was

15  unconstitutional and fundamentally unfair to one that respects and

16  protects  juvenile  parolees'  constitutional  rights  to  due  process,

17  equal  protection,  and  assistance  of  counsel,  and  statutory  rights

18  under the ADA and the Rehabilitation Act.

19      c.   Defendants  have  eliminated  coercive  procedures  and

20  actions, such as incarcerating youth for alleged parole violations

21  without  representation  of  counsel.   All  parolees  are  appointed

22  counsel during the revocation process to further ensure protection

23  of their due process rights.  They have abolished practices that

24  could  keep  revoked  youth  incarcerated  indefinitely.   They  have

25  systematized  decision-making  so  that  the  steps  are  predictable,

26  proceedings  are  based  on  evidence,  and  staff  work  to  inform  and

1  involve the juveniles.   All proceedings are now provided with
2  exceptional timeliness, and a substantial proportion of juveniles
3  are diverted from revocation into alternatives to incarceration.

4        d.   Defendants have demonstrated compliance with virtually
5  all of the Injunction's requirements, as evidenced by Special
6  Master's Eighth Report on the Status of Conditions of the
7  Stipulated Order, the parties' Joint Motion to Terminate, and the
8  Special Master's Recommendation Regarding the parties' Joint Motion
9  to Terminate.   The Special Master has found Defendants to be in
10 sustained substantial compliance with the vast majority of the
11 Injunction's requirements; for the remaining few areas where
12 sustained substantial compliance has not been shown, Defendants
13 have made significant advances towards achieving substantial
14 compliance.

15       e.   On August 24, 2007, Senate Bill ("SB") 81 was approved
16 by the Governor and chaptered by the Secretary of State.   As a
17 result of SB 81, the type of youth who could be committed to the
18 Division of Juvenile Justice ("DJJ") was limited: only youth whose
19 most recent sustained offense was listed under Welfare and
20 Institutions Code 707(b) (violent offenses), or an offense listed
21 in Penal Code 290.008 (sex offenses) are eligible for commitment
22 to DJJ.   In addition, SB 81 required that non-707(b) offenders be
23 returned to the county of commitment upon release for community
24 supervision, rather than DJJ parole.

25       f.   On October 19, 2010, Assembly Bill ("AB") 1628 was
26 approved by the Governor and chaptered by the Secretary of State.

                                    4

As a result of AB 1628, first commitment youth ("first-commits") to DJJ were released from the Division of Juvenile Facilities ("DJF") upon the completion of their sentence, discharged from DJJ parole, and sent to their county of commitment for supervision. These persons are no longer subject to DJJ parole supervision or revocation procedures and may not be returned to a DJJ facility to serve a parole revocation sentence.  To the extent these former class members have been subject to revocation, the Court is informed that juvenile probation revocation procedures under the supervision of the Superior Courts, including representation by counsel, are required by state law.

g.   On June 27, 2012, Senate Bill ("SB") 1021 was approved by the Governor and chaptered by the Secretary of State.  After passage of SB 1021, most juvenile parole operations terminated as of January 1, 2013.  However, juvenile parolees who were alleged to have violated the terms of their parole prior to January 1, 2013 were still subject to revocation proceedings after January 1, 2013. All such revocation proceedings completed on January 17, 2013 (although there are currently one or more juveniles on  optional waiver who could activate their waiver and request an optional waiver review hearing on or before June 20, 2013).

h.   As a result of Assembly Bill 1628 and Senate Bill 1021, the number of juvenile parolees in California has dropped dramatically.  As of January 1, 2013, no new class members will be added since juvenile parole supervision terminated.  As of February 16, 2013, only 21 class members remained, all of whom are in

1  custody on revocation terms, and by June 28, 2013, there will no

2  longer be any L.H. class members.  Additionally, on January 1,

3  2013, Defendants ended the practice of revocation extension whereby

4  juveniles' revocation terms could be extended for misbehavior while

5  in custody.  Accordingly, the terms of the juveniles serving

6  revocation terms cannot be extended.

7      i.   This Court has adopted all of the findings in the eight

8  previously-filed Reports of the Special Master on the Status and

9  Conditions of the Stipulated Order.  In the Recommendation filed

10 with this Court on March 18, 2013, the Office of the Special Master

11 issued her findings with respect to the Joint Motion.

12     j.   Plaintiffs have requested that this court "reserve

13 jurisdiction" over this case for five (5) years for the "limited"

14 purpose of "ensuring that the State does not re-institute a system

15 of state-run juvenile parole."  Defendants assert that such a

16 reservation of jurisdiction is beyond this court's power.  Because

17 plaintiffs have identified no constitutional, statutory, Supreme

18 Court or Ninth Circuit authority for the proposition that this

19 court could engage in such conduct - exercising authority over the

20 State in the absence of any claim of current or even threatened

21 constitutional or statutory violation -- the court declines the

22 invitation to do so.[1]

23 _____

24       [1] See Collins v. Thompson, 8 F.3d 657 (9th Cir. 1993), cert.
   denied, 511 U.S. 1127 (1994) (in the context of a prison consent
25 decree, affirming the district court's decision not to continue the
   exercise of jurisdiction beyond the time the constitutional
26 violations were fully remedied); accord, Board of Education v.
   Dowell, 498 U.S. 237 (1991) (in the context of a school

k.   Accordingly, the Court finds that the jointly requested relief is fair, reasonable and adequate within the meaning of Fed. R. Civ. P. 23(e)(2).  The court further finds that the Stipulated Order for Permanent Injunctive Relief has been satisfied pursuant to Fed. R. Civ. P. 60(b)(5), inasmuch as defendants' full, good-faith and long-term compliance with the injunction and their cooperation with the Special Master have permanently eliminated the constitutional and statutory violations.  Further, defendants have now eliminated the juvenile parole system, which was the focus of the injunction, effective June 28, 2013.

**GOOD CAUSE APPEARING THEREFORE, IT IS HEREBY ORDERED THAT:**

l.   The Stipulated Order for Permanent Injunctive Relief shall apply in full force until the last scheduled hearing (including hearings requested as a result of the activation of optional waivers) has taken place.  During this time, the parties shall continue to track and monitor Defendants' compliance with the Injunction.

m.   Defendants shall notify Plaintiffs' counsel, the Special Master, and the Court once the last scheduled hearing (including

desegregation decree, "necessary concern for the important values of local control of public school systems dictates that a federal court's regulatory control of such systems not extend beyond the time required to remedy the effects of past intentional discrimination") (internal quotation marks omitted); Labor/Community Strategy Center v. Los Angeles County Metropolitan Transp. Authority, 564 F.3d 1115, 1123 (9th Cir. 2009) (in the context of a consent decree regarding a public transportation system, "federal court intervention in state institutions is a temporary measure and may extend no longer than necessary to cure constitutional violations").

1  hearings requested as a result of the activation of optional

2  waivers) has been completed.  Ten (10) days after Defendants file

3  such notification, Defendants shall be relieved of any duty to

4  comply with the requirements emanating from the Injunction, until

5  the last parolee serving a revocation term has been released from

6  custody, except for the following provisions:

7          a.    Tracking parolee discharge dates to ensure that

8  parolees are not over-detained;

9          b.    Notifying Plaintiffs' counsel, the Special Master,

10  and the Court once the last parolee serving a revocation term has

11  been released from custody.

12      n.    Upon Defendants' notification that the final class member

13  has been released, the parties and the Special Counsel shall,

14  within twenty (20) days, file their motions, if any, for attorneys'

15  fees, and fees for the Special Master Court.

16      o.    Upon resolution of the fee motions, the court will

17  terminate this case.

18          IT IS SO ORDERED.

19          DATED: March 29, 2013.

20

21

22                              LAWRENCE K. KARLTON
                                SENIOR JUDGE
23                              UNITED STATES DISTRICT COURT

24

25

26